**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **MARIO CERAME** and<br>**TIMOTHY C. MOYNAHAN**<br>    Plaintiffs,<br><br>    v.<br><br>**MICHAEL P. BOWLER,** in his official capacity<br>as Connecticut Statewide Bar Counsel,<br>287 Main Street<br>East Hartford, CT 06118,<br><br>**MATTHEW G. BERGER**, in his official capacity<br>as Chair of the Statewide Grievance Committee,<br>287 Main Street<br>East Hartford, CT 06118,<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)      **Case No. _____**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiffs Mario Cerame and Timothy C. Moynahan, through undersigned counsel, allege as follows:

**NATURE OF THE ACTION**

1.    Plaintiffs Mario Cerame and Timothy C. Moynahan bring this suit to stop the ongoing violation of their First and Fourteenth Amendment rights, as well as their rights under the Connecticut Constitution, by State of Connecticut officials acting in their official capacities.

2.    Cerame is a Connecticut-licensed attorney employed at Brignole, Bush & Lewis. Cerame is a frequent advocate for speech and association rights, both in his professional life and outside of the workplace.   He has presented on speech rights on panels, to local bar associations, and at know-your-rights training open to the public.   He frequently advises other attorneys on speech issues and has been quoted in the Connecticut Law Tribune and other Connecticut media

regarding his views on newsworthy speech issues.   He has been particularly outspoken in opposing Rule 8.4(7) of the Connecticut Rules of Professional Conduct and is openly critical of both Rule 8.4(7)'s adoption and the Connecticut Bar Association's support of the Rule.

3.   Moynahan is a Connecticut-licensed attorney employed at The Moynahan Law Firm in Waterbury, Connecticut.   In that capacity, he has participated in many bar-related activities, including as a board member of the Connecticut Trial Lawyers Association and a founding member of the Connecticut Criminal Lawyers Association, and has been and is active in his community.   He regularly submits letters to newspapers and other news media, as well as to government officials.   Moynahan's views are often highly critical of positions adopted by the American and Connecticut Bar Associations and the Waterbury Board of Education.

4.   Connecticut regulates the conduct of Connecticut-licensed lawyers by means of its Rules of Professional Conduct (the "Rules").   In June 2021, Connecticut amended the Rules by adopting a new provision, Rule 8.4(7), that is in effect a speech code for lawyers.   It expands the definition of "professional misconduct" to include verbal or physical conduct that the lawyer "reasonably should know" constitutes "harassment or discrimination" on the basis of any one of 15 categories, including race, sex, religion, disability, sexual orientation, and gender identity. Rule 8.4(7) applies broadly to attorney speech in a wide variety of settings, not merely speech during court proceedings or while representing clients.

5.   Neither Cerame nor Moynahan intends to make statements that, in his mind, would constitute discrimination or harassment on the basis of any of the 15 enumerated categories. But because Rule 8.4(7) applies so broadly, permits sanctions even against those who have not knowingly engaged in discrimination or harassment, and supplies only vague definitions of

actionable speech, Cerame and Moynahan reasonably fear that they may be sanctioned for the sorts of statements they have made in the past.

6.   Accordingly, Cerame and Moynahan must chill their speech to avoid being subject to bar disciplinary proceedings and bar sanctions.

7.   This civil rights action seeks a declaration that Rule 8.4(7) on its face violates the First Amendment (as incorporated through the Fourteenth Amendment) and analogous provisions of the Connecticut Constitution, and an injunction preventing enforcement of the Rule.

## JURISDICTION AND VENUE

8.   The Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

9.   Plaintiffs bring this action under 42 U.S.C. § 1983.   The Court may award injunctive relief and nominal damages, as well as declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

10.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

11.   Plaintiff Mario Cerame is an attorney, licensed to practice law in the State of Connecticut since 2013.   He has a special interest in First Amendment law and the freedom of speech, and his advocacy on those and related issues is a substantial part of his identity.

12.   Cerame has been a member of the First Amendment Lawyers Association (FALA) for eight years.   FALA is a not-for-profit, nationwide association of hundreds of attorneys devoted to the protection of the First Amendment.   Cerame is currently the only member of

FALA in Connecticut.   FALA regularly hosts continuing legal education events for its members on free-speech issues, and Cerame regularly dialogues with colleagues on free-speech issues.

13.   In his legal practice, Cerame takes a special interest in representing individuals censured or punished for speech or expressive conduct considered offensive by some others. Specifically, this has included representing individuals who have uttered racial slurs or off-color jokes about firearms, individuals who photograph police in public without their consent and over their objections, and individuals who have anonymously criticized public officials.

14.   Cerame currently is challenging Connecticut General Statute § 53-37, a statute colloquially known as the "racial ridicule statute."   In addition, Cerame sometimes uses harsh language when representing individuals charged with crimes.   Cerame does so when he believes it is necessary to help his clients understand his perception of racial bias inherent in the criminal justice system and to convey the gravity of an important or difficult decision.   Cerame believes that some individuals may construe such forceful advocacy, language, and expressions as derogatory or demeaning.

15.   In his personal life, Cerame openly criticizes viewpoints he finds objectionable. For example, he speaks critically of Scientology and other religious practices he views as harmful to society.   When criticizing racially charged misconduct, Cerame sometimes repeats language used by those whose viewpoints differ from his own.   Taken out of context or misunderstood, Cerame's language when criticizing others could be taken as an endorsement of racist viewpoints he does not hold.   On these subjects, Cerame's manner and language may well be construed by some as derogatory or demeaning.   Although Cerame avoids such language

during court proceedings and while otherwise representing clients, he regularly uses such language in other contexts to which Rule 8.4(7) purports to apply.

16.   Accordingly, Cerame believes that his past, present, and future advocacy falls within the ambit of Rule 8.4(7), and that his advocacy and speech genuinely expose him to claims of ethics violations under that Rule.

17.   Plaintiff Timothy C. Moynahan is a graduate of Catholic University's Columbus School of Law and has been a member of the Connecticut bar since 1964.   He specializes in personal injury law and was selected to Super Lawyers from 2012 to 2020.   For his contributions to the Waterbury community, Post University inducted Moynahan into its Hall of Fame and awarded him a Doctor of Letters degree.

18.   Moynahan has spoken at public forums in support of First Amendment free-speech and association rights; the many groups to which he has spoken on free-speech issues include the American Arab Anti-Discrimination Committee, the United Nations Delegations Women's Club in New York, and at law schools and legal events in other countries.   Moynahan is particularly concerned with restrictions on speech and expression of opinion on school campuses.   He recently has outspokenly opposed efforts by some educators to adopt curricula based on critical race theory—in particular, teaching students that systemic racism is endemic, that American culture is based on white privilege and supremacy, and that "diversity" and "equity" are cultural imperatives.   He believes that these teachings are toxic and will lead to greater division, distrust, racism, and segregation among those who should be the leaders of tomorrow and the lifeblood of a better future for all Americans.

19.   In his speeches and publications, Moynahan often speaks in forceful terms when criticizing opposing points of view.   Those expressing opposing points of view may well on occasion construe Moynahan's criticisms as personally derogatory or demeaning.   For example, he has repeatedly criticized the race-based educational practices of the Waterbury Board of Education, practices he views as harmful to society.

20.   Defendant Michael P. Bowler is Connecticut's Statewide Bar Counsel.   He is being sued in his official capacity only.

21.   As Statewide Bar Counsel, Bowler is charged with reviewing all complaints alleging misconduct by a Connecticut-licensed attorney.   Superior Court Rules, § 2-32(a).

22.   Within seven days of receiving a complaint, Bowler must recommend one of three dispositions: (1) forward the complaint for further investigation by the appropriate local grievance panel; (2) refer the complaint to the Chair of the Statewide Grievance Committee for possible dismissal on one of 10 enumerated grounds; or (3) if the complaint alleges only a fee dispute, issue a stay of further proceedings (in conjunction with the Chair of the State Grievance Committee) "on such terms and conditions as deemed appropriate, including referring the parties to fee arbitration."   *Id.*

23.   Defendant Matthew G. Berger is Chair of Connecticut's Statewide Grievance Committee.   He is being sued in his official capacity only.

