**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **MARIO CERAME** and | ) |
| **TIMOTHY C. MOYNAHAN** | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    **Case No. 3:21cv-01502-AWT** |
| | ) |
| **MICHAEL P. BOWLER,** in his official capacity | ) |
| as Connecticut Statewide Bar Counsel; and | )    **ORAL ARGUMENT** |
| **MATTHEW G. BERGER**, in his official capacity | )    **REQUESTED** |
| as Chair of the Statewide Grievance Committee, | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

Richard A. Samp
  (admitted *pro hac vice*)
Margaret Little, CT Bar No. 303494
New Civil Liberties Alliance
1225 19th Street NW, Suite 450
Washington, DC 20036
202-869-5210
rich.samp@ncla.legal

February 17, 2022            Counsel for Plaintiffs

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.      DEFENDANTS ARE NOT ENTITLED TO ELEVENTH AMENDMENT IMMUNITY . . . . . . . . . . . . 8

        A.      Plaintiffs Allege an Ongoing Violation of the U.S. Constitution . . . . . . . . . . . . . 8

        B.      Plaintiffs Have Sued Proper Parties for Purposes of *Ex parte Young*. . . . . . . . . 11

II.     PLAINTIFFS POSSESS ARTICLE III STANDING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.      Defendants Have Significantly Overstated the Showing Required to Establish
                Injury-in-Fact in First Amendment Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.      Defendants' Reliance on *Clapper v. Amnesty Int'l USA* Is Misplaced Because
                It Is Neither a First Amendment Case nor an Enforcement Action . . . . . . . . . . 17

        C.      Plaintiffs Have Adequately Alleged an "Actual and Well-Founded Fear" that
                They Will Be Targets of a Rule 8.4(7) Misconduct Allegation . . . . . . . . . . . . . . 20

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

i

# TABLE OF AUTHORITIES

Pages(s)

**Cases:**

*American Booksellers Found. v. Dean*,
  342 F.3d 96 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16
*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15
*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19
*Conn. Ass'n of Health Care Facilities, Inc. v. Rell*,
  2020 WL 2232693 (D. Conn. June 3, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Ex parte Young*,
  209 U.S. 123 (1908). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 11, 12, 13
*Florida League of Professional Lobbyists, Inc. v. Meggs*,
  87 F.3d 457 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
*Goodspeed Airport LLC v. East Haddam Inland Wetlands and Watercourses Comm'n*,
  632 F. Supp. 2d 185 (D. Conn. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*Greenberg v. Haggerty*,
  491 F. Supp. 3d 12 (E.D. Pa. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 23, 24, 25
*Harrell v. Florida Bar*,
  608 F.3d 1241 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
*Iancu v. Brunetti*,
  139 S. Ct. 2294 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Index Newspapers LLC v. U.S. Marshals Serv.*,
  977 F.3d 319 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
*Knife Rights, Inc. v. Vance*,
  802 F.3d 377 (2d Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
*Laird v. Tatum*,
  408 U.S. 1 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
*Libertarian Party of Connecticut v. Merrill*,
  2016 WL 10405920 (D. Conn. Jan. 26, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 24
*Lujan v. Nat'l Wildlife Federation*,
  497 U.S. 871 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Matal v. Tam*,
  137 S. Ct. 1744 (2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Melendez v. City of New York*,
  16 F.4th 992 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ii

**Page(s)**

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 19

*Papasan v. Allain*,
  478 U.S. 265 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10

*Rubin v. Garvin*,
  544 F.3d 461 (2d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26

*Speech First, Inc. v. Killeen*,
  968 F.3d 628 (7th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 82 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Western Mohegan Tribe and Nation v. Orange County*,
  395 F.3d 18 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Whole Woman's Health v. Jackson*,
  142 S. Ct. 522 (2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Vermont Right to Life Committee, Inc. v. Sorrell*,
  221 F.3d 376 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15, 16, 24

*Virginia v. American Booksellers Ass'n*,
  484 U.S. 383 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


**Statutes and Constitutional Provisions:**

U.S. Const., Art. III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13, 15, 18, 19, 23

U.S. Const., Art. III, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

U.S. Const., amend. i . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6, 8, 9, 10, 15, 16, 19, 21, 23, 26

U.S. Const., amend. xi . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 8, 9, 10, 11, 12

U.S. Const., amend. xiv . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Foreign Intelligence Surveillance Act (FISA). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
      50 U.S.C. § 1881 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

**Page(s)**

**Rules:**

Fed.R.Civ.P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Connecticut Rules for the Superior Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        § 2-32(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        § 2-33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        § 2-34A(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        § 2-35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        § 2-36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        § 2-37(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        § 2-38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Connecticut Rules of Professional Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 12, 22, 23
        Rule 8.4(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 22
        Rule 8.4(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
        Commentary accompanying Rule 8.4 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22
        Commentary accompanying Rule 8.4 (2022) . . . . . . . . . . . . . . . . . . 2, 3, 10, 22

Pennsylvania Rule of Professional Conduct 8.4(g) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 23, 24, 25

American Bar Association Model Rules of Professional Conduct . . . . . . . . . . . . . . . . . . . . . . . 4
        Rule 8.4(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 21


**Miscellaneous:**

David Lat, *The Latest (Ridiculous) Controversy at Yale Law School*, ORIGINAL JURISDICTION
  (Oct. 14, 2022), https://davidlat.substack.com/p/the-latest-ridiculous controversy . . . . . . . . . 25

Neil Vigdor, *Georgetown Suspends Lecturer Who Criticized Vow to Put Black
  Women on Court*, NEW YORK TIMES (Jan. 31, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

iv

## INTRODUCTION

Plaintiffs assert a facial constitutional challenge to Rule 8.4(7), a recently adopted provision of the Connecticut Rules of Professional Conduct that took effect on January 1, 2022. The complaint asserts, among other things, that Rule 8.4(7) violates the First and Fourteenth Amendment because it imposes content- and viewpoint-based speech restrictions and because its overly vague terms fail to provide sufficient guidance regarding what speech it prohibits.

Defendants' motion to dismiss does not dispute either of those constitutional claims. Indeed, it never mentions the words "vagueness," "content-based," or "viewpoint-based." Instead, the motion asserts that this Court lacks jurisdiction to hear the claims. Defendants contend that the suit is barred by the Eleventh Amendment and that Plaintiffs lack standing to challenge Rule 8.4(7).

In light of the Rule's clear constitutional infirmities, Defendants' efforts to divert attention from the merits of Plaintiffs' claims is unsurprising. In any event, the motion to dismiss lacks merit and should be denied. The Eleventh Amendment is inapplicable to claims against state officials charged with enforcing a challenged provision when, as here, the complaint alleges an ongoing violation of federal law and seeks prospective relief.

Defendants' standing argument fares no better. Defendants assert that Plaintiffs Mario Cerame and Timothy Moynahan have not adequately alleged injury-in-fact. But the complaint provides detailed factual allegations demonstrating that the speech of both Cerame and Moynahan has been chilled as a direct result of Rule 8.4(7)'s enactment and that the chill arises from the well-founded fear that their speech could generate a misconduct complaint. Second Circuit case law—none of which Defendants cite or refute—establishes that the chill on Plaintiffs' speech suffices to establish standing to assert their First Amendment claims.

Importantly, discriminatory *conduct* by lawyers "in the course of representing a client" has long been prohibited by the Connecticut Rules of Professional Conduct. *See* Rule 8.4(4) and the recently deleted Commentary accompanying that rule. Rule 8.4(7) broadens that prohibition by extending it to include "*verbal* … conduct directed at an individual or individuals that manifests bias or prejudice on the basis of one or more of [fifteen] protected categories." It also broadens coverage to include verbal or physical conduct by lawyers while engaged in a wide range of activities beyond representing clients, including "participating in bar association, business or professional activities or events in connection with the practice of law." In other words, Rule 8.4(7) essentially establishes a speech code for lawyers.

But Rule 8.4(7) does not apply to *all* attorney speech that arguably is prejudicial to the administration of justice or undermines the integrity of the bar. Instead, it limits its prohibition to speech about specified topics, and it prohibits only certain viewpoints regarding those topics (*e.g.*, speech that "manifests bias or prejudice" against those coming within one of the protected categories). The Supreme Court has long held that such content- and viewpoint-based speech restrictions cannot withstand First Amendment scrutiny. *See, e.g., R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992). In other words, Rule 8.4(7)'s speech restrictions have *no* constitutionally valid applications. Nor do Connecticut officials need Rule 8.4(7) to root out discriminatory *conduct* within the legal profession; Rule 8.4(4) has long been available for that purpose.

Since Rule 8.4(7) became effective on January 1, 2022, Plaintiffs have felt compelled to cut back on what they say for fear that they might be the target of a misconduct complaint. Particularly in light of recent events, including statements by one of the Rule's two sponsors regarding the types

of speech the Rule is intended to target, their fears are well-founded and suffice to establish their standing to challenge the Rule.

Because of the importance of the constitutional rights at stake and the novel legal theories raised by Defendants, Plaintiffs request that the Court permit oral argument on the motion.

## STATEMENT OF THE CASE

This case is before the Court on Defendants' motion to dismiss the complaint under Fed.R.Civ.P. 12.  For purposes of the motion, all factual allegations in the complaint must be "accepted as true," and all material properly before the Court is to be considered "in the light most favorable to plaintiffs."  *Melendez v. City of New York*, 16 F.4th 992, 996 (2d Cir. 2021).

Rule 8.4(7), which took effect on January 1, 2022, provides as follows:

> It is professional misconduct for a lawyer to: ... (7) Engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, color, ancestry, sex, pregnancy, religion, national origin, ethnicity, disability, status as a veteran, age, sexual orientation, gender identity, gender expression or marital status in conduct related to the practice of law.  This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation, or to provide advice, assistance or advocacy consistent with these rules.

The Commentary accompanying Rule 8.4(7) makes clear that the proscribed "conduct" includes spoken words as well as physical actions.  It defines "discrimination" as "includ[ing] harmful verbal or physical conduct directed at an individual or individuals that manifests bias or prejudice on the basis of one or more of the protected categories."  It defines "harassment" as "includ[ing] severe or pervasive derogatory or demeaning verbal or physical conduct."

Before 2022, the Connecticut Rules of Professional Conduct addressed harassment/ discrimination misconduct complaints against lawyers under Rule 8.4(4), which states that it is "professional misconduct" for a lawyer to "Engage in conduct that is prejudicial to the administration

3

of justice."  Complaint ¶ 27.  Rule 8.4(7) expands the scope of the anti-discrimination edict considerably.  Before 2022, it applied only to attorney conduct "in the course of representing a client"; Rule 8.4(7) eliminates that limitation.  *Id.* ¶¶ 27, 41.  Rule 8.4(4) included a strict scienter requirement.  *Id.* ¶ 27 (limiting the prohibition to lawyers who "knowingly" manifest "bias or prejudice").  Rule 8.4(7) eliminates that scienter requirement, stating that it applies to any lawyer who "knows *or reasonably should know*" that his speech/actions constitute "harassment or discrimination."  (Emphasis added.)

Rule 8.4(7) is modeled after Rule 8.4(g) of the American Bar Association's (ABA) Model Rules of Professional Conduct.  Connecticut is among a distinct minority of States that has followed the ABA's lead; the only other States in that group are New Mexico, Pennsylvania, and Vermont.  The great majority of States that considered Model Rule 8.4(g) declined to adopt it.  *Id.* ¶ 64.  First Amendment concerns were frequently cited by those States as a principal reason for not adopting the rule.  *Ibid.*

When Connecticut began its consideration of Model Rule 8.4(g) in 2020, Pennsylvania was one of the small handful of States that had adopted a version of the Model Rule.  *Id.* ¶ 65.  In December 2020, while the Rules Committee of the Superior Court was considering adoption of proposed Rule 8.4(7), a federal district court issued a preliminary injunction against enforcement of the Pennsylvania rule.  *Greenberg v. Haggerty*, 491 F. Supp. 3d 12 (E.D. Pa. 2020).  The court held, among other things, that the plaintiff had standing to bring a pre-enforcement challenge to Pennsylvania Rule 8.4(g), and that he was likely to succeed on his claim that the rule amounted to a viewpoint-based speech restriction that violated the First Amendment and also was unconstitutionally vague.  *Ibid*.  Pennsylvania did not appeal from the district court's ruling, which

4

remains in place.  Complaint ¶ 67.  The Rules Committee and the Superior Court adopted Rule 8.4(7) without any discussion of the *Greenberg* decision or its ramifications for the constitutionality of Rule 8.4(7).  *Id.* ¶ 71.  Connecticut's restrictions on attorney speech are broader than those imposed by the enjoined Pennsylvania rule, which (unlike Rule 8.4(7)) included a strict scienter requirement: lawyers could be sanctioned only for "knowingly" engaging in harassment or discrimination.  *Id.* ¶ 70.

Enforcement of the Connecticut Rules of Professional Conduct are governed by the Rules for the Superior Court.  "Any person" is entitled to file a complaint alleging attorney misconduct. Rules for the Superior Court, § 2-32(a).  The initial stage of the enforcement process is assigned to Connecticut's Statewide Bar Counsel; he must review all complaints and recommend to the Statewide Grievance Committee whether investigation of the complaint should go forward.  *Ibid.*; Complaint ¶¶ 20-24.  Defendant Michael P. Bowler is Statewide Bar Counsel, and Defendant Matthew G. Berger is Chair of the Statewide Grievance Committee.  *Ibid.*  Thus, investigation of an attorney misconduct complaint cannot proceed without the concurrence of Bowler and/or Berger and the Statewide Grievance Committee that Berger chairs.

One option available to Defendants is to refer a misconduct complaint to a local grievance panel for further investigation.  *Ibid.*  If a grievance panel to which a complaint has been referred finds probable cause that any attorney is guilty of misconduct, then it is up to Berger and the Statewide Grievance Panel to oversee both the prosecution and hearing on the charges.  Complaint ¶ 25; Rules for the Superior Court, §§ 2-33, 2-35, 2-36.  If the attorney contests the sanctions they determine to be appropriate, Berger and the Statewide Grievance Panel may direct one of their subordinates, the Disciplinary Counsel, to prosecute a presentment proceeding against the attorney

in Superior Court.  Complaint ¶ 25; Rules for the Superior Court, §§ 2-37(c), 38, 34A(b)(7).  In sum, Defendants Bowler and Berger play central roles in the enforcement of Connecticut's Rules of Professional Conduct.

## SUMMARY OF ARGUMENT

The Eleventh Amendment to the U.S. Constitution imposes strict limits on federal-court jurisdiction over suits "commenced or prosecuted against one of the United States."  That Amendment has no application here because Plaintiffs are not suing a State.  Rather, they are suing two Connecticut officials to prevent them from enforcing Connecticut Rule of Professional Conduct 8.4(7), a facially unconstitutional rule adopted by the Connecticut Superior Court.  The Supreme Court has long held that because States lack authority to enact provisions that (as here) violate the U.S. Constitution, unconstitutional enactments are a legal nullity—and thus that the Eleventh Amendment does not deprive federal courts of jurisdiction to enjoin state officials from enforcing the provisions.  *Ex parte Young*, 209 U.S. 123 (1908).

Defendants argue that they are employed by the judicial branch of Connecticut government and that *Ex parte Young* authorizes suits against executive branch officials only.  But *Ex parte Young* is not so constrained; it permits suits for prospective relief against *any* state officials who (like Defendants) are charged with enforcing an unconstitutional state law, regardless of the branch of state government into which a State has chosen to place them.  *Western Mohegan Tribe and Nation v. Orange County*, 395 F.3d 18, 21 (2d Cir. 2004).

Plaintiffs have Article III standing to facially challenge Rule 8.4(7).  A plaintiff bringing a pre-enforcement First Amendment challenge against an enactment need not demonstrate to a certainty that he will be prosecuted in order to establish the requisite injury-in-fact, but need only

demonstrate that he has "an actual and well-founded fear that the law will be enforced against [him]." *Vermont Right to Life Committee, Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000). The Complaint includes many factual allegations that buttress Plaintiffs' contentions that their fear of a Rule 8.4(7) enforcement action is "well-founded" and is causing them to restrain their speech. A federal district court in Pennsylvania has found that a lawyer's fear of prosecution under Pennsylvania's substantially similar Rule of Professional Conduct constituted injury-in-fact sufficient for purposes of establishing standing to challenge the rule. *Greenberg*, 491 F. Supp. 3d at 19-25.

The reasonableness of Plaintiffs' fear of an enforcement action is heightened by Rule 8.4(7)'s alteration of the scienter requirement. While the Rules formerly authorized the sanctioning of a lawyer for "knowingly" manifesting bias or prejudice, a lawyer may now be sanctioned under Rule 8.4(7) if he or she "reasonably should know" that his or her speech is harassment or discrimination. Watering down the scienter requirement is particularly troublesome with respect to Plaintiffs' vagueness claim. Where (as here) a speech restriction imposes a loosened scienter requirement and permits speakers to be sanctioned even when they do not "knowingly" violate a Rule of Professional Conduct, the chill created by the allegedly vague speech restriction is particularly severe. Lawyers must be acutely wary of speaking freely when forced to guess when speech they do not consider either "harassment" or "discrimination" might be so labeled by others.

## ARGUMENT

### I.   DEFENDANTS ARE NOT ENTITLED TO ELEVENTH AMENDMENT IMMUNITY

The complaint alleges that Rule 8.4(7) is facially unconstitutional; it violates Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution.  Defendants Michael Bowler and Matthew Berger are the two Connecticut officials most responsible for enforcing Rule 8.4(7). If Plaintiffs prove their allegations at trial or summary judgment, they are entitled to injunctive relief barring Defendants from enforcing an unconstitutional statute against them.   The Eleventh Amendment, which imposes limits on suits against *States* in federal court, has no application where, as here, the defendants are *state officials* alleged to be acting in violation of federal constitutional rights.  *Ex parte Young*, 209 U.S. at 159-160.  Defendants' motion to dismiss on Eleventh Amendment grounds should be denied.

### A.   Plaintiffs Allege an Ongoing Violation of the U.S. Constitution

Defendants' Eleventh Amendment argument misconstrues Eleventh Amendment case law. While that amendment bars suit against a State in federal court without its consent, a suit to enjoin a state official from enforcing an unconstitutional state enactment is not barred.  *Papasan v. Allain*, 478 U.S. 265, 276 (1986).  If the enactment is unconstitutional and thus void, "any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity since the state authorization for such action is a nullity"—and thus may be enjoined by a federal court. *Ibid.*  As *Ex parte Young* explained:

> If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the

consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the Supreme Authority of the United States.

209 U.S. at 159-160.

Defendants' contention that they are entitled to Eleventh Amendment immunity because they have not initiated enforcement proceedings under Rule 8.4(7) (Def. Br. 12-17) is without merit. Rule 8.4(7) took effect on January 1 and is certainly not a moribund enactment. "Courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). Indeed, Defendants do not dispute that they intend to enforce Rule 8.4(7). Under those circumstances, the Eleventh Amendment does not bar Plaintiffs' effort to enjoin enforcement of what they allege is an unconstitutional rule.

Defendants argue that the Eleventh Amendment bars this suit because they do not plan to apply Rule 8.4(7) unless and until they determine that a lawyer's speech both violates the Rule and is not entitled to First Amendment protection. Def. Br. 15-16. But Defendants' alleged good faith is irrelevant. Plaintiffs are not challenging the manner in which Defendants might apply Rule 8.4(7); they are challenging the Rule as facially unconstitutional—it violates the First and Fourteenth Amendments because it is neither content- nor viewpoint-neutral and is overly vague. In other words, *any* effort by Defendants to apply Rule 8.4(7) violates the Constitution; it cannot constitutionally be applied to sanction any sort of attorney speech.

"Content-based regulations are presumptively invalid." *R.A.V.*, 505 U.S. at 382. As the Supreme Court explained in *R.A.V.*, speech generally viewed as entitled to little or no First Amendment protection (*e.g.*, obscenity or "fighting words") may be broadly proscribed by the

9

government without reference to its content, but the government nonetheless may *not* proscribe only those obscenities that address particular subjects or that express particular viewpoints. *Id*. at 382-85. It may not, for example, "enact an ordinance prohibiting only those legally obscene works that contain criticism of the city government." *Id.* at 384. Rule 8.4(7) seeks to proscribe speech based on its content (the Rule only applies to speech relating to 15 protected groups) and its viewpoint (the Rule only applies to speech that "manifests bias or prejudice" against members of the protected groups or that is "pervasively derogatory or demeaning" toward them). Rule 8.4(7) is thus invalid even if some of the speech subject to the Rule would be entitled to little or no First Amendment protection and could have been proscribed under a content-neutral statute.[1]

Defendants assert that they are entitled to Eleventh Amendment immunity because the suit is premature; they assert that federal courts may not intervene until "an ongoing violation of federal law" is occurring. Def. Br. 14. But, as explained above, the Complaint alleges that "an ongoing violation" of the First and Fourteenth Amendments has indeed been taking place ever since Rule 8.4(7) became effective. To the extent that Defendants are alleging that the Eleventh Amendment bars suit because Plaintiffs (allegedly) have not suffered an injury, that is simply a rehash of their standing argument, which Plaintiffs address fully *infra*. The Complaint spells out in detail how the enactment of Rule 8.4(7) has injured them. *See* Complaint ¶¶ 11-20, 50-63.

---

[1] The validity of Plaintiffs' allegation that Rule 8.4(7) is a content- and viewpoint-based speech restriction has *not* been placed at issue here; that is, Defendants' motion to dismiss on jurisdictional grounds does not also allege that the complaint fails to state a claim under which relief can be granted. In any event, the Supreme Court's recent decisions in *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019), and *Matal v. Tam*, 137 S. Ct. 1744 (2017), make crystal clear that Rule 8.4(7) does, indeed, impose both content-based and viewpoint-based restrictions on speech. *See, e.g., Iancu*, 139 S. Ct. at 2301 (stating that "a law disfavoring ideas that offend discriminates based on viewpoint, in violation of the First Amendment").

### B.    Plaintiffs Have Sued Proper Parties for Purposes of *Ex parte Young*

Defendants also assert that they are entitled to Eleventh Amendment immunity because they are part of the judicial branch of Connecticut government.  They argue that *Ex parte Young* is inapplicable to the judicial branch.  Def. Br. 17-19.

That argument is unpersuasive.  The *Ex parte Young* doctrine "allows a suit for injunctive [or declaratory] relief *challenging the constitutionality of a state official's actions in enforcing state law*." *Goodspeed Airport, LLC v. East Haddam Inland Wetlands and Watercourses Comm'n*, 632 F. Supp. 2d 185, 188 (D. Conn. 2009) (quoting *Western Mohegan Tribe*, 395 F.3d at 21) (emphasis added by district court).  In other words, state *enforcement* officials are proper defendants in an *Ex parte Young* proceeding, regardless of the branch of state government into which a State has chosen to place them.  Defendants' contention that they are officials within Connecticut's judicial branch does not provide them with Eleventh Amendment immunity for their enforcement activity.

Defendants' immunity claim, which is unsupported by any case law, would provide States with a straightforward means of avoiding federal-court review of all unconstitutional enforcement activity: simply place the relevant enforcement officials under the direct control of their courts. Particularly in light of Defendants' declaration in their motion that they do not consent to having the alleged violations of the state Constitution adjudicated in federal court, and the fact that any state-court action would come before the very court (Connecticut's Superior Court) that adopted Rule 8.4(7), Defendants' assertion would render Plaintiffs' constitutional claims effectively unreviewable by *any* court.

Defendants' reliance on *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), is misplaced.  That decision held that the plaintiffs' challenge to a Texas law imposing abortion

restrictions could be maintained against Texas officials charged with enforcing the law, 142 S. Ct. at 535-37, but that other defendants, including state-court judges, were entitled to Eleventh Amendment immunity because the law did not impose any enforcement responsibilities on them. *Id.* at 531-35.  In explaining why the Eleventh Amendment barred a suit to enjoin Texas judges and court clerks from issuing judgments under the abortion statute, the Court stated that *Ex parte Young* "does not normally permit federal courts to issue injunctions against state-court judges or clerks. *Usually*, those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties."  *Id.* at 532 (emphasis added).  In contrast, Defendants *do* "enforce state laws as executive officials might" and thus *are* subject to suit in federal court under *Ex parte Young*.

Defendants also deny that they have "a particular duty to enforce" Rule 8.4(7) and allege that "Plaintiffs have not named the correct defendants" possessing enforcement authority under the Rule. Def. Br. 20-21.  Tellingly, Defendants have not identified which other official(s) they believe possess the requisite enforcement authority.  In any event, Defendants' claim is insubstantial; the Complaint provides a detailed explanation of Defendants' central role in enforcing Connecticut's Rules of Professional Conduct.  As Statewide Bar Counsel, Defendant Bowler is charged with reviewing all complaints alleging misconduct by Connecticut-licensed attorneys and with making the initial decision regarding whether *any* investigation of incoming complaints is warranted.  Complaint ¶¶ 21-22.  Defendant Berger is Chair of the State Grievance Committee (SGC), which: (1) oversees the Statewide Bar Counsel's initial screening of misconduct complaints; (2) in appropriate cases, refers those complaints to a local grievance panel for further investigation; (3) arranges for hearings in cases in which local grievance panels have found probable cause that an attorney is guilty of

misconduct (and arranges for a subordinate official to prosecute the charges); and (4) if an attorney contests the sanctions the SGC determines to be appropriate, directs one of its subordinates, the Disciplinary Counsel, to prosecute a presentment proceeding against the attorney in Superior Court. Complaint ¶¶ 23-25.  For *Ex parte Young* to apply, "the defendant state officer 'must have some connection with enforcement of the [challenged] act.'" *Connecticut Ass'n of Health Care Facilities, Inc. v. Rell*, 2010 WL 2232693 at *5 (D. Conn. June 3, 2010) (quoting *Ex parte Young*, 209 U.S. at 157).  Defendants easily satisfy the "some connection" standard.

Finally, Defendants allege that they are immune from suit because "there is no indication of a threatened enforcement action, imminent or otherwise, based on any protected speech that Plaintiffs purportedly wish to engage in."  Def. Br. 21.  But, as noted above, *any* enforcement of facially unconstitutional enactments such as Rule 8.4(7) is improper, and Defendants do not assert that Rule 8.4(7) will not be enforced.  Under those circumstances, *Ex parte Young* authorizes Plaintiffs to seek injunctive relief against state officials charged with its enforcement.

## II.   PLAINTIFFS POSSESS ARTICLE III STANDING

Defendants also move to dismiss based on an assertion that the Court lacks jurisdiction over this matter because Plaintiffs have not adequately alleged Article III standing.  Def. Br. 22-32.  In particular, they argue that Plaintiffs have failed to adequately allege that they have been injured by Connecticut's adoption of Rule 8.4(7).  That argument is unpersuasive; accepting as true all factual allegations in the Complaint and considering all materials before the Court in the light most favorable to Plaintiffs, the Complaint alleges facts sufficient to show that Rule 8.4(7) has injured them.

A.      **Defendants Have Significantly Overstated the Showing Required to Establish Injury-in-Fact in First Amendment Cases**

Article III, § 2 of the Constitution extends the "judicial Power" of the United States only to "Cases" and "Controversies," terms intended to confine courts to addressing matters "traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998). Standing to sue "is part of the common understanding of what it takes to make a justiciable case." *Ibid.*

The three elements that constitute the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), are well established. The plaintiff must demonstrate: (1) "an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical"; (2) "causation—a fairly traceable connection between the plaintiff's injury and the complained of conduct"; and (3) "redressability—a likelihood that the requested relief will redress the alleged injury." *Citizens for a Better Environment*, 523 U.S. at 103 (citations omitted).

Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Accordingly, a plaintiff's evidentiary burden to establish standing is far lighter at the pleading stage than at later stages of the litigation. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Ibid.* (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1991)). The Complaint's allegations that adoption of Rule 8.4(7) has injured

Plaintiffs by inducing them to refrain from speech based on a reasonable fear that they otherwise could be charged with violating the Rule suffice to satisfy *Lujan*'s "general allegations" standard.

Defendants argue that Plaintiffs cannot demonstrate standing unless they can allege that injury is "certainly impending." Def. Br. 23. Defendants' certainly-impending standard is contrary to the First Amendment standing requirements specified in relevant Second Circuit decisions—none of which Defendants' motion cites.

Injury sufficient to confer Article III standing exists "when a plaintiff is chilled from exercising her right to free expression or foregoes expression in order to avoid enforcement consequences." *Libertarian Party of Connecticut v. Merrill*, 2016 WL 10405920 at *4 (D. Conn. Jan. 26, 2016) (citation omitted). Because a First Amendment plaintiff's injury is not confined to the effects of actual enforcement actions but may also consist of the *present-day* chill on free-expression rights, the Second Circuit has repeatedly rejected the certainly-impending enforcement standard espoused by Defendants. In upholding a plaintiff's standing to challenge a statute facially on First Amendment grounds, the appeals court held:

> A plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has "an actual and well-founded fear that the law will be enforced against" it.

*Vermont Right to Life Committee*, 221 F.3d at 382 (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383 (1988)). *See also American Booksellers Found. v. Dean*, 342 F.3d 96, 101 (2d Cir. 2003) (quoting *Vermont Right to Life Committee*'s "actual and well-founded fear" standard); *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013) (same); *Cayuga Nation*, 824 F.3d

at 321 (stating that the Supreme Court has "set[ ] a low threshold" for establishing standing based on fear of enforcement and "is quite forgiving to plaintiffs seeking such preenforcement review").

Moreover, on several occasions the Second Circuit has stated explicitly that it applies more relaxed standing criteria in First Amendment cases than in other cases in which a plaintiff alleges that fear of government enforcement has caused him to forgo the exercise of rights. *See American Booksellers Found.*, 342 F.3d at 101 (stating that "[t]he standard for [establishing standing to bring] non-First Amendment claims is slightly higher" than for First Amendment claims);[2] *Nat'l Org. for Marriage*, 714 F.3d at 689 (stating that "we assess pre-enforcement First Amendment claims, such as the ones [plaintiff] brings, under somewhat relaxed standing and ripeness rules"). While acknowledging that "[a] plaintiff must allege something more than an abstract fear that his rights are chilled in order to establish a case or controversy," *Nat'l Org. for Marriage* explained that:

> [A] real and imminent fear of such chilling is enough. ... [W]ithout the possibility of pre-enforcement challenges, plaintiffs contesting statutes or regulations on First Amendment grounds "face an unattractive set of options if they are barred from bringing a facial challenge": refraining from activity they believe the First Amendment protects, or risk civil or criminal penalties for violating the challenged law.

*Ibid.* (citing *Florida League of Professional Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 459 (11th Cir. 1996)).

The Second Circuit's relaxed standing requirements in First Amendment cases are consistent with decisions from other federal appeals courts. *See, e.g., Speech First, Inc. v. Fenves*, 979 F.3d

---

[2] The appeals court explained that a plaintiff meets "the threshold for establishing standing for a First Amendment claim" by demonstrating "an actual and well-founded fear that the law will be enforced against them," while a non-First Amendment plaintiff must meet a "higher" threshold for establishing standing: "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Ibid.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

319, 330-31 (5th Cir. 2020) ("Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement"); *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020) ("A chilling of First Amendment rights can constitute a cognizable injury, so long as the chilling effect is not based on a fear of future injury that itself [is] too speculative to confer standing.") (citations omitted); *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) (stating that a plaintiff may demonstrate standing by "show[ing] a chilling effect on his speech that is objectively reasonable, and that he self-censors as a result"); *Harrell v. Florida Bar*, 608 F.3d 1241, 1255 (11th Cir. 2010) ("[W]e apply the injury-in-fact requirement most loosely where First Amendment rights are involved, lest free speech be chilled even before the law or regulation is enforced.").

### B.   Defendant's Reliance on *Clapper v. Amnesty Int'l USA* Is Misplaced Because It Is Neither a First Amendment Case nor an Enforcement Action

In arguing that Plaintiffs lack Article III standing, Defendants rely almost exclusively on a single U.S. Supreme Court decision, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).  That reliance is wholly misplaced; *Clapper* did not address the standing issues presented here.  The *Clapper* plaintiffs were not subject to any sort of enforcement action under the challenged statute, and the case did not involve the First Amendment in any meaningful way.

*Clapper* was a Fourth Amendment facial challenge to a provision of the Foreign Intelligence Surveillance Act (FISA) that allows the federal government (subject to court approval) to engage in surveillance of noncitizens while they are located outside the United States, to acquire "foreign intelligence information."  50 U.S.C. § 1881.  The plaintiffs were U.S.-based lawyers and human rights organizations who were not themselves permissible targets of § 1881 surveillance but who

nonetheless feared that their telephone calls with noncitizens located overseas might be intercepted if those noncitizens were targeted under § 1881.  The plaintiffs alleged that those fears led them to incur expenses to reduce the possibility that their conversations would be intercepted.  The Court held that the plaintiffs lacked standing in the absence of evidence that their alleged injury was "actual or imminent."  568 U.S. at 409.  It concluded that the plaintiffs' fear of future injury was based on a "speculative chain of possibilities" that involved too many steps and the independent actions of too many third parties to establish "a substantial risk" that the plaintiffs would suffer the injury-in-fact necessary to establish Article III standing.  *Id.* at 414 & n.5.

*Clapper* is wholly inapposite.  The only government action that the plaintiffs feared was that the federal government might inadvertently intercept some of their phone conversations while engaged in § 1881 national-security surveillance of overseas noncitizens—an intercept that the plaintiffs alleged would violate their Fourth Amendment rights.  Section 1881 is inapplicable to U.S. citizens such as the *Clapper* plaintiffs, and it does not provide for criminal or civil enforcement actions against anyone.[3]

In sharp contrast, Plaintiffs Cerame and Moynahan's challenge to Rule 8.4(7) involves an enactment which, if invoked against them, could result in the loss of their licenses to practice law. More importantly, they allege that the challenged enactment is injuring them right now by chilling their freedom of expression—and the Second Circuit has repeatedly held that such allegations of chilling suffice to establish standing to raise First Amendment claims, so long as the fear of

---

[3] Moreover, *Clapper* ultimately held that it made no difference whether Article III standing required the plaintiffs to show a "substantial risk" of future injury or imposed a somewhat higher standard, because the plaintiffs could not meet even the less stringent "substantial risk" standard. *Id.* at 414 n.5.

enforcement action is actual and well-founded.  Indeed, the Second Circuit strongly reaffirmed its position (that standing is subject to a somewhat relaxed standard in First Amendment cases) in *Nat'l Org. for Marriage*, 714 F.3d at 689, which was decided after the Supreme Court handed down *Clapper.*

The *Clapper* plaintiffs also raised a "chill" argument, but they did so in a context that has never been recognized as sufficient to establish Article III standing.  They did not argue that the federal government was affirmatively regulating their speech; rather, they argued that their fear of surveillance was causing them to incur costs to avoid surveillance.  Citing its earlier decision in *Laird v. Tatum*, 408 U.S. 1 (1972), the Court held that the fear of surveillance does not suffice to establish an individual's Article III standing to raise a First Amendment claim where the only potential harm is that the government might use information gleaned from surveillance to "take some *other* and additional action detrimental to that individual."  *Clapper*, 568 U.S. at 417-18 (quoting *Laird*, 408 U.S. at 11).  The claims deemed insufficient to establish Article III standing in *Clapper* bear no resemblance to Plaintiffs' claims.  Plaintiffs challenge a Connecticut rule that affirmatively restricts and chills their speech and that, in the event of an enforcement action, could directly destroy their livelihoods and reputations.

### C.   Plaintiffs Have Adequately Alleged an "Actual and Well-Founded Fear" that They Will Be Targets of a Rule 8.4(7) Enforcement Action

The complaint includes many factual allegations regarding Plaintiffs' fear of enforcement action, why that fear is reasonable, and why that fear has caused them to refrain from certain types of speech related to their practice of law, in an effort to reduce the likelihood that they will be the targets of a Rule 8.4(7) enforcement action.  Complaint ¶¶ 11-19, 50-63.  Those factual allegations must be accepted as true for purposes of this motion to dismiss.  Considering those allegations in the light most favorable to Plaintiffs, they suffice to meet Plaintiffs' minimal pleadings-stage burden of demonstrating an "actual and well-founded fear" of an enforcement action.

The Complaint alleges that Plaintiffs have an "actual" fear "that they may be sanctioned [under Rule 8.4(7)] for the sorts of statements they have made in the past."  *Id.* ¶ 5.  The only issue that remains is whether the Complaint satisfactorily alleges that their fear is "well-founded."  Numerous factual assertions support the "well-founded" allegation:

- Both Cerame and Moynahan regularly speak out on issues of public concern as part of their practice of law—both in connection with legal proceedings and in forums unconnected to their representation of clients (*e.g.,* participating in bar association, business, and professional activities such as panel discussions, know-your-rights training, networking events, legal seminars, press releases, speeches, and continuing legal education).  *Id.* ¶¶ 2, 3, 11, 12, 18, 51.

- Both Cerame and Moynahan often speak in forceful terms when criticizing opposing points of view.  Because of their use of forceful language, Cerame and Moynahan reasonably believe that those holding opposing points of view may well on occasion construe their criticisms as personally derogatory or demeaning.  *Id.* ¶¶ 14, 15, 19, 52.

- The topics on which Cerame and Moynahan often speak forcefully include race and religion.  Both topics are directly addressed by Rule 8.4(7), which prohibits lawyers from harassing or discriminating against anyone on the basis of race or religion.  If Cerame and Moynahan use forceful language in discussing those topics and a listener views such speech as derogatory or demeaning, they reasonably fear that they could

be charged with violating Rule 8.4(7), which (among other things) bars "severe or pervasive derogatory or demeaning verbal or physical conduct," and speech that "manifests bias or prejudice on the basis of" race or religion.  *Id.* ¶¶ 13-16, 18, 50, 51.

- Cerame and Moynahan have set out in Paragraph 58 examples of the sorts of speech that they normally engage in and that they believe are fully protected by the First Amendment, but that they will now refrain from expressing because they reasonably fear a misconduct charge under Rule 8.4(7).  For example, they enjoy telling jokes they find humorous, including jokes that relate to one or more of the 15 protected groups.  While they never tell such jokes with an intent to be derogatory or demeaning to listeners, they recognize that some individuals might consider the jokes derogatory or demeaning—giving rise to Rule 8.4(7) misconduct complaints.  To avoid such complaints, since January 2022 Cerame and Moynahan have censored their speech of that nature.  *Id.* ¶¶ 5, 6, 50, 56, 63, 75, 79.

Plaintiffs' belief that Rule 8.4(7) is directed at speech of the sort in which they occasionally engage is reinforced by statements made by key supporters of the Rule.  For example, one of the two sponsors of the proposal to adopt ABA Model Rule 8.4(g) testified at the May 2021 hearing conducted by the Rules Committee of the Superior Court.  *Id.* ¶ 54.  In support of her argument that the Connecticut Bar Association's proposed Rule 8.4(7) should be adopted, she recounted a heated conversation she had with another lawyer at a recent bar-related event.  According to the attorney-sponsor (who is African-American), she spoke in favor of "racial justice" measures in the wake of the murder of George Floyd by a police officer.  The other attorney responded by calling her a "race pandering nitwit" who was "suffering from black entitlement."  She testified that the other attorney's speech constituted improper racial discrimination and that "this conduct should never be okay."  *Ibid.*

Cerame and Moynahan believe that the quoted words are fully protected by the First Amendment and are the sorts of forceful things that, before 2022, they might have said to another attorney in the heat of argument.  *Id.* ¶ 55.  But they recognize that the quoted words could be construed as "derogatory or demeaning" and were apparently "harmful" to the attorney-sponsor's

sensibilities, making the words arguably actionable under Rule 8.4(7). *Ibid.* And the statements of those supporting adoption of Rule 8.4(7) make clear that Rule 8.4(7) was adopted precisely because its supporters wanted to silence statements of the sort that the attorney-sponsor found objectionable. *Ibid.* Accordingly, to avoid misconduct charges, Cerame and Moynahan are now refraining from making statements similar to those quoted above. *Id.* ¶ 56.

The reasonableness of Plaintiffs' fear of an enforcement action is heightened by the significant expansion of the Rules of Professional Conduct effected by Rule 8.4(7)'s adoption. The pre-2022 Commentary accompanying Rule 8.4(4) indicated that a lawyer violated the Rule (which prohibits "[e]ngaging in conduct that is prejudicial to the administration of justice") if "*in the course of representing a client*, [he or she] *knowingly* manifests by word or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status." (Emphasis added.) As expanded by Rule 8.4(7), the speech restriction now covers any statements made "in the practice of law."[4] Rule 8.4(7) also expands the speech restriction by watering down the former scienter requirement. While previously a lawyer could be sanctioned under Rule 8.4(4) only for "knowingly" manifesting bias or prejudice, a lawyer may now be sanctioned under Rule 8.4(7) if he or she "reasonably should know" that his or her speech is harassment or discrimination.

Eliminating the knowledge requirement is particularly troublesome with respect to Plaintiffs' vagueness claim. The Second Circuit has explained that "[a] scienter requirement may mitigate a law's vagueness, especially where the defendant alleges inadequate notice." *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008). Conversely, where (as here) a speech restriction does away with the

---

[4] The Commentary accompanying Rule 8.4(7) broadly defines "the practice of law" to include many activities unrelated to representing a client, including "participating in bar association, business or professional activities or events."

knowledge requirement and permits speakers to be sanctioned even when they do not "knowingly" violate a Rule of Professional Conduct, the chill created by the allegedly vague speech restriction is particularly severe.  Lawyers must be acutely wary of speaking freely when forced to guess when speech they do not consider either "harassment" or "discrimination" might be so labeled by others.

Moreover, Defendants apparently share Plaintiffs' belief that Rule 8.4(7) employs vague terms.  In December 2020, the Rules Committee of the Superior Court wrote to the State Grievance Committee to request the SGC's comments on proposed Rule 8.4(7).  Complaint ¶ 35.  Defendant Bowler responded to the Rules Committee on behalf of the SGC on December 29, 2020.  The letter expressed concerns regarding the proposal's vague language: "In the SGC's opinion, the terms ["discrimination," "harassment," and "conduct related to the practice of law"] are not clearly defined in either the proposal or its commentary."  *Id.* ¶ 36 & Exh. B.  Despite the SGC's concerns, the Rules Committee and the Judges of the Superior Court adopted proposed Rule 8.4(7) without further amendment.  The reasonableness of Plaintiffs' fears that they could face enforcement proceedings under an impermissibly vague Rule is readily apparent when even the SGC, a body charged with enforcing the Rule, concedes that critical terms in the Rule "are not clearly defined."

The federal district court that heard the First Amendment challenge to Pennsylvania's substantially similar rule had little difficulty concluding that the lawyer-plaintiff possessed Article III standing to bring a facial challenge to the Pennsylvania rule.  *Greenberg*, 491 F. Supp. 3d at 19-25.  The plaintiff's injury-in-fact claims were nearly identical to those asserted by Plaintiffs Cerame and Moynahan: he claimed that the chill created by Pennsylvania Rule 8.4(g) caused him to refrain from saying things he reasonably believed could result in a misconduct investigation.  The district

court agreed; it held that "Rule 8.4(g)'s language ... will hang over Pennsylvania attorneys like the sword of Damocles."  *Id.* at 24.[5]

Defendants' statements to the effect that, based on their reading of the Complaint, they would not pursue Rule 8.4(7) enforcement actions for the types of statements that Plaintiffs wish to make, Def. Br. 21, have no bearing on whether Plaintiffs' fear of an enforcement action is well-founded. Those statements are not properly considered in connection with a motion to dismiss on the pleadings.  More importantly, as the Second Circuit explained:

> The State also argues that VRLC's fear of suit could not possibly be well-founded because the State has no intention of suing VRLC for its activities.  While that may be so, there is nothing that prevents the State from changing its mind.  It is not forever bound, by estoppel or otherwise, to the view of the law it asserts in this litigation. ... In light of this uncertainty, the State's representation cannot remove VRLC's reasonable fear that it will be subjected to penalties for its planned expressive activities.

*Vermont Right to Life Committee*, 221 F.3d at 383.

Moreover, very strong evidence indicates that some segments of the legal profession seek to penalize any lawyer who expresses views on racial issues that diverge from their own views.  In the past several years, scores of lawyers have been penalized for expressing divergent views on racial issues.  Just last month, a prominent libertarian law scholar was suspended from his position at Georgetown University Law School after he tweeted criticism of President Biden for considering only African-American women to fill the existing Supreme Court vacancy and said that a male

---

[5] Because the issue of the plaintiff's standing arose in connection with his motion for a preliminary injunction, he actually faced a considerably higher burden in establishing injury-in-fact than the burden faced by Plaintiffs Cerame and Moynahan, whose standing is being challenged at the pleadings stage.  *See Lujan*, 504 U.S. at 561.  Moreover, the chill created by Pennsylvania Rule 8.4(g) is not as severe as the chill created by Connecticut Rule 8.4(7) because it includes a more stringent scienter requirement; it applies only to attorneys who "knowingly" manifest bias or prejudice, or engage in harassment or discrimination.

appeals court judge of South Asian ancestry was superior to all available female African-American candidates. Neil Vigdor, *Georgetown Suspends Lecturer Who Criticized Vow to Put Black Woman on Court*, NEW YORK TIMES (Jan. 31, 2022). Here in Connecticut, the Associate Dean of Yale Law School last fall accused a Native American law student of "harassment" and "discrimination" against Black students and threatened sanctions against him—including seeking to *prevent his eventual admission to the bar*—unless he wrote a letter of apology for having sent friends an invitation to a "trap house" party co-sponsored by the Federalist Society. David Lat, *The Latest (Ridiculous) Controversy at Yale Law School*, ORIGINAL JURISDICTION (Oct. 14, 2021), https://davidlat.substack.com/p/the-latest-ridiculous-controversy. In light of the prevalence of such incidents, Plaintiffs' allegation that they fear a misconduct charge were they to engage in similar protected speech can only be deemed "well-founded."

It is of no moment that Connecticut bar officials might eventually recognize Plaintiffs' First Amendment defense and impose no sanctions at the conclusion of misconduct proceedings. As the *Greenberg* court persuasively explained, in upholding standing to mount a facial challenge to Pennsylvania Rule 8.4(g):

> Even if the disciplinary process did not end in some form of discipline, the threat of a disruptive, intrusive, and expensive investigation and investigative hearing into the Plaintiff's words, speeches, notes, written materials, videos, mannerisms, and practice of law would cause Plaintiff and any attorney to be fearful of what he or she says and how he or she says it in any forum, private or public, that directly or tangentially touches upon the practice of law, including any speaking engagements given during CLEs, bench-bar conferences, or indeed any of the social gatherings forming around these activities.

*Greenberg*, 491 F. Supp. 3d at 25. In addition, publicly aired charges of violating bar rules alone inflict enduring and irremediable reputational damage.

Defendants argue that Plaintiffs lack standing because they have failed to "allege that they intend to engage in specific conduct that the statute proscribes." Def. Br. 23. But the principal decision they cite for that proposition is not even a First Amendment case, and in any event says exactly the opposite of what Defendants claim it says. *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 386 n.5 (2d Cir. 2015) (*rejecting* New York City's claim that a plaintiff facially challenging a criminal statute "must specifically identify, by make and model, the common folding knives they wish to sell or possess to demonstrate standing," because the statute "does not allow them to determine what is proscribed"). Under the numerous Second Circuit First Amendment decisions cited above, it suffices for purposes of standing for Plaintiffs to allege that they harbor a "well-founded" fear that one of the hundreds of forceful statements they make in any given year will give rise to a Rule 8.4(7) misconduct proceeding. Plaintiffs allege that Rule 8.4(7) is so vague that it "fails to provide a person of ordinary intelligence fair notice of what is prohibited." *Rubin*, 544 F.3d at 467. It makes little sense to require a plaintiff to identify the precise speech he alleges is prohibited by the challenged enactment and that he would utter but for the prohibition, when the gravamen of his complaint is that he lacks fair notice of what is prohibited.

Finally, despite the overwhelming evidence that Rule 8.4(7) directly targets attorney speech, Defendants argue in a footnote that Rule 8.4(7) is actually focused on regulating attorney conduct and that any impact on speech is merely an incidental byproduct of the regulation of conduct. Def. Br. 30 n.5. That argument turns a blind eye to Rule 8.4(7)'s content- and viewpoint-based focus. The Rule does not seek merely to regulate conduct in the workplace, where anti-discrimination statutes have long imposed content-neutral restrictions on employment practices—even though such restrictions inevitably have incidental impacts on speech. Rather, Rule 8.4(7) applies in a wide

variety of settings outside the workplace (*e.g.*, informal bar gatherings) where the Rule's focus is primarily and almost exclusively on speech.  And in those settings, Rule 8.4(7) proscribes speech based on its content (the Rule only applies to speech relating to 15 protected groups) and its viewpoint (the Rule only applies to speech that "manifests bias or prejudice" against members of the protected groups or that is "pervasively derogatory or demeaning" toward them).

## CONCLUSION

The Court should deny Defendants' motion to dismiss.


Dated: February 17, 2022                          Respectfully submitted,

                                                  /s/ Richard A. Samp
                                                  Richard A. Samp
                                                    (Admitted *pro hac vice*)
                                                  Margaret Little
                                                    CT Bar No. 303494
                                                  New Civil Liberties Alliance
                                                  1225 19th Street, NW, Suite 450
                                                  Washington, DC 20036
                                                  rich.samp@ncla.legal
                                                  202-869-2510

                                                  Counsel for Plaintiffs

27

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February, 2022, I filed a copy of Plaintiffs' Opposition to Defendants' Motion to Dismiss with the Court's CM/ECF system, which will send notice of electronic filing to the counsel of record.


<u>/s/ Richard A. Samp</u>
Richard A. Samp