IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIO CERAME ET AL., | : | No. 3:21-cv-01502-AWT |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL BOWLER ET AL., | : | |
| *Defendants.* | : | March 3, 2022 |

### REPLY BRIEF IN FURTHER SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS

Plaintiffs' opposition brief is remarkable for what it does not contain. In 27 pages of briefing there is not a single reference to the commentary that expressly excludes constitutionally protected speech from the scope of Rule 8.4 (7); to Practice Book §§ 2-35(k)(1) and 2-38(f), both of which expressly prohibit discipline if it would violate an attorney's right to free speech; or to *Blum v. Holder*, 744 F.3d 790 (1st Cir. 2014) and other persuasive Circuit Court decisions that are directly on point and that squarely refute Plaintiffs' standing argument. *See* Def. Br. at 27-29. Those and other authorities demonstrate that there is no ongoing violation of federal law for purposes of *Ex Parte Young* because the challenged Rule simply does not apply to—much less impermissibly burden—an attorney's protected speech. They likewise demonstrate that Plaintiffs lack standing because there is no possibility that they will be subjected to discipline for engaging in constitutionally protected speech, and that Plaintiffs' subjective fear to the contrary is wholly unreasonable and insufficient to manufacture standing.

1

Rather than addressing these arguments head-on (or at all), Plaintiffs attempt to distract the Court by repeating their merits-based mantra that the Rule is a content- and viewpoint-based regulation of speech, which Plaintiffs erroneously state "Defendants' motion to dismiss does not dispute" or "place[] at issue." Pl. Br. at 1 and 10 n.1; *see id.* at 2, 4-5, 9-10, 26-27. That is patently incorrect. Defendants' Eleventh Amendment argument is in large part premised on the fact that there is ***no ongoing violation*** of the First Amendment because, as a matter of law, the Rule does not apply to or proscribe any constitutionally protected speech. That is true whether the speech is constitutionally protected because of its content, its viewpoint, or any other reason that Plaintiffs might identify.

Plaintiffs do nothing to address or refute that inescapable fact. They instead seek to bury their head in the sand in the hope that the Court will somehow miss the text of the Rule and its commentary, the applicable grievance procedures and the relevant caselaw upon which Defendants rely. Because those authorities demonstrate that there is no ongoing violation of the First Amendment and that Plaintiffs lack standing, the Court should dismiss this case with prejudice.

## ARGUMENT

### I. THE ELEVENTH AMENDMENT BARS PLAINTIFFS' CLAIMS

Like many of Defendants' other arguments, Plaintiffs do not dispute that *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984) bars the state law claims in Counts 3 and 4. The Eleventh Amendment bars the rest of Plaintiffs' claims as well, and the Court should reject Plaintiffs' evasive arguments to the contrary.

A.   **Plaintiffs Have Not Alleged An Ongoing Violation Of Federal Law**

The purpose of *Ex Parte Young* is to permit prospective injunctive relief to remedy ongoing violations of federal law, not potential violations that may or may not occur at some time in the future. To invoke *Ex Parte Young*, therefore, Plaintiffs must adequately allege not just a violation of federal law, but that said violation is "ongoing" at the time relief is sought. *Wilson v. Emond*, No. 3:10-cv-659 (VLB), 2011 U.S. Dist. LEXIS 10928, at *28 (D. Conn. Feb. 4, 2011), citing *McKeown v. N.Y. State Comm'n on Judicial Conduct*, 377 Fed. Appx. 121, 123 (2d Cir. 2010). Further, *Ex parte Young* applies only where "state officials are ***actively violating*** federal law or ***imminently threatening*** acts that the plaintiff challenges as unconstitutional." *Goodspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 632 F. Supp. 2d 185, 188 (D. Conn. 2009) (emphasis added). That is because *Ex Parte Young* only prevents "state officials' ***actions*** in enforcing" an allegedly unconstitutional state law. *Id.*, quoting *W. Mohegan Tribe & Nation v. Orange Cty.*, 395 F.3d 18, 21 (2d Cir. 2004) (emphasis altered). Even where a plaintiff has alleged that a law is unconstitutional, therefore, *Ex Parte Young* does not apply in a pre-enforcement action when there is "no allegation that [state officials are] threatening or about to commence" an enforcement action and have "explicitly stated that [they have] no such plans at this time." *Id.* Simply put, "the remote possibility that the [state official] might decide to act . . . without more does not give rise to either an ongoing violation of federal law or an imminent threat of proceedings for purposes of securing equitable relief." *Id.*, citing *Morales v. TWA*, 504 U.S. 374, 382 (1992).

3

These principles are dispositive for two reasons. First, as a matter of law the mere existence of the Rule cannot support an ongoing violation of the First Amendment because the Rule ***does not apply to constitutionally protected speech***. That is so because: (1) the commentary excludes constitutionally protected speech from the scope of the Rule; and (2) §§ 2-35(k)(1) and 2-38(f) prohibit discipline if it would violate an attorney's right to free speech. As discussed in Defendants' principal brief, the commentary to the Rule was adopted by the Judges of the Superior Court, and the Rule "***must*** be read together with its [c]ommentary in order for it to be fully and properly understood." *Cohen v. Statewide Griev. Comm.*, 339 Conn. 503, 514 (2021) (emphasis added).

Second, because the mere existence of the Rule cannot support an ongoing violation of federal law, the only way a violation theoretically could occur is if the disciplinary authorities are presented with a grievance complaint and proceed to ignore the protections discussed above—not to mention the state and federal constitutions—and impose discipline based on an attorney's protected speech. Such a violation plainly is not "ongoing" because it has not yet occurred and likely never will. Further, Defendants have not "threatened" Plaintiffs with "imminent" discipline for engaging in protected speech or taken any other action to suggest that a disciplinary action is "about to commence," and they cannot do so. *Id.* To the contrary, as in *Goodspeed*, Defendants have expressly disclaimed any intent to discipline Plaintiffs for engaging in protected speech. *Id.*

Plaintiffs do nothing to refute these arguments. They instead attempt to mischaracterize Defendants' Eleventh Amendment argument as being that Defendants "have not [yet] initiated enforcement proceedings" based solely on their "good faith" pledge not to apply the Rule to constitutionally protected speech, even though they could do so. Pl. Br. at 9. That is not Defendants' argument. Whether Defendants wanted to or not, they ***cannot*** apply the Rule to protected speech because the Rule and grievance procedures ***deprive*** them of that authority.

### B. Plaintiffs Have Not Named Proper Parties For Purposes Of *Ex Parte Young*

In another attempt to mischaracterize Defendants' argument, Plaintiffs set up and then knock down a strawman by stating that Defendants claim they are not subject to suit under *Ex Parte Young* "because they are part of the judicial branch" and "*Ex Parte Young* is inapplicable to the judicial branch" in its entirety. Pl. Br. at 11. That is not Defendants' argument either. Defendants are not subject to suit under *Ex Parte Young* not because they are part of the judicial branch in the abstract, but rather, because they are "judicial entities" who stand in the place of the judges of the Superior Court and exercise an exclusively judicial function that the judges have delegated to them. *Statewide Grievance Comm. v. Presnick*, 215 Conn. 162, 167 (1990); *Sobocinski v. Statewide Grievance Com.*, 215 Conn. 517, 526 (1990); *Chester v. Willey*, No. 374862, 1991 Conn. Super. LEXIS 1409, at *5-6 (Super. Ct. June 7, 1991). That judicial function is to impartially hear and decide contested grievance disputes between complainants and attorneys, and not to "enforce" the Rules of Professional Conduct in the adversarial manner that executive agencies enforce an

5

administrative program. *Contra* Pl. Br. at 11. It is the performance of that judicial function, and not Defendants' mere placement within the judicial branch, that removes them from the reach of *Ex Parte Young* under the Supreme Court's recent decision in *Whole Woman's Health v. Jackson*, No. 21-463, 2021 U.S. LEXIS 6144 (Dec. 10, 2021).

Indeed, that is made clear by the fact that judges retain authority to discipline attorneys as well. After *Whole Woman's Health*, Plaintiffs cannot seriously dispute that judges themselves could not be sued under *Ex Parte Young* to prevent them from hearing complaints brought under Rule 8.4(7). That being the case, there is no plausible reason why Defendants somehow could be sued for exercising that same judicial function. That is especially true given that even the clerk in *Whole Woman's Health* could not be sued for **assisting** the judges in performing their judicial function, instead of actually performing it like Defendants do.[1]

Plaintiffs' only counter to this argument is to point out that "Defendants have not identified which other official(s) they believe possess the requisite enforcement authority." Pl. Br. at 12. That obviously is Plaintiffs' job, not Defendants'. And in any event, *Whole Woman's Health* makes clear that there is no "unqualified right to pre-enforcement review of constitutional claims in federal court" and that those seeking to challenge the constitutionality of state laws are "not always able to pick

---

[1] Plaintiffs' recitation of various tasks that Defendants perform as part of the disciplinary process does not compel a different conclusion. *See* Pl. Br. at 12-13. All of those tasks are judicial functions that are part of the adjudicative process to decide grievance disputes between complainants and attorneys.

and choose the timing and preferred forum for their arguments." *Whole Woman's Health*, 2021 U.S. LEXIS 6144 at *30. To the extent there are no state officials who "enforce" the Rules of Professional Conduct, therefore, Plaintiffs' proper and constitutionally permissible recourse is to raise a First Amendment defense in a future grievance proceeding, if one ever is filed against them. *Id.* at *29-30.

## II. PLAINTIFFS LACK STANDING

The Court likewise should reject Plaintiffs' standing arguments, which mischaracterize the law and continue to ignore Defendants' arguments and the legal authorities upon which they are based.

First, Plaintiffs devote much of their standing analysis to disputing whether the Court should apply the "certainly impending" standard articulated in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013). According to Plaintiffs, that standard does not apply because *Clapper* "did not involve the First Amendment in any meaningful way." Pl. Br. at 17. Not true. The plaintiffs alleged both a Fourth Amendment claim **and** a First Amendment claim, *Clapper*, 568 U.S. at 407, and the Court did not suggest that the standard it articulated applied only to the former and not the latter. To the contrary, after determining that no surveillance injury was certainly impending, the Court turned to whether standing existed based on the plaintiffs' fear of such surveillance and the alleged "chills" that fear imposed on their speech, including causing them to avoid and censor their speech and change the manner in which they conducted it. *Id.* at 415. The "chill" analysis is a quintessential First Amendment concept, and in discussing it the Court expressly relied on

*Laird* v. *Tatum*, 408 U.S. 1 (1972), which also was a First Amendment case. *Clapper*, 568 U.S. at 415-16. Applying that concept, the Court expressly rejected the notion that a "reasonable" fear of future injury can establish standing because it "improperly waters down the fundamental requirements of Article III" and plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."[2] *Id.* at 415-16.[3]

Second, Plaintiffs cannot meet even the "actual and well-founded fear" standard they espouse. Again, there is **no risk** of future discipline if Plaintiffs engage in protected speech because Defendants **cannot** impose discipline based on such speech, because both the Rule and Practice Book §§ 2-35(k)(1) and 2-38(f) expressly **deprive** Defendants of that authority. This case is therefore nothing like *Vermont Right to Life Committee, Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000), where the law applied to the protected speech and "there [wa]s nothing that prevent[ed] the State from changing its mind" about whether to enforce. *See* Pl. Br. at 24. Here, Defendants have no discretion to ignore or deviate from the limitations set forth in

---

[2]  The Supreme Court's decision in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), admittedly creates some uncertainty on this issue. In that case, the Supreme Court expressly held that the "certainly impending" standard from *Clapper* applies in First Amendment cases, *id.* at 158, but then proceeded to discuss pre-*Clapper* cases that are somewhat in tension with the Court's rejection of the "reasonable fear" standard in *Clapper*. *Id.* at 159-61. Notably, however, in those pre-*Clapper* cases there was little question that the statute proscribed the conduct and would have been enforced if the plaintiffs engaged in their desired speech, and that the plaintiffs therefore satisfied the *Clapper* "certainly impending" standard.

[3]  Virtually all of the Second Circuit cases that Plaintiffs claim have "repeatedly rejected" the *Clapper* standard are pre-*Clapper* decisions, and none of them discussed *Clapper* or its impact on the standing analysis in First Amendment cases. *See* Pl. Br. at 15-16.

8

the Rule and grievance procedures. Plaintiffs' subjective and unsupported fear that Defendants nevertheless will do so—especially when Defendants expressly have stated they will not—is "unreasonable" and insufficient to "manufacture standing" under any standard. *Clapper*, 568 U.S. at 415-16; *Blum*, 744 F.3d at 798, 801-02.

Although that is true as a matter of law, it is confirmed by the lack of ***any*** factual allegations in the complaint to support a different conclusion. In particular, Plaintiffs do not that anybody has even complained about their desired speech or that Defendants have ever threatened to impose discipline based on an attorney's constitutionally protected speech. *See* Def. Br. at 31.

Plaintiffs do not meaningfully dispute any of this. They instead simply regurgitate allegations from their Complaint, *see* Pl. Br. at 20-21, without any explanation about how the speech referenced in those allegations constitutes discrimination or harassment as those terms are defined in the Rule and its commentary, *see* Def. Br. at 24-26, much less how those allegations support a well-founded fear of discipline in the face of the legal authorities and First Amendment safeguards discussed above. Plaintiffs also reference comments by a proponent of the ABA model rule. *Id.* at 21-22. But those alleged statements are irrelevant because they were made by a private attorney who has no authority to interpret or apply the Rule or to impose discipline under it. Moreover, the judges of the Superior Court did not adopt the ABA model that said attorney proposed, and instead adopted a far narrower rule that explicitly excludes protected speech. These allegations are the slenderest of reeds upon which to invoke this Court's Article III jurisdiction.

9

Finally, Plaintiffs ignore the key differences between Rule 8.4(7) and Pennsylvania's rule that the district court preliminarily enjoined in *Greenberg v. Haggerty*, 491 F. Supp. 3d 12 (E.D. Pa. 2020). Most notably, the Pennsylvania rule applied not just to discriminatory "conduct" but to all "words" that "manifest bias or prejudice" more broadly. *Id.* at 23-25. That broader application to all "words" was critical to the district court's analysis. Further, there was no real dispute that the plaintiffs' intended speech fell within that definition, the plaintiffs alleged "specific examples" of disciplinary actions that had been brought, and there were no procedural safeguards to protect attorneys' First Amendment rights. *Id.* at 23, 24.

None of that is true here. Again, Plaintiffs have not even alleged conduct that they wish to engage in conduct that falls within the scope of "discrimination" or "harassment." *See* Def. Br. at 24-26. Unlike the Pennsylvania rule, moreover, Rule 8.4(7) contains safeguards that preclude discipline based on constitutionally protected speech and Defendants have disclaimed any authority or intent to discipline attorneys based on such speech. Plaintiffs therefore have no realistic fear—much less a well-founded fear—that a future injury ever will come to pass.[4]

## **CONCLUSION**

The Court should dismiss this case for lack of jurisdiction.

---

[4] Plaintiffs' focus on the lack of a scienter requirement in Rule 8.4(7) does not change this conclusion. *See* Pl. Br. at 7, 22-24. Plaintiffs' claimed injury, and in turn the standing analysis, depends on whether Plaintiffs have a well-founded fear of being disciplined for engaging in protected speech, not whether they know or should know that their conduct is so "harmful" and "severe or pervasive" and "derogatory or demeaning" that it constitutes discrimination or harassment as those terms are described in the commentary.

        Respectfully submitted,

        DEFENDANTS MICHAEL BOWLER
        AND MATTHEW BERGER

        WILLIAM TONG
        ATTORNEY GENERAL

BY: */s/ Michael K. Skold*
     Michael K. Skold (ct28407)
     Emily A. Gait (ct31186)
     Assistant Attorneys General
     Office of the Attorney General
     165 Capitol Ave
     Hartford, CT 06106
     860-808-5020 (phone)
     Michael.Skold@ct.gov
     Emily.Gait@ct.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed on March 3, 2022. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/  Michael K. Skold*
Michael K. Skold
Assistant Attorney General