24.   In that capacity, Berger (in conjunction with the 20 other members of the Statewide Grievance Committee) oversees the work of the Statewide Bar Counsel in the initial screening of complaints alleging misconduct by Connecticut bar members.   *Id.*

25.   In addition, if a grievance panel to which a complaint has been referred finds probable cause that an attorney is guilty of misconduct, Berger (in conjunction with the Statewide Grievance Committee or a three-member reviewing committee established by the Statewide Grievance Committee) oversees the conduct of a hearing and issues a final decision on the complaint.   Superior Court Rules, §§ 2-33, 2-35, 2-36.   The Statewide Grievance Committee (or a reviewing committee) may impose sanctions on attorneys found to have engaged in professional misconduct, *id.*, § 2-37, and may direct the Disciplinary Counsel to prosecute presentment proceedings against an attorney in Superior Court.   *Id.*, § 2-34A(b)(7).

## **FACTUAL BACKGROUND**

### **Attorney Misconduct**

26.   Under Connecticut law, only licensed attorneys are authorized to practice law within the State.   The Superior Court has adopted Rules of Professional Conduct that, among other things, define activities constituting "professional misconduct."   Rule 8.4.   Connecticut-licensed attorneys who engage in professional misconduct (without regard to where the misconduct occurred) are subject to sanction, up to and including loss of their license to practice law.   Rule 8.5.

27.   For many years, Rule 8.4 has included a provision that addresses a lawyer's invidiously discriminatory conduct "in the course of representing a client."   Rule 8.4(4) states, "It is professional misconduct for a lawyer to ... (4) Engage in conduct that is prejudicial to the administration of justice."   The Commentary to Rule 8.4(4) states (and will continue to state through the end of the year):

> A lawyer who, in the course of representing a client, knowingly manifests by word or conduct, bias or prejudice based upon race, sex, religion, national origin,

disability, age, sexual orientation, or socioeconomic statute, violates subdivision (4) when such actions are prejudicial to the administration of justice.   Legitimate advocacy respecting the foregoing factors does not violate subdivision (4).

28.   The American Bar Association (ABA) has for several decades maintained "Model Rules of Professional Conduct."   Many States, including Connecticut, have adopted the ABA Model Rules, in whole or substantial part.

29.   In 2016, the ABA voted to amend its Model Rules to include a new Rule 8.4(g), which reads as follows:

> It is professional misconduct for a lawyer to: ... (g) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

## Adoption of Rule 8.4(7)

30.   In the spring of 2020, two Connecticut lawyers submitted a proposal to the Rules Committee of the Superior Court, urging adoption of Model Rule 8.4(g) as part of the Connecticut Rules.

31.   At its June 5, 2020, the Rules Committee tabled the proposal for three months and asked the Connecticut Bar Association (CBA) to submit recommendations regarding the proposal.

32.   On September 10, 2020, the CBA's House of Delegates voted 39-11 to support adoption of a slightly revised version of Model Rule 8.4(g).   The CBA submitted that revised version in a September 11, 2020 letter to the Rules Committee.   The letter, attached hereto as Exhibit A, stated, "The pursuit of justice, equity, and equality are among the most ancient and

highest principles of our profession.   The inclusion of a prohibition on discrimination, harassment and sexual harassment, within our Rules of Professional Conduct and not solely in the commentary, is long overdue."

33.   The CBA's letter stated that it had requested bar members to report their "experience with discrimination, harassment and sexual harassment."   It stated that many attorneys responded "that they have experienced or witnessed discrimination, harassment, or sexual harassment in conduct related to the practice of law."

34.   The Rules Committee requested and received many comments, both pro and con, on the CBA's proposed version of a new Rule 8.4(7).   Among the groups from which the Rules Committee requested comments was the Statewide Grievance Committee (SGC).

35.   By email dated December 29, 2020, Defendant Bowler submitted comments on behalf of the SGC.   A copy of the December 29, 2020 email is attached hereto as Exhibit B.

36.   The email stated:

• "The SGC acknowledged that the CBA had the best of intentions with the proposal, hence the SGC is not taking a formal position opposing it."

• "[T]he SGC had concerns over the clarity and scope of the rule and was concerned that its language may present more problems than solutions in its application."

• "In the SGC's opinion, the terms ["discrimination," "harassment," and "conduct related to the practice of law"] are not clearly defined in either the proposal or its commentary."

• "The SGC noted that the current Rules of Professional Conduct are applied robustly by the SGC and Superior Court to limit and deter the conduct described [in] the proposal and its commentary."

• "Other than to observe that the proposal is constitutionally charged, the SGC will not comment on whether the proposal is constitutional under either the United States or Connecticut constitutions."

37.   At its February 8, 2021 meeting, the Rules Committee voted 7-1 to submit the CBA's proposal to a public hearing in May 2021.

38.   The Rules Committee conducted a public hearing on May 10, 2021, then passed along to the Superior Court its recommendation that the proposed Rule 8.4(7) be adopted.

39.   At their annual meeting in June 2021, the judges of the Superior Court adopted the proposed amendment by voice vote and without discussion.

40.   The new Rule 8.4(7) is scheduled to become effective on January 1, 2022.   It reads as follows:

> It is professional misconduct for a lawyer to: ... (7) Engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, color, ancestry, sex, pregnancy, religion, national origin, ethnicity, disability, status as a veteran, age, sexual orientation, gender identity, gender expression or marital status in conduct related to the practice of law.   This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation, or to provide advice, assistance or advocacy consistent with these rules.

41.   The amendment eliminated the previous Rule 8.4 Commentary regarding discriminatory conduct "in the course of representing a client," quoted above in Paragraph 30. It also deleted the following language from the Commentary: "A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists."   The amendment added the following material to the Rule 8.4 Commentary, all directly related to the new Rule 8.4(7):

> Discrimination and harassment in the practice of law undermine confidence in the legal profession and the legal system.   *Discrimination includes harmful verbal or physical conduct directed at an individual or individuals that manifests bias or prejudice on the basis of one or more of the protected categories.*   Not all conduct that involves consideration of these characteristics manifests bias or prejudice; there may be a legitimate nondiscriminatory basis for the conduct.

10

*Harassment includes severe or pervasive derogatory or demeaning verbal or physical conduct.*  Harassment on the basis of sex includes unwelcome sexual advances, requests for sexual favors and other unwelcome verbal or physical conduct of a sexual nature.

The substantive law of antidiscrimination and antiharassment statutes and case law should guide application of paragraph (7), where applicable.   Where the conduct in question is subject to federal or state antidiscrimination or antiharassment law, a lawyer's conduct does not violate paragraph (7) when the conduct does not violate such law.   Moreover, an administrative or judicial finding of a violation of state or federal antidiscrimination or antiharassment laws does not alone establish a violation of paragraph (7).

A lawyer's conduct does not violate paragraph (7) when the conduct in question is protected under the first amendment to the United States constitution or article first, § 4 of the Connecticut constitution.

Conduct *related to the practice of law* includes representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and *participating in bar association, business or professional activities or events in connection with the practice of law.*   Lawyers may engage in conduct undertaken to promote diversity, equity and inclusion without violating this Rule by, for example, implementing initiatives aimed at recruiting, hiring, retaining and advancing diverse employees or sponsoring diverse law student organizations.

A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of paragraph (7). Moreover, no disciplinary violation may be found where a lawyer exercises a peremptory challenge on a basis that is permitted under substantive law.   A lawyer does not violate paragraph (7) by limiting the scope or subject matter of the lawyer's practice to members of a particular segment of the population in accordance with these rules and other law.   A lawyer may charge and collect reasonable fees and expenses for a representation.   Rule 1.5 (a).   Lawyers should also be mindful of their professional obligations under Rule 6.1 to provide legal services to those who are unable to pay, and their obligation under Rule 6.2 not to avoid appointments from a tribunal except for good cause.   See Rule 6.2 (1), (2) and (3).   A lawyer's representation of a client does not constitute an endorsement by the lawyer of the client's views or activities.   See Rule 1.2 (b).

(Emphasis added).

11

### First Amendment Rights

42.   The First Amendment to the U.S. Constitution states that "Congress shall make no law . . . abridging the freedom of speech."   The provisions of the First Amendment were made applicable to the State of Connecticut by virtue of adoption of the Fourteenth Amendment.

43.   Article I, § 4 of the Connecticut Constitution provides similar protection to speech: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

44.   The First Amendment fully protects offensive, derogatory, or demeaning speech. Any state effort to single out such speech for sanction is a content-based and viewpoint-based speech restriction and is subject to the strictest of First Amendment scrutiny.   *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019); *Matal v. Tam*, 137 S. Ct. 1744 (2017).   Such speech restrictions will survive First Amendment scrutiny only if the government can demonstrate that the restriction serves a compelling state interest in a narrowly tailored manner.   *Id.*

45.   The First Amendment analysis does not change simply because the speech restriction is imposed on a lawyer.   "Derogatory" or "demeaning" speech is not subject to decreased constitutional protection simply because it is spoken by a lawyer in a setting "related to the practice of law."   The Supreme Court held in *Nat'l Inst. of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018), that the First Amendment protects "professional speech" just as fully as speech by nonprofessionals.

12

### Rule 8.4(7) Improperly Seeks to Restrict Derogatory/Demeaning Speech

46.   The Commentary accompanying Rule 8.4(7) states that the "conduct" prohibited by the Rule includes "harmful" speech and "derogatory or demeaning" speech.   Rule 8.4(7)'s prohibition of such speech is in severe tension with First Amendment case law because it imposes sanctions based on the content and viewpoint of the speech.

47.   That tension is heightened by a significant change from the pre-amendment version of Rule 8.4, which limits sanctions to lawyers who "knowingly" manifest discrimination.   In contrast, under new Rule 8.4(7), lawyers can be sanctioned even when they lack any intent to discriminate against or harass others.   It suffices to show that the attorney "reasonably should know" that his or her conduct constitutes discrimination or harassment.

48.   Rule 8.4(7) also greatly expands the scope of attorney speech subject to state control.   The pre-amendment version of Rule 8.4 applies only to objectionable speech "in the course of representing a client."   In contrast, the new Rule 8.4(7) covers speech in settings "related to the practice of law," and broadly defines that term to include, among other things, "participating in bar association, business or professional activities or events in connection with the practice of law."   That expansion compounds the First Amendment difficulties: while Connecticut may have some compelling interests in controlling the content of attorney speech in attorney-client and courtroom situations, that interest diminishes considerably the more removed the setting is from the courthouse.

49.   Rule 8.4(7)'s new focus on events unrelated to client representation is a major purpose of the amendment.   The President of the CBA testified at the February meeting of the Rules Committee of the Superior Court that the CBA's survey indicated that bar members who

complained that they had been subjected to harassment focused largely on misconduct at

"professional events, *e.g.*, bar association events, CLE, professional networking."

### Chilling of Plaintiffs' Speech

50.   Plaintiffs Cerame and Moynahan reasonably fear that they will be the subject of

professional misconduct complaints once Rule 8.4(7) becomes effective on January 1, 2022.

51.   As part of their law practices, Cerame and Moynahan regularly speak out on

controversial legal issues.   They do so through legal blogs, articles in legal publications,

continuing legal education (CLE) events, legal seminars, press releases, and public speeches.

Their speeches regularly address issues affecting several of the 15 groups protected by Rule

8.4(7), including the free exercise of religion and critical race theory.

52.   In their speeches, Cerame and Moynahan often speak in forceful terms when

criticizing opposing points of view.   Those expressing opposing points of view may well on

occasion construe Cerame's and Moynahan's criticisms as personally derogatory or demeaning.

53.   Cerame's and Moynahan's fears that they will face professional misconduct

complaints—and any repercussions thereof—are heightened by statements made by supporters

of Rule 8.4(7).   Those statements indicate that supporters are seeking to target comments similar

to those they routinely make.

54.   For example, one of the two sponsors of the proposal to adopt ABA Model Rule

8.4(g) testified at the May 2021 hearing conducted by the Rules Committee of the Superior

Court.   In support of her argument that the CBA proposal should be adopted, she recounted a

heated conversation she had with another lawyer at a recent bar-related event.   According to the

attorney-sponsor (who is African-American), she spoke at the bar-related event in support of

"racial justice" measures in the wake of the murder of George Floyd by a police officer.   The
other attorney responded by calling her a "race pandering nitwit" who was "suffering from black
entitlement."   She testified that the other attorney's speech constituted improper racial
discrimination and that "this conduct should never be okay."

55.   In fact, the other attorney's speech—while likely "derogatory or demeaning" and
apparently "harmful" to her sensibilities, and thus arguably actionable under Rule 8.4(7)—is
speech that is fully protected by the First Amendment.   Yet the statements of those supporting
adoption of Rule 8.4(7) make clear that Rule 8.4(7) was adopted precisely because its supporters
wanted to silence statements of the sort that she found objectionable.

56.   Neither Cerame nor Moynahan intends to harass or discriminate against any
members of the groups protected by Rule 8.4(7), but that lack of intent provides no protection for
their speech.   Given their well-founded fear that they could face a misconduct complaint under
Rule 8.4(7), and the repercussions thereof, they will feel forced to speak less openly after next
January 1 to reduce the likelihood that such a complaint will be filed.

57.   The Commentary to Rule 8.4(7) states that "A lawyer's conduct does not violate
paragraph (7) when the conduct in question is protected under the first amendment to the United
States constitution or article first, § 4 of the Connecticut constitution."   That boilerplate
language is largely meaningless; it provides Cerame and Moynahan with no constitutional
protection that they would not otherwise possess.   They would be entitled to raise a Free Speech
Clause defense to any Rule 8.4(7) charges filed against them, irrespective of whether the
Commentary includes the language quoted above.   It goes without saying that when the judges
of the Superior Court adopted a new Rule of Professional Conduct that they knew would regulate

15

speech, they did not do so with an intent to violate the U.S. and Connecticut constitutions.   But their adoption of Rule 8.4(7) nonetheless indicates their intent to proscribe speech of the sort identified in the rule, as well as their (mistaken) belief that the proscribed speech is not entitled to constitutional protection.

58.   There are numerous examples of speech that is fully protected by the First Amendment but that members of the Connecticut bar will be reluctant to express because they reasonably fear that doing so could result in an attorney misconduct complaint by those who deem the speech discriminatory.   Examples include:

• Using the pronoun associated with a transgender individual's biological sex when addressing that individual, rather than the individual's preferred pronoun;

• Using terms that some members of a protected group deem offensive but that the speaker does not; *e.g.*, "gender preference" rather than "gender orientation";

• Telling jokes to other attorneys that the speaker does not intend to be taken seriously but that some members of a protected group deem offensive;

• Espousing in good faith theories that some members of a protected group deem offensive; *e.g.,* theories espoused by sociologist Charles Murray that socioeconomic disparities among racial groups are to a large degree attributable to heritable group differences in cognition and adverse social behaviors, not systemic racial discrimination;

• Publishing cartoons that depict a religious deity in a satirical or mocking manner.

59.   There is additional evidence that Rule 8.4(7)'s principal purpose is to serve as a speech code for attorneys.   As Defendant Bowler stated in his email to the Rules Committee, "the current Rules of Professional Conduct," particularly Rule 8.4(4), "are applied robustly by the SGC and Superior Court to limit and deter" discriminatory *conduct* directed at the groups protected by Rule 8.4(7).   All agree, for example, that the law firm partner who pressures junior associates for sexual favors, or persistently harasses them on the basis of sex, is guilty of professional misconduct under current rules, and the SGC has not tolerated such misconduct. Thus, the only apparent purpose for adopting Rule 8.4(7) is to expand the scope of anti-discrimination rules to cover *speech* deemed objectionable.

60.   Even if some small portion of the speech proscribed by Rule 8.4(7) is not constitutionally protected, most of it is protected.   The Rule's focus on speech creates legitimate concerns in Cerame and Moynahan that they will be subjected to disciplinary proceedings and penalties for engaging in constitutionally protected speech.

### Vagueness

61.   Rule 8.4(7) prohibits a lawyer, in speech or conduct "related to the practice of law," from acting in a manner that constitutes "harassment or discrimination" on the basis of any one of 15 categories—including race, sex, religion, disability, sexual orientation, and gender identity.

62.   As the Statewide Grievance Committee conceded in the December 29, 2020 email submitted by Defendant Bowler, the terms "discrimination," "harassment," and "conduct related to the practice of law" are not clearly defined in either Rule 8.4(7) or the accompanying Commentary.

17

63.   That lack of clarity creates serious due process problems.   First, it deprives attorneys of the ability to discern what speech and conduct is proscribed, and they thus cannot know for sure in advance how to conform their conduct to the terms of the rule.   Because Rule 8.4(7) regulates speech, attorneys will be forced to chill their speech to provide extra assurance that they will not be the targets of enforcement proceedings.   Second, it grants enforcement personnel too much discretion to decide what speech is sanctionable and what speech is not.

## Connecticut Ignores Experience of Other States

64.   The ABA adopted Model Rule 8.4(g) in 2016.   In the ensuing five years, the great majority of States that considered Model Rule 8.4(g) declined to adopt it.   First Amendment concerns were frequently cited as a principal reason for not adopting the rule.

65.   When Connecticut began its consideration of Model Rule 8.4(g) in 2020, Pennsylvania was one of a small handful of States that had previously adopted the Model Rule.

66.   In December 2020, while the Rules Committee was considering adoption of the CBA's proposed Rule 8.4(7), a federal district court issued a preliminary injunction against enforcement of the Pennsylvania rule.   *Greenberg v. Haggerty*, 491 F. Supp. 3d 12 (E.D. Pa. 2020).   The court held, among other things, that the plaintiff was likely to succeed on his claim that Pennsylvania Rule 8.4(g) amounted to viewpoint-based speech discrimination in violation of the First Amendment and also was unconstitutionally vague.

67.   Pennsylvania has not appealed from the district court's ruling, and the preliminary injunction remains in place.

68.   Following the court decision, numerous groups and individuals (including the CBA) wrote to the Rules Committee to comment on the decision.

69.    The CBA's January 4, 2021 letter asserted that the Pennsylvania decision was distinguishable because, unlike Pennsylvania's rule, the CBA proposal focused on "discriminatory or harassing conduct, and not protected speech."

70.    The CBA's letter is inaccurate; as noted above, Rule 8.4(7)'s definitions of "discrimination" and "harassment" reveal the rule's focus on speech.    Indeed, Rule 8.4(7) is far more objectionable under the First Amendment than the Pennsylvania rule.    While the Pennsylvania rule provides that lawyers may be sanctioned only for "knowingly" engaging in harassment or discrimination, Rule 8.4(7) eliminates the "knowing" requirement from the Connecticut rule—employing instead a much less protective "reasonably should know" standard.

71.    The Rules Committee and the Superior Court adopted the CBA proposal as Rule 8.4(7) without any discussion of the *Greenberg* decision or its ramifications for the constitutionality of Rule 8.4(7).

## CLAIM I

## Violation of the First Amendment

72.    Plaintiffs Cerame and Moynahan repeat and incorporate by reference the allegations of Paragraphs 1 through 71 of the Complaint.

73.    Rule 8.4(7) imposes content-based and viewpoint-based discrimination against disfavored speech: "derogatory" or "demeaning" speech directed at members of protected groups.

74.    State officials have articulated no compelling interest for this discriminatory speech restriction, and the restriction is not narrowly tailored.    Accordingly, Rule 8.4(7) violates the First Amendment.

19

75.   Plaintiffs Cerame and Moynahan have been injured by the adoption of Rule 8.4(7) because their well-founded fears that they will be the target of a disciplinary complaint is imposing a chill on their speech activity.

76.   Defendants Bowler and Berger are the two Connecticut officials most responsible for ensuring enforcement of Rule 8.4(7).   In the absence of an injunction, they can be expected to begin enforcing Rule 8.4(7) on January 1, 2022.   An injunction against those two officials will ensure that the unconstitutional rule will not continue to be enforced.

## CLAIM II

## Violation of the Fourteenth Amendment

77.   Plaintiffs Cerame and Moynahan repeat and incorporate by reference the allegations of Paragraphs 1 through 76 of the Complaint.

78.   Rule 8.4(7)'s key terms—including the terms "discrimination," "harassment," "reasonably should know," and "conduct related to the practice of law"—are not well defined in either Rule 8.4(7) or the accompanying Commentary.

79.   As a result of that lack of clarity, Cerame and Moynahan are unable to discern in advance precisely what speech is prohibited by Rule 8.4(7), and enforcement officials are granted too much discretion to decide for themselves when to initiate misconduct proceedings against attorney speakers.

80.   The overly vague nature of Rule 8.4(7)'s speech restrictions violates Cerame's and Moynahan's rights under the Due Process Clause of the Fourteenth Amendment and imposes a chill on their speech activity.

81.   An injunction against Defendants Bowler and Berger in their official capacities would ensure that Rule 8.4(7) will not be enforced against Cerame and Moynahan in violation of the Due Process Clause.

## CLAIM III

### Violation of Article I, Section 4 of the Connecticut Constitution

82.   Plaintiffs Cerame and Moynahan repeat and incorporate by reference the allegations of Paragraphs 1 through 81 of the Complaint.

83.   Rule 8.4(7) imposes content-based and viewpoint-based discrimination against disfavored speech: "derogatory" or "demeaning" speech directed at members of protected groups.

84.   State officials have articulated no compelling interest for this discriminatory speech restriction, and the restriction is not narrowly tailored.   Accordingly, Rule 8.4(7) violates Article I, Section 4 of the Connecticut Constitution.

85.   An injunction against Defendants Bowler and Berger in their official capacities would ensure that Rule 8.4(7) will not be enforced against Cerame and Moynahan in violation of the Connecticut Constitution.

## CLAIM FOUR

### Violation of Article III, Section 1 of the Connecticut Constitution

86.   Plaintiffs Cerame and Moynahan repeat and incorporate by reference the allegations of Paragraphs 1 through 85 of the Complaint.

87.   Article II of the Connecticut Constitution creates three distinct branches of government: the legislative, executive, and judicial branches.

21

88.   Article V of the Connecticut Constitution establishes courts to exercise the judicial power.   Included therein is the power to establish rules governing judicial proceedings; that power encompasses regulating the conduct of individuals (including attorneys) engaged in such proceedings. That power does *not* authorize the courts to establish rules governing the speech of attorneys when they are not directly engaged in the practice of law.

89.   Instead, the power to establish rules governing such speech is vested in the general assembly by Article III, Section 1 of the Connecticut Constitution, which states that "the legislative power of the state shall be vested in two distinct houses or branches, the one to be styled the senate, the other the house of representatives, and both together the general assembly."

90.   Rule 8.4(7) purports to establish rules governing attorney speech unrelated to matters implicated by the courts' Article V judicial powers.   In particular, the Commentary to Rule 8.4(7) states that the Rule applies to statements made while an attorney participates in "bar association, business or professional activities or events in connection with the practice of law." Any attempt by the courts to establish rules regulating such speech is an exercise of legislative power.   The Superior Court's adoption of Rule 8.4(7) thus violates Article III, Section 1 of the Connecticut Constitution, which vests the legislative power in the general assembly alone.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Mario Cerame and Timothy Moynahan respectfully pray that the Court award the following relief against Defendants:

A.   A declaration that Defendants, by enforcing Rule 8.4(7) of the Professional Rules of Conduct, are violating Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 4 and Article III, Section 1 of the Connecticut Constitution;

B.   An injunction against the processing of any misconduct complaint submitted under Section 2-32 of the Superior Court Rules, to the extent that the misconduct complaint alleges a violation of Rule 8.4(7) of the Rules of Professional Conduct;

C.   An injunction against taking any action under Sections 2-35, 2-36, or 2-37 of the Superior Court Rules, with respect to a determination filed by a Grievance Panel with the Statewide Grievance Committee, to the extent that the Grievance Panel has based its determination on a violation of Rule 8.4(7);

D.   Nominal damages in the amount of $1 to each Plaintiff;

E.   Such other relief as the Court deems just and proper, including an award of attorneys' fees and costs.

Plaintiffs demand a jury trial.

Dated: November 10, 2021      Respectfully submitted,

<u>/s/ Margaret Little</u>
Margaret Little, CT Bar No. 303494
Richard A. Samp
 (*Pro hac vice* applied for)
New Civil Liberties Alliance
1225 19th Street, NW, Suite 450
Washington, DC 20036
rich.samp@ncla.legal
202-869-5210

Counsel for Plaintiff

EXHIBIT A

**O'Donnell, Shanna**

RC # 2020-012 c

| | |
|---|---|
| **From:** | Cecil Thomas <CThomas@ghla.org> |
| **Sent:** | Friday, September 11, 2020 5:31 PM |
| **To:** | Del Ciampo, Joseph; McDonald, Andrew |
| **Cc:** | amy@almesq.com; Megan Wade; Stovall, Marcy; 'Keith Soressi'; Chapman, Bill (bchapman@ctbar.org) |
| **Subject:** | Connecticut Bar Association Proposed Amended Rules of Professional Conduct 8.4(7) |
| **Attachments:** | CBACorrespondenceJusticeMcDonald8.4(7).pdf |

Dear Attorney DelCiampo,

Attached please find correspondence from the Connecticut Bar Association, regarding the September 14, 2020 Rules Committee Supplemental Agenda Item No. 14 (American Bar Association Model Rule 8.4(g)).

Thank you for your consideration.

Sincerely yours,

Cecil J. Thomas
President-elect
Connecticut Bar Association



30 Bank Street
PO Box 350
New Britain
CT 06050-0350
*06051 for 30 Bank Street*

P: (860) 223-4400
F: (860) 223-4488

Sent Via Email (Joseph.DelCiampo@jud.ct.gov)

September 11, 2020

Honorable Andrew J. McDonald
Connecticut Supreme Court
Chair, Superior Court Rules Committee
231 Capital Avenue
Hartford, CT 06106

Re:   Proposal to Amend Rule 8.4 of the Connecticut Rules of Professional
Conduct to define discrimination, harassment and sexual harassment in
conduct related to the practice of law as professional misconduct

Dear Justice McDonald,

I write on behalf of the Connecticut Bar Association to propose an amendment to Rule 8.4 of the Connecticut Rules of Professional Conduct that would define discrimination, harassment and sexual harassment as professional misconduct.  Proposed Amended Rule 8.4(7) was approved by a substantial majority of the Connecticut Bar Association House of Delegates at a special meeting held on September 10, 2020.  I respectfully request that the proposal be placed on the Rules Committee's agenda for September 14, 2020.

On June 5, 2020, the Rules Committee considered a proposal, submitted by Attorney Megan Wade, to adopt American Bar Association Model Rule 8.4(g).  "After discussion, the Committee decided to table this proposal to the September meeting to allow Attorney Wade to coordinate with the Connecticut Bar Association and to submit additional materials to the Committee for review." Minutes of the Meeting, Rules Committee of the Superior Court, June 5, 2020.

On June 15, 2020, the Connecticut Bar Association presented this request to its House of Delegates, and announced the formation of a CBA working group to consider the matter.  I served as the chair of that working group, as President-elect of the Connecticut Bar Association and co-chair of its Diversity and Inclusion Committee.  The CBA 8.4(7) Working Group met numerous times to develop Proposed Amended Rule 8.4(7).  In doing so, the Working Group took significant care in ensuring that the Proposed Amended Rule addressed discrimination, harassment and sexual harassment in conduct related to the practice of law, while also addressing common concerns and criticisms of American Bar Association Model Rule 8.4(g).

Discrimination, harassment, and sexual harassment on the basis of protected statuses should have no place in the practice of law, particularly in the context of a profession that

struggles so significantly with achieving meaningful diversity and inclusion. We are a self-regulated profession, one that aspires to the highest levels of ethics and adherence to the rule of law. The pursuit of justice, equity, and equality are among the most ancient and highest principles of our profession. The inclusion of a prohibition on discrimination, harassment and sexual harassment, within our Rules of Professional Conduct and not solely in the commentary, is long overdue.

More than half the states now include provisions addressing bias, prejudice, discrimination, and/or harassment in their black letter Rules. The Rules of Professional Conduct have been in effect in Connecticut since 1986. Thirty-four years later, it is time to amend Connecticut's Rule 8.4 to squarely address discrimination and harassment as a matter of professional conduct.

The Connecticut Bar Association has undertaken an effort to survey members of the profession to understand attorneys' experience with discrimination, harassment and sexual harassment. In just a few days since opening this survey, hundreds of respondents have reported that they have experienced or witnessed discrimination, harassment or sexual harassment in conduct related to the practice of law. Many have chosen to share their stories, in anonymous form, recounting difficult experiences with discrimination, harassment or sexual harassment on the basis of one or more protected statuses in professional contexts.

The Connecticut Bar Association's Proposed Amended Rule 8.4(7) and Amended Commentary addresses the same subject matter as American Bar Association Model Rule 8.4(g): discrimination, harassment and sexual harassment in conduct related to the practice of law. We have made adjustments to the text of the rule, for the sake of clarity, and revised the rule to ensure that the protected statuses listed are consistent with Connecticut state law. The proposed amendment of the Commentary differs in a number of respects from MRPC 8.4(g). Those differences reflect the Working Group's efforts to tailor the reach of the Rule so that it does not circumscribe lawyers' rights under the First Amendment of the Constitution of the United States or Article First, Section 4 of the Connecticut Constitution, and to make clear that only harmful discrimination, or severe or pervasive harassment in a professional setting come within the reach of the rule.

Between June 15th and September 1st, 2020, the Connecticut Bar Association Diversity and Inclusion Committee, Standing Committee on Professional Ethics, Young Lawyers Section, Human Rights and Responsibilities Section, LGBT Section, Women in the Law Section, Veterans and Military Affairs Section, Professionalism Committee, Professional Discipline Section, Litigation Section, and Labor and Employment Section voted approval of Proposed Amended Rule 8.4(7). On September 2, 2020, the Connecticut Bar Association Legislative and Policy Review Committee voted unanimously, with one abstention, that the proposal had merit and should be referred to the Connecticut Bar Association House of Delegates. The Connecticut Bar Association House of Delegates, at a special meeting on September 10, 2020, voted approval of Proposed Amended Rule 8.4(7), in a vote of 39 in favor, 11 opposed, and 1 abstention.

I have attached the Proposed Amended Rule 8.4 (7) and the Proposed Commentary as those changes would appear in the Rules of Professional Conduct, as well as a comparison

between the Connecticut Bar Association Proposed Amended Rule 8.4(7) and Commentary and the American Bar Association Model Rule 8.4(g).

Thank you for your consideration of this request.

Respectfully submitted,

Cecil J. Thomas
2020-21 President-elect
Connecticut Bar Association

Enclosure

cc:     Amy Lin Meyerson (via email)
        Megan Wade (via email)
        Marcy Stovall (via email)
        Keith Soressi (via email)
        Bill Chapman (via email)

**Proposed Amendment of Connecticut Rule 8.4 and Official Commentary, showing variations from current Rule 8.4 and related Commentary (<u>additions to current version underlined</u>; [deletions from current version in brackets])**

**Rule 8.4. Misconduct**

It is professional misconduct for a lawyer to:

(1) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

2) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(4) Engage in conduct that is prejudicial to the administration of justice;

(5) State or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; [or]

(6) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law[.]<u>; or</u>

<u>(7) Engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, color, ancestry, sex, pregnancy, religion, national origin, ethnicity, disability, status as a veteran, age, sexual orientation, gender identity, gender expression or marital status in conduct related to the practice of law.  This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation, or to provide advice, assistance or advocacy consistent with these Rules.</u>

Official Commentary:

Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another, as when they request or instruct an agent to do so on the lawyer's behalf. Subdivision (1), however, does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take.

Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of wilful failure to file an income tax return. However, some kinds of offenses carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving ''moral turpitude.'' That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, which have no specific connection to fitness for the practice of law. Although a lawyer is personally

answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation. Counseling or assisting a client with regard to conduct expressly permitted under Connecticut law is not conduct that reflects adversely on a lawyer's fitness notwithstanding any conflict with federal or other law. Nothing in this commentary shall be construed to provide a defense to a presentment filed pursuant to Practice Book Section 2-41.

[A lawyer who, in the course of representing a client, knowingly manifests by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, violates subdivision (4) when such actions are prejudicial to the administration of justice. Legitimate advocacy respecting the foregoing factors does not violate subdivision (4). A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists.]

Discrimination and harassment in the practice of law undermine confidence in the legal profession and the legal system. Discrimination includes harmful verbal or physical conduct directed at an individual or individuals that manifests bias or prejudice on the basis of one or more of the protected categories.  Not all conduct that involves consideration of these characteristics manifests bias or prejudice: there may be a legitimate nondiscriminatory basis for the conduct.

Harassment includes severe or pervasive derogatory or demeaning verbal or physical conduct. Harassment on the basis of sex includes unwelcome sexual advances, requests for sexual favors and other unwelcome verbal or physical conduct of a sexual nature.

The substantive law of antidiscrimination and antiharassment statutes and case law should guide application of paragraph (7), where applicable. Where the conduct in question is subject to federal or state antidiscrimination or antiharassment law, a lawyer's conduct does not violate paragraph (7) when the conduct does not violate such law. Moreover, an administrative or judicial finding of a violation of state or federal antidiscrimination or antiharassment laws does not alone establish a violation of paragraph (7).

A lawyer's conduct does not violate paragraph (7) when the conduct in question is protected under the First Amendment of the Constitution of the United States or Article First, Section 4 of the Connecticut Constitution.

Conduct related to the practice of law includes representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or professional activities or events in connection with the practice of law.  Lawyers may engage in

conduct undertaken to promote diversity, equity and inclusion without violating this Rule by, for example, implementing initiatives aimed at recruiting, hiring, retaining and advancing diverse employees or sponsoring diverse law student organizations.

A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of paragraph (7).  Moreover, no disciplinary violation may be found where a lawyer exercises a peremptory challenge on a basis that is permitted under substantive law.  A lawyer does not violate paragraph (7) by limiting the scope or subject matter of the lawyer's practice or by limiting the lawyer's practice to members of a particular segment of the population in accordance with these Rules and other law.  A lawyer may charge and collect reasonable fees and expenses for a representation. Rule 1.5(a).  Lawyers also should be mindful of their professional obligations under Rule 6.1 to provide legal services to those who are unable to pay, and their obligation under Rule 6.2 not to avoid appointments from a tribunal except for good cause.  See Rule 6.2(1), (2) and (3).  A lawyer's representation of a client does not constitute an endorsement by the lawyer of the client's views or activities.  See Rule 1.2(b).

The provisions of Rule 1.2 (d) concerning a good faith challenge to the validity, scope, meaning or application of the law apply to challenges of legal regulation of the practice of law.

Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of a lawyer. The same is true of abuse of positions of private trust, such as trustee, executor, administrator, guardian, agent and officer, director or manager of a corporation or other organization.

**September 11, 2020**

**Proposed Amendment of Connecticut Rule 8.4(7) and Official Commentary**
**(Showing differences between MPRC 8.4(g) and proposed Connecticut RPC 8.4(7)**
**(<u>additions to MRPC 8.4(g) underlined</u>;[deletions from MRPC 8.4(g) in brackets]), )**

**Rule 8.4. Misconduct**

It is professional misconduct for a lawyer to:

. . .

(7) Engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, <u>color, ancestry,</u> sex, <u>pregnancy,</u> religion, national origin, ethnicity, disability, <u>status as a veteran,</u> age, sexual orientation, gender identity, <u>gender expression or</u> marital status [or socioeconomic status] in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation [in accordance with Rule 1.16. This paragraph does not preclude] <u>or to provide</u> [legitimate] advice, <u>assistance</u> or advocacy consistent with these Rules.


OFFICIAL COMMENTARY

. . .

Discrimination and harassment[by lawyers in violation of paragraph (g)] <u>in the practice of law</u> undermine confidence in the legal profession and the legal system. [Such d]Discrimination includes harmful verbal or physical conduct <u>directed at an individual or individuals</u> that manifests bias or prejudice [toward others] <u>on the basis of one or more of the protected categories.  Not all conduct that involves consideration of these characteristics manifests bias or prejudice: there may be a legitimate nondiscriminatory basis for the conduct.</u>

Harassment includes [sexual harassment and] <u>severe or pervasive</u> derogatory or demeaning verbal or physical conduct.  [Sexual h]Harassment [on the basis of sex] includes unwelcome sexual advances, requests for sexual favors, and other unwelcome verbal or physical conduct of a sexual nature.

The substantive law of antidiscrimination and antiharassment statutes and case law [may] <u>should</u> guide application of paragraph (7)<u>, where applicable. Where the conduct in question is subject to federal or state antidiscrimination or antiharassment law, a lawyer's conduct does not violate paragraph (7) when the conduct does not violate such law. Moreover, an administrative or judicial finding of a violation of state or federal antidiscrimination or antiharassment laws does not alone establish a violation of paragraph (7).</u>

45  A lawyer's conduct does not violate paragraph (7) when the conduct in question is protected
46  under the First Amendment of the Constitution of the United States or Article First, Section 4 of
47  the Connecticut Constitution.
48
49  Conduct related to the practice of law includes representing clients; interacting with witnesses,
50  coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or
51  managing a law firm or law practice; and participating in bar association, business or [social]
52  professional activities or events in connection with the practice of law.  Lawyers may engage in
53  conduct undertaken to promote diversity, equity and inclusion without violating this Rule by, for
54  example, implementing initiatives aimed at recruiting, hiring, retaining and advancing diverse
55  employees or sponsoring diverse law student organizations.
56
57  A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does
58  not alone establish a violation of paragraph (7).  Moreover, no disciplinary violation may be
59  found where a lawyer exercises a peremptory challenge on a basis that is permitted under
60  substantive law.  A lawyer does not violate paragraph (7) by limiting the scope or subject matter
61  of the lawyer's practice or by limiting the lawyer's practice to members of [underserved] a
62  particular segment of the population[s] in accordance with these Rules and other law.  A lawyer
63  may charge and collect reasonable fees and expenses for a representation. Rule 1.5(a).  Lawyers
64  also should be mindful of their professional obligations under Rule 6.1 to provide legal services
65  to those who are unable to pay, and their obligation under Rule 6.2 not to avoid appointments
66  from a tribunal except for good cause.  *See* Rule 6.2(1), (2) and (3).  A lawyer's representation of
67  a client does not constitute an endorsement by the lawyer of the client's views or activities.  *See*
68  Rule 1.2(b).

EXHIBIT B

**O'Donnell, Shanna**                                    RC ID # 2020-012 fff

| | |
|---|---|
| **From:** | Bowler, Michael |
| **Sent:** | Tuesday, December 29, 2020 12:39 PM |
| **To:** | Rules Committee; Staines, Brian |
| **Cc:** | Del Ciampo, Joseph; 'MATTHEW BERGER'; Slack, Christopher |
| **Subject:** | RE: Rules Committee Proposal concerning Rule 8.4 (RC ID # 2020-012) |

**Importance:**        High

Dear Attorney Del Ciampo,

At a meeting on December 17, 2020, the Statewide Grievance Committee ("SGC") reviewed the proposal submitted by the Connecticut Bar Association ("CBA") dated September 11, 2020, to amend Rule 8.4 of the Rules of Professional Conduct to add a new subsection 7 ("the proposal"):

It is professional misconduct for a lawyer to:

. . .

(7) Engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, color, ancestry, sex, pregnancy, religion, national origin, ethnicity, disability, status as a veteran, age, sexual orientation, gender identity, gender expression or marital status in conduct related to the practice of law.  This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation, or to provide advice, assistance or advocacy consistent with these rules.

The proposal was referred to the SGC for comment by the Rules Committee of the Superior Court ("Rules Committee") following the Rules Committee's December meeting. Additionally, the SGC reviewed the comments on the proposal submitted by various interested stakeholders.  At the time of the referral, those comments ranged from exhibit a to qq, but Counsel to the SGC provided the SGC members with the link https://www.jud.ct.gov/Committees/rules/proposals.htm so the members could review additional submissions, which stretched to eee by the time of the SGC meeting.

 After discussion, the SGC unanimously voted to take no position on the proposal but made the following observations about it:

1. Other than to observe that the proposal is constitutionally charged, the SGC will not comment on whether the proposal is constitutional under either the United States or Connecticut constitutions. The SGC noted that a substantial portion of the submissions to the Rules Committee are a back and forth among commenters regarding the constitutionality of the proposal.  The SGC is certain that the Rules Committee is well aware of the issue and determined that the SGC was not in a position to advise the Rules Committee on the matter.

2. The SGC had concerns about the breadth and clarity of the rule and looked to the proposal's commentary for guidance.  The SGC noted that the three major terms in the proposal are "discrimination," "harassment," and "conduct related to the practice of law." In the SGC's opinion, the terms are not clearly defined in either the proposal or its commentary.  The SGC was especially concerned that in attempting to define these terms the commentary noted that proscribed conduct "includes" certain things, but the SGC noted that "includes" begs the follow up:  "includes, but is not limited to . . . ."  The SGC determined that a rule of this significance should have its most important terms defined more specifically.  Accordingly, the SGC concluded that neither the proposal nor its commentary provided sufficient guidance to the bar and bar regulators on exactly what is meant by "discrimination," "harassment," or "conduct related to the practice of law."  The SGC observed that Maine added more concrete definitions for "discrimination," "harassment," and

1

"related to the practice of law" in the rule itself (Exhibit a, p. 38), see https://mebaroverseers.org/regulation/bar_rules.html?id=88291#:~:text=8.4%20Misconduct&text=(g)%20engage%20in%20conduct%20or,sexual%20orientation%2C%20or%20gender%20identity, and the SGC recommended that the Rules Committee consider a similar approach.

Finally, the SGC noted that in the commentary "conduct related to the practice of law:"

includes representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or professional activities or events in connection with the practice of law.

The proposed commentary implies that the term "conduct related to the practice of law" applies both at work and at any work-related or quasi work-related event, such as a bar association social event, a law firm function, or even a continuing legal education activity. The SGC was concerned that Rule 8.4(7) was too sweeping in its proposed application.

3. Generally, the SGC questioned the need for the proposal. In other words, the SGC asked: does Connecticut need a new rule to address instances of misconduct that are going unchecked because there are no other Rules of Professional Conduct that address them? Connecticut has several rules that arguably control discriminatory, harassing, and otherwise inappropriately lewd behavior. Rules 1.7 and 1.8 prohibit conflicts of interest, Rule 1.8(j) specifically prohibiting a sexual relationship with a client. Rule 3.1 prohibits frivolous pleadings and is applicable to litigants who abuse process to harass an opponent. Rule 3.4 requires an attorney to act fairly to an opposing party and counsel. Rule 3.5 prohibits conduct meant to "disrupt a tribunal or ancillary proceeding." Rule 4.4 prohibits a lawyer from "us[ing] means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such person."

Admittedly, the application of Rules 1.7, 1.8, 3.1, 3.4, 3.5, and 4.4 is much narrower than the scope of the proposal. These existing rules generally apply to situations involving the representation of clients (see e.g. Rule 4.4(a), "[i]n representing a client . . ."). One other rule that applies, however, without such restrictive language is Rule 8.4(4):

It is professional misconduct for a lawyer to:

. . .

(4) Engage in conduct that is prejudicial to the administration of justice.

In theory, Rule 8.4(4) applies to an attorney's discriminatory and harassing conduct arising from the practice of law. The SGC noted that in the proposed commentary the CBA deleted the following existing commentary to Rule 8.4(4):

A lawyer who, in the course of representing a client, knowingly manifests by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, violates subdivision (4) when such actions are prejudicial to the administration of justice.

It appears that in theory Rule 8.4(4) already applies to much of what Rule 8.4(7) tries to prevent, albeit in a fashion that the ABA and CBA believes is too narrow. In application, Rule 8.4(4) has been used by the SGC and the Superior Courts to proscribe all manners of conduct that are unbecoming to the legal profession.

Finally, the following is a digest of some cases where current Rules of Professional Conduct were applied in situations that might be covered by the proposal.

**Gina Bunch v. Steven Levy, Grievance #04-0871**

During a settlement conference of a marriage dissolution, the Complainant questioned the need for psychological evaluations. The Respondent replied to this stating that someone in the room has a psychological problem while staring

at the Complainant.  He then began to hum the theme from the "Twilight Zone".  Later when walking past the complainant in the courtroom, the Respondent began humming the "Twilight Zone" theme again.  The reviewing committee concluded "[t]he Respondent's humming of the 'Twilight Zone' theme toward the Complainant, on two separate occasions, had no substantial purpose other than to embarrass or burden the Complainant, in violation of Rule 4.4 of the Rules of Professional Conduct."  The Respondent was reprimanded.

### Newson v. Rana, Grievance Complaint #16-0722

The Respondent was in the courthouse and told female court staff he would be waiting for a court ruling in his office "jerking off", he shouted obscenities in the courthouse and gave court staff the middle finger.  The Respondent agreed to continuing mental health treatment and continuing legal education as discipline. Rule 8.4(4).

### Danbury JD Grievance Panel v. David Holzbach, Grievance Complaint #12-0702

The Respondent prosecutor was accused of voyeurism and taking inappropriate pictures of women at the courthouse without their knowledge.  Probable cause of misconduct was found.  The Respondent requested that the Superior Court place him on inactive status due to disability, which is his current status.

### Chief Disciplinary Counsel v. Zelotes, 152 Conn. App. 380 (2014)

Attorney suspended five months for consensual relationship with client.  Attorney initiated friendship with client and her husband who had marital difficulties.  Attorney inserted himself into a dating relationship with the client and began to represent her in a dissolution.  Attorney's failure to understand why his relationship was inappropriate was an aggravating factor in the case.

### Berchem Moses & Devlin v. Kovack, Grievance Complaint #15-0759

The Respondent entered into a secret romantic relationship with an opposing party in a legal matter.  The Respondent violated Rules Rule 1.7(d).  He agreed to a reprimand, CLE and psychiatric treatment.

### Waterbury JD Grievance Panel v. Robert Serafinowicz, Grievance Complaint #15-0599

The Respondent violated Rule 8.4(2) by pursuing a harassment campaign against a former friend and colleague.  He was warned by both the police and the court to stop, but failed to do so.  He was ordered presented to Court.  The Respondent was suspended for 120 days, suspended after ten days.

### Cherie Cioffi v. Prescott May, Grievance Complaint #18-0582

The Respondent resigned and waived his right to reinstatement to the Bar before the Superior Court, in part because he was accused of improperly touching his client and propositioning her.  He was charged with violating Rules 8.4(2) and (4).

### Donnelly v. Fiedler, Grievance Complaint #18-0183

The Respondent was investigated by the Judicial Branch for making inappropriate comments to an employee of the court service center.  The Respondent was reprimanded for violating Rule 8.4(4).

### Ansonia Milford JD Grievance Panel v. Jonathan Garow, Grievance Complaint #20-0002 (pending)

The Respondent allegedly sexually harassed subordinates at work in the courthouse over many years.  On December 15, 2020, the Superior Court (Sheridan, J.) suspended the Respondent for six months and found that the conduct violated Rule 8.4(4) of the Rules of Professional Conduct.

**Heena Kapadia v. Andrew Bottinick, Grievance #97-0350**

Complainant and Respondent were opposing counsel in a case.  The Respondent trapped the Complainant in the revolving door at the Danbury Superior Court.  The Respondent screamed and yelled at the Complainant while she was trapped in the revolving door.  The reviewing committee concluded that the Respondent violated Rule 8.4(4), an act prejudicial to the administration of justice, because his conduct was an act of violence and abuse, occurred on court property, occurred in connection with a pending case, and offended his opposing counsel and placed her in fear.  The Respondent was reprimanded.

**Fairfield Judicial District Grievance Panel v. Joseph Mirsky, Grievance #95-0968**

At a pretrial, the Respondent showed up with alcohol on his breath, rudely interrupted opposing counsel and made an obscene hand gesture indicating male masturbation during opposing counsel's presentation. The Respondent's conduct continued even after opposing counsel indicated his behavior was offensive. The family services counselor ended the pretrial because he was personally offended.  The Respondent had an in camera meeting with Judge Mintz where he apologized to opposing counsel and later sent her an apology letter.  Judge Mintz also referred him to the Statewide Grievance Committee.  The reviewing committee concluded that the Respondent had no substantial purpose other than to embarrass opposing counsel and the family services counselor in violation of Rule 4.4.  They also concluded that the Respondent engaged in conduct that was intended to disrupt a tribunal in violation of Rule 3.5(c).  The Respondent was reprimanded.

**Susan Patton Fox v. Mark H. Swerdloff, Grievance #99-0680**

During a deposition, the Respondent stated: "What, are you kidding?  Get out of my office if you're going to talk during my deposition.  You're a moron.  Get out.  You keep your mouth shut, understand that?"  He referred to the deponent as pal and the deponent objected.  He then said: "Pal.  Would you prefer chump?"  The Respondent was standing up and yelling at the deponent during the exchange.  The Respondent then pulled the Complainant, opposing counsel, aside after the deposition.  He threatened to ruin her career and sue her personally unless she withdrew the case.  He also told her that this was a bad way to start her career.  The court reporter overheard this conversation and testified that she had never seen such hostile behavior from an attorney and that the Respondent concluded by approaching the complainant very closely and screaming at her to get her things and get out.  The reviewing committee concluded the Respondent violated Rule 4.4 because his threats had no substantial purpose other than to embarrass, delay, or burden the Complainant.  The committee also found that this conduct violated Rule 8.4(4) since it occurred during a deposition.  The Respondent was reprimanded and ordered to take a continuing legal education (CLE) course in legal ethics.

**Farid v. David Gussak, Grievance #11-0850**

On cross-examination at trial, the Respondent referred to the Complainant as "you Arab piece of shit."  The Respondent was ordered to take a continuing legal education course.  Rule 3.5(4).

**Matters Involving Suspended Attorney Ira Mayo**

A.       Constantine v. Ira Mayo, Grievance Complaint #02-0799
B.       Hubert v. Ira Mayo, Grievance Complaint #13-0058
C.       Humphrey v. Ira Mayo, Grievance Complaint #03-0209
D.       Birch v. Ira Mayo, Grievance Complaint #04-0295
E.       Anthony v. Ira Mayo, Grievance Complaint #05-0710
F.       Fuentes v. Ira Mayo, Grievance Complaint #05-0781
G.       Litchfield JD Grievance Panel v. v. Ira Mayo, Grievance Complaint #08-0767
H.       Castro v. Ira Mayo, Grievance Complaint #14-0190

I.       Linda Mayo v. v. Ira Mayo, Grievance Complaint #16-0290

J.       Memorandum of Decision, Disciplinary Counsel v. Ira Mayo, Docket Number MMX-CV-04-4001322-S, Judicial District of Middlesex at Middletown (Sept. 30, 2005).

K.       Order, Disciplinary Counsel v. Mayo, MMX-CV-09-6001189-S (Holzberg, J.) (July 13, 2010)

L.       Order, Chief Disciplinary Counsel v. Ira Mayo, Docket No. MMX-CV09-6001189, (Aurigemma, J) (July 2, 2014).

M.       Order, Chief Disciplinary Counsel v. Ira Mayo, Docket No. MMX-CV09-6001189, (Domnarski, J.) J.D. of Middlesex at Middletown (December 3, 2014)

N.       Office of Chief Disciplinary Counsel v. Ira Mayo, Docket Number UWY-CV16-6032650-S (Taylor, J.) (January 1, 2016).

In the Ira Mayo cases, the Respondent attorney was alleged to have repeatedly sexually harassed clients and some court staff including exchanging sex for legal services.  He originally received a suspension with an automatic reinstatement and a restriction on his license that he no longer represent women.  Eventually he violated the terms of his indefinite restriction and was again placed on suspension, but was required to apply for reinstatement.  He has not successfully applied for reinstatement.

**Conclusion**

The SGC acknowledged that the CBA had the best of intentions with the proposal, hence the SGC is not taking a formal position opposing it.  The type of misconduct proscribed by the proposal is odious to say the least, and has no place anywhere in society, and certainly not in a profession dedicated to fairness and justice. Nevertheless, the SGC had concerns over the clarity and scope of the rule and was concerned that its language may present more problems than solutions in its application.  The SGC noted that the current Rules of Professional Conduct are applied robustly by the SGC and Superior Court to limit and deter the conduct described the proposal and its commentary.

The SGC thanked the Rules Committee for giving it the opportunity to comment on the proposal.

**Michael P. Bowler**
Statewide Bar Counsel
Statewide Grievance Committee
287 Main Street
Second Floor, Suite Two
East Hartford, CT  06118-1885
860.568.5157

---

**From:** Rules Committee <RulesCommittee@jud.ct.gov>
**Sent:** Sunday, December 20, 2020 12:59 PM
**To:** Bowler, Michael <Michael.Bowler@jud.ct.gov>; Staines, Brian <Brian.Staines@jud.ct.gov>
**Cc:** Del Ciampo, Joseph <Joseph.DelCiampo@jud.ct.gov>
**Subject:** Rules Committee Proposal concerning Rule 8.4 (RC ID # 2020-012)

At its meeting on November 16, 2020, the Rules Committee of the Superior Court considered a proposal to revise Rule 8.4, a substitute proposal, and various comments (RC ID # 2020-012).

After discussion, the Committee tabled the matter until its January 11, 2021 meeting and gave members of the public until 12/4/20 to submit their comments. The comments received to date have been posted to https://jud.ct.gov/Committees/rules/proposals.htm

While the Committee did not set a specific deadline for comments from your respective offices, please forward them to this email address (RulesCommittee@jud.ct.gov) as soon as possible, so that they may be circulated to the members of the Committee in advance of the meeting.

Thank you,

*Shanna O'Donnell*

Research Attorney, Legal Services
Connecticut Judicial Branch
100 Washington Street, 3rd Flr
Hartford, CT 06106
860-706-5120

*This e-mail and any attachments or links transmitted with it are for the sole use of the intended recipient(s) and may be protected by the attorney/client privilege, work product doctrine, or other confidentiality provision. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution, use, or action taken in reliance on the contents of this communication is STRICTLY PROHIBITED. Please notify the sender immediately by e-mail if you have received this in error and delete this e-mail and any attachments and links from your system. Any inadvertent receipt or transmission shall not be a waiver of any privilege or work product protection. The Connecticut Judicial Branch does not accept liability for any errors or omissions in the contents of this communication which arise as a result of e-mail transmission, or for any viruses that may be contained therein. If verification of the contents of this e-mail is required, please request a hard-copy version.*