## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------- x
MARIO CERAME and TIMOTHY C.      :
MOYNAHAN,                        :
          Plaintiffs,            :
                                 :
     v.                          :
                                 :
MICHAEL P. BOWLER IN HIS         :   Civ. No. 3:21-cv-1502 (AWT)
OFFICIAL CAPACITY AS CONNECTICUT :
STATEWIDE BAR COUNSEL and        :
MATTHEW G. BERGER IN HIS         :
OFFICIAL CAPACITY AS CHAIR OF    :
THE STATEWIDE GRIEVANCE          :
COMMITTEE,                       :
                                 :
          Defendants.            :
------------------------------- x
```

## <u>RULING ON MOTION TO DISMISS</u>

The plaintiffs, Mario Cerame and Timothy C. Moynahan, bring suit against Michael P. Bowler in his official capacity as Connecticut Statewide Bar Counsel and Matthew G. Berger in his official capacity as Chair of the Statewide Grievance Committee. In a pre-enforcement facial challenge, the plaintiffs challenge the constitutionality of Rule 8.4(7) of the Connecticut Rules of Professional Conduct. The defendants move to dismiss the Complaint (ECF No. 1) on two grounds: first, that the plaintiffs' claims are barred by the Eleventh Amendment; and second, that the plaintiffs lack standing. For the reasons set forth below, the motion to dismiss is being granted because the plaintiffs lack standing.

## I.    FACTUAL BACKGROUND

Connecticut regulates the conduct of Connecticut-licensed lawyers through the Connecticut Rules of Professional Conduct (the "Rules"). It is the province of the Superior Court of Connecticut to adopt and modify the Rules. See Statewide Grievance Comm. v. Presnick, 215 Conn. 162, 166 (1990) ("Judges of the Superior Court possess the 'inherent authority to regulate attorney conduct and to discipline members of the bar.'" (quoting Heslin v. Connecticut Law Clinic of Trantolo & Trantolo, 190 Conn. 510, 523, 461 A.2d 938 (1983)). Among other things, the Rules define activities constituting professional misconduct and set forth the procedures governing the resolution of allegations of professional misconduct.

Under the Rules for the Superior Court, "[a]ny person, including disciplinary counsel, or a grievance panel on its own motion, may file a written complaint . . . alleging attorney misconduct." R. Superior Ct. Conn. § 2-32(a). "Complaints against attorneys shall be filed with the Statewide Bar Counsel." Id. "Within seven days of the receipt of a complaint, the statewide bar counsel shall review the complaint and process it" in one of three ways. Id. First, the statewide bar counsel can "forward the complaint to a grievance panel in the judicial district in which the respondent maintains his or her principal office or residence." Id. at § 2-32(a)(1). Second, the statewide

bar counsel can "refer the complaint to the chair of the Statewide Grievance Committee or an attorney designee of the chair and to a nonattorney member of the committee, and the statewide bar counsel in conjunction with the chair or attorney designee and the nonattorney member shall, if deemed appropriate, dismiss the complaint" on one of ten enumerated grounds. Id. at § 2-32(a)(2). Third, "[i]f a complaint alleges only a fee dispute within the meaning of subsection (a)(2)(A) of this section, the statewide bar counsel in conjunction with the chairperson or attorney designee and the nonattorney member may stay further proceedings on the complaint on such terms and conditions as deemed appropriate, including referring the parties to fee arbitration." Id. at § 2-32(a)(3). The procedures governing this investigatory period are set forth in Section § 2-32. They include opportunities for the attorney to respond to the allegations and to request a hearing.

If a grievance panel determines that there is probable cause that the attorney engaged in professional misconduct, the panel forwards the complaint to the Statewide Grievance Committee, which then "may, in its discretion, reassign the case to a different reviewing committee." Id. at ¶ 2-35(a). The Statewide Grievance Committee or reviewing committee then holds a hearing on the complaint. See id. at § 2-35(c). At the hearing, "the respondent shall have the right to be heard in the

respondent's own defense and by witnesses and counsel." <u>Id.</u> at §
2-35(h). Both the disciplinary counsel and the respondent "shall
be entitled to examine or cross-examine witnesses." <u>Id.</u> At the
close of evidence, "the complainant, the disciplinary counsel
and the respondent shall have the opportunity to make a
statement, either individually or through counsel." <u>Id.</u> The
Statewide Grievance Committee or reviewing committee "may
request oral argument." <u>Id.</u> If a reviewing committee finds that
an attorney engaged in misconduct, the attorney can seek review
by the full Statewide Grievance Committee. <u>See id.</u> at 2-32(k). A
request for review "must specify the basis for the request,"
which can include, among other things, "a claim or claims that
the reviewing committee's findings, inferences, conclusions or
decisions is or are (1) in violation of constitutional
[provisions], rules of practice or statutory provisions." <u>Id.</u>

    Respondents can appeal a decision by a reviewing committee
or the Statewide Grievance Committee imposing sanctions or
conditions against the respondent to the Connecticut Superior
Court. <u>See id.</u> at § 2-38(a). The respondent is entitled to
submit a brief and can request oral argument. <u>See id.</u> at §§ 2-
38(d), (e). The court "shall not substitute its judgment for
that of the Statewide Grievance Committee or reviewing committee
as to the weight of the evidence on questions of fact" and
"shall affirm the decision of the committee unless the court

finds that substantial rights of the respondent have been
prejudiced because the committee's findings, inferences,
conclusions, or decisions are: (1) in violation of
constitutional provisions, rules of practice or statutory
provisions" or erroneous in five other enumerated ways. Id. at §
2-38(f).

In 2016, the American Bar Association voted to amend its
Model Rules of Professional Conduct to adopt Rule 8.4(g). See
Compl. at ¶ 28. Model Rule 8.4(g) provides that "[i]t is
professional misconduct for a lawyer to . . . (g) engage in
conduct that the lawyer knows or reasonably should know is
harassment or discrimination on the basis of race, sex,
religion, national origin, ethnicity, disability, age, sexual
orientation, gender identity, marital status or socioeconomic
status in conduct related to the practice of law." ABA Model R.
Prof'l Conduct, 8.4(g).

In the spring of 2020, a proposal was submitted to the
Rules Committee of the Connecticut Superior Court (the "Rules
Committee") asking it to adopt Model Rule 8.4(g). On September
10, 2020, the Connecticut Bar Association's House of Delegates
voted to support the adoption of a revised version of Model Rule
8.4(g). See Compl. at ¶ 31. On February 8, 2021, the Rules
Committee voted to hold a public hearing on the proposed rule.
On May 10, 2021, the Rules Committee recommended to the

5

Connecticut Superior Court that the proposed rule be adopted. In June 2021, the Connecticut Superior Court adopted the proposed rule. See id. at ¶ 39.

Rule 8.4(7) provides that "[i]t is professional misconduct for a lawyer to: . . . [e]ngage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, color, ancestry, sex, pregnancy, religion, national origin, ethnicity, disability, status as a veteran, age, sexual orientation, gender identity, gender expression or marital status in conduct related to the practice of law." Conn. R. Prof'l Conduct R. 8.4(7).

The amendment adopting Rule 8.4(7) eliminated certain commentary to Rule 8.4(4) that addressed some of the conduct that Rule 8.4(7) now proscribes. Rule 8.4(4) prohibits Connecticut-licensed attorneys from "engag[ing] in conduct that is prejudicial to the administration of justice." Conn. R. Prof'l Conduct R. 8.4(4). The amendment adding Rule 8.4(7) removed commentary to Rule 8.4(4) stating that "[a] lawyer who, in the course of representing a client, knowingly manifests by word or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic statute, violates subdivision (4) when such actions are prejudicial to the administration of justice.

6

Legitimate advocacy respecting the foregoing factors does not violate subdivision (4)." Am. Compl. at ¶ 27.

The amendment adopting Rule 8.4(7) included two additional changes. First, it removed from the Commentary to Rule 8.4 the following language: "A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists." Compl. at ¶ 41. Second, it added the following to the Commentary to Rule 8.4:

> Discrimination and harassment in the practice of law undermine confidence in the legal profession and the legal system. Discrimination includes harmful verbal or physical conduct directed at an individual or individuals that manifests bias or prejudice on the basis of one or more of the protected categories. Not all conduct that involves consideration of these characteristics manifests bias or prejudice; there may be a legitimate nondiscriminatory basis for the conduct.
>
> Harassment includes severe or pervasive derogatory or demeaning verbal or physical conduct. Harassment on the basis of sex includes unwelcome sexual advances, requests for sexual favors and other unwelcome verbal or physical conduct of a sexual nature.
>
> The substantive law of antidiscrimination and antiharassment statutes and case law should guide application of paragraph (7), where applicable. Where the conduct in question is subject to federal or state antidiscrimination or antiharassment law, a lawyer's conduct does not violate paragraph (7) when the conduct does not violate such law. Moreover, an administrative or judicial finding of a violation of state or federal antidiscrimination or antiharassment laws does not alone establish a violation of paragraph (7).
>
> A lawyer's conduct does not violate paragraph (7) when the conduct in question is protected under the first amendment to the United States constitution or article first, § 4 of the Connecticut constitution.

Conduct related to the practice of law includes
representing clients; interacting with witnesses,
coworkers, court personnel, lawyers and others while
engaged in the practice of law; operating or managing a
law firm or law practice; and participating in bar
association, business or professional activities or
events in connection with the practice of law. Lawyers
may engage in conduct undertaken to promote diversity,
equity and inclusion without violating this Rule by, for
example, implementing initiatives aimed at recruiting,
hiring, retaining and advancing diverse employees or
sponsoring diverse law student organizations.

A trial judge's finding that peremptory challenges were
exercised on a discriminatory basis does not alone
establish a violation of paragraph (7). Moreover, no
disciplinary violation may be found where a lawyer
exercises a peremptory challenge on a basis that is
permitted under substantive law. A lawyer does not
violate paragraph (7) by limiting the scope or subject
matter of the lawyer's practice to members of a
particular segment of the population in accordance with
these rules and other law. A lawyer may charge and
collect reasonable fees and expenses for a
representation. Rule 1.5 (a). Lawyers should also be
mindful of their professional obligations under Rule 6.1
to provide legal services to those who are unable to
pay, and their obligation under Rule 6.2 not to avoid
appointments from a tribunal except for good cause. See
Rule 6.2 (1), (2) and (3). A lawyer's representation of
a client does not constitute an endorsement by the lawyer
of the client's views or activities. See Rule 1.2 (b).

Compl. at ¶ 41.

The plaintiffs claim that by proscribing "harm" and
"derogatory or demeaning" speech, the Commentary "is in severe
tension with First Amendment case law because it imposes
sanctions based on the content and viewpoint of the speech." Id.
at ¶ 46. They contend that the "tension is heightened" by the
change in the Rules from the pre-amendment version of the

Commentary to Rule 8.4, which made it a violation to "knowingly"
engage in discriminatory conduct, to the current version of the
Commentary, which makes it a violation to engage in conduct that
an attorney "knows or reasonably should know" constitutes
discrimination or harassment. Id. at ¶ 47. The plaintiffs also
note that while the Rules previously prohibited discriminatory
conduct only "in the course of representing a client," Rule
8.4(7) now prohibits discriminatory conduct that is "related to
the practice of law." Id. at ¶ 48. The Commentary defines
"conduct related to the practice to law" as follows:

> Conduct related to the practice of law includes
> representing clients; interacting with witnesses,
> coworkers, court personnel, lawyers and others while
> engaged in the practice of law; operating or managing a
> law firm or law practice; and participating in bar
> association, business or professional activities or
> events in connection with the practice of law.

Conn. R. Prof'l Conduct 8.4(7), Commentary. The plaintiffs
contend that this broadening of the scope of Rule 8.4(7)
"compounds the First Amendment difficulties." Compl. at ¶ 48.

The plaintiffs claim that they "reasonably fear that they
will be the subject of professional misconduct complaints" under
Rule 8.4(7) for speech that is not intended to harass or
discriminate but is construed by others as derogatory or
demeaning. Id. at ¶ 50. They contend that "most" of the speech
proscribed by Rule 8.4(7) is constitutionally protected, id. at
¶ 60, and they provide examples of "speech that is fully

protected by the First Amendment but that members of the
Connecticut bar will be reluctant to express because they
reasonably fear that doing so could result in an attorney
misconduct complaint by those who deem the speech
discriminatory." Id. at ¶ 58.

## II.  LEGAL STANDARD

"A district court properly dismisses an action under Fed.
R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if
the court 'lacks the statutory or constitutional power to
adjudicate it[.]'" Cortlandt St. Recovery Corp. v. Hellas
Telecomm., 790 F.3d 411, 416-17 (2d. Cir. 2015) (quoting
Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).
The party asserting subject matter jurisdiction "bears the
burden of proving subject matter jurisdiction by a preponderance
of the evidence." Aurechione v. Schoolman Transp. Sys., Inc.,
426 F.3d 635, 638 (2d Cir. 2005). When reviewing a motion to
dismiss for lack of subject matter jurisdiction, the court may
consider evidence outside the pleadings. See Makarova, 201 F.3d
at 113. In fact, "the court may resolve disputed jurisdictional
fact issues by reference to evidence outside the pleadings, such
as affidavits." Antares Aircraft, L.P. v. Fed. Republic of
Nigeria, 948 F.2d 90, 96 (2d Cir. 1991).

**III. DISCUSSION**

The Complaint contains four claims, and the plaintiffs seek declaratory and injunctive relief. Claim I is that Rule 8.4(7) violates the First Amendment because it "imposes content-based and viewpoint-based discrimination against disfavored speech," "[s]tate officials have articulated no compelling interest for this discriminatory speech restriction, and the restriction is not narrowly tailored." Compl. at ¶¶ 73, 74. Claim II is that Rule 8.4(7) is unconstitutionally vague in violation of the Fourteenth Amendment because "Rule 8.4(7)'s key terms—including the terms 'discrimination,' 'harassment,' 'reasonably should know,' and 'conduct related to the practice of law'—are not well defined in either Rule 8.4(7) or the accompanying Commentary." Id. at ¶ 78. Claim III is that Rule 8.4(7) violates Article I, Section 4 of the Connecticut Constitution. See id. at ¶¶ 83, 84. Claim IV is that the Connecticut Superior Court's adoption of Rule 8.4(7) violated Article III, Section 1 of the Connecticut Constitution. See id. at ¶ 90.

The defendants move to dismiss the Complaint on two grounds. First, they argue that the plaintiffs' claims are barred by the Eleventh Amendment because (i) Ex Parte Young does not apply as the plaintiffs have not alleged an ongoing violation of federal law; (ii) the plaintiffs have not sued proper parties for purposes of Ex Parte Young; (iii) federal

court intervention in this context improperly intrudes upon state sovereignty; and (iv) Claims III and IV are barred under Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984).

Second, the defendants argue that the plaintiffs' lack standing. The court agrees, and because the Article III requirement that there be a case or controversy is not satisfied, the court does not address the defendants' arguments based on the Eleventh Amendment.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014) (quoting U.S. Const., Art. III, § 2) (footnote omitted). "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)).

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a

'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" Susan B. Anthony List, 573 U.S. at 157–58 (quoting Lujan, 504 U.S. at 560–61)). "An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 158 (quoting Lujan, 504 U.S. at 560). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" Id. (quoting Clapper, 568 U.S. at 414, n.5). In Susan B. Anthony List, the Court quoted from footnote five in Clapper, which reads in pertinent part as follows: "Our cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a substantial risk that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." Clapper, 568 U.S. at 414 n.5 (quotations and citations omitted).

"The party invoking federal jurisdiction bears the burden of establishing standing." Susan B. Anthony List, 573 U.S. at 158 (quoting Clapper, 568 U.S. at 412). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. (quoting Lujan, 504 U.S. at 561).

13

In <u>National Organization for Marriage, Inc. v. Walsh</u>, 714 F.3d 682 (2013), the court discussed the requirements for standing in the context of pre-enforcement First Amendment claims. The court explained:

> Despite the language of *Lujan* and similar cases, however, we assess pre-enforcement First Amendment claims . . . under somewhat relaxed standing and ripeness rules. A plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy. <u>See</u> <u>Laird v. Tatum</u>, 408 U.S. 1, 13–14 (1972). But a real and imminent fear of such chilling is enough. As the Eleventh Circuit has explained, without the possibility of pre-enforcement challenges, plaintiffs contesting statutes or regulations on First Amendment grounds "face an unattractive set of options if they are barred from bringing a facial challenge": refraining from activity they believe the First Amendment protects, or risk civil or criminal penalties for violating the challenged law. <u>Fla. League of Prof'l Lobbyists, Inc. v. Meggs</u>, 87 F.3d 457, 459 (11th Cir. 1996).

<u>Walsh</u>, 714 F.3d at 689. <u>See also</u> <u>Vt. Right to Life Committee, Inc. v. Sorrell</u>, 221 F.3d 376, 382 (2d Cir. 2000) ("A plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has 'an actual and well-founded fear that the law will be enforced against' it. . . . '[T]he alleged danger of th[e] statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.'" (quoting <u>Virginia v. Am. Booksellers Ass'n</u>, 484 U.S. 383, 393 (1988))); <u>Am.</u>

14

<u>Booksellers Found. v. Dean</u>, 342 F.3d 96, 101 (2d Cir. 2003)
("Plaintiffs have therefore met the threshold for establishing
standing for a First Amendment claim by demonstrating 'an actual
and well-founded fear that the law will be enforced against
[them].'" (quoting <u>Vt. Right to Life Comm., Inc.</u>, 221 F.3d at
382)); <u>Speech First, Inc. v. Fenves</u>, 979 F.3d 319, 330–31 (5th
Cir. 2020), <u>as revised</u> (Oct. 30, 2020) ("This court has
repeatedly held, in the pre-enforcement context, that chilling a
plaintiff's speech is a constitutional harm adequate to satisfy
the injury-in-fact requirement." (quotations and brackets
omitted)); <u>Index Newspapers LLC v. United States Marshals Serv.</u>,
977 F.3d 817, 826 (9th Cir. 2020) ("A chilling of First
Amendment rights can constitute a cognizable injury, so long as
the chilling effect is not based on a fear of future injury that
itself is too speculative to confer standing." (quotations and
brackets omitted)).

     Thus, as explained in <u>Libertarian Party of Connecticut v.
Merrill</u>, No. 15-CV-1851 (JCH), 2016 WL 10405920 (D. Conn. Jan.
26, 2016), "[t]wo types of injuries may confer Article III
standing for First Amendment challenges." <u>Libertarian Party of
Connecticut</u>, 2016 WL 10405920, at *4.

> The first occurs when "the plaintiff has alleged an
> intention to engage in a course of conduct arguably
> affected  with  a  constitutional  interest,  but
> proscribed by [the] statute, and there exists a
> credible threat of prosecution." <u>Babbitt v. United</u>

> Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979);
> Blum v. Holder, 744 F.3d 790, 796 (1st Cir. 2014) .
> . . . The second occurs when a plaintiff is "chilled
> from exercising her right to free expression or
> foregoes expression in order to avoid enforcement
> consequences." Blum, 744 F.3d at 796 . . . "A
> plaintiff must allege something more than an
> abstract, subjective fear that his rights are
> chilled in order to establish a case or controversy.
> . . . But a real and imminent fear of such chilling
> is enough. Walsh, 714 F.3d at 689.

Id. (citations and quotations omitted).

The Complaint alleges that "because Rule 8.4(7) applies so broadly, permits sanctions even against those who have not knowingly engaged in discrimination or harassment, and supplies only vague definitions of actionable speech, Cerame and Moynahan reasonably fear that they may be sanctioned for the sorts of statements they have made in the past. Accordingly, Cerame and Moynahan must chill their speech to avoid being subject to bar disciplinary proceedings and bar sanctions." Compl. at ¶¶ 5-6. The key question then is whether each plaintiff has alleged facts sufficient to show that he is "chilled from exercising [his] right to free expression or forgoes expression in order to avoid enforcement consequences." Blum, 744 F.3d at 796 (quoting Mangual v. Rotger-Sabat, 317 F.3d 45, 57 (1st Cir. 2003)). This requires showing a real and imminent fear of such chilling, as opposed to an abstract, subjective fear that his rights are chilled. See Walsh 714 F.3d at 685.

As to Cerame, the Complaint alleges that Cerame "takes a special interest in representing individuals censured or punished for speech or expressive conduct considered offensive by some others" and that "this has included representing individuals who have uttered racial slurs or off-color jokes about firearms, individuals who photograph police in public without their consent and over their objections, and individuals who have anonymously criticized public officials." Compl. at ¶ 13. The Complaint alleges that "Cerame currently is challenging Connecticut General Statute § 53-37, a statute colloquially known as the 'racial ridicule statute.'" Id. at ¶ 14. The Complaint alleges further that "Cerame sometimes uses harsh language when representing individuals charged with crimes" to "help his clients understand his perception of racial bias inherent in the criminal justice system and to convey the gravity of an important or difficult decision" and that he "believes that some individuals may construe such forceful advocacy, language, and expressions as derogatory or demeaning." Id. The Complaint also alleges that:

> [i]n his personal life, Cerame openly criticizes viewpoints he finds objectionable. For example, he speaks critically of Scientology and other religious practices he views as harmful to society. When criticizing racially charged misconduct, Cerame sometimes repeats language used by those whose viewpoints differ from his own. Taken out of context or misunderstood, Cerame's language when criticizing others could be taken as an endorsement of racist

17

> viewpoints he does not hold. On these subjects,
> Cerame's manner and language may well be construed
> by some as derogatory or demeaning. Although Cerame
> avoids such language during court proceedings and
> while otherwise representing clients, he regularly
> uses such language in other contexts to which Rule
> 8.4(7) purports to apply.

Id. at ¶ 15.

Cerame fails to show that Rule 8.4(7) creates a real and imminent fear that his rights are chilled. The Complaint speaks only in terms of generalities. None of the situations he describes in general terms in the Complaint fall under the description of severe or pervasive derogatory or demeaning verbal or physical conduct. The representation of clients who have engaged in offensive conduct or used offensive speech, the use of harsh language to help clients understand racial bias, forceful advocacy, and criticizing religious practices one views as harmful to society do not fall within the explanation of what constitutes discrimination for purposes of Rule 8.4. The Rule does not prohibit in general terms the use of harsh language, forceful advocacy or criticizing religious practices. Cerame does not identify specific harmful verbal or physical conduct manifesting bias or prejudice in which he expects to engage, and in any event, with respect to each of his examples, he provides a legitimate nondiscriminatory basis for the conduct. Nor does Cerame identify speech or conduct in which he intends to engage that has in the past resulted in a complaint that he was

engaging in discrimination or harassment. Also, notwithstanding the fact that the Commentary to Rule 8.4(4) previously included a reference to an attorney manifesting bias or prejudice based upon things such as race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, Cerame points to nothing in the history of the enforcement of Rule 8.4 that gives rise to a well-founded fear that he will be the subject of a disciplinary proceeding and/or bar sanctions. Cf. Blum, 744 F.3d at 798 ("In assessing the risk of prosecution as to particular facts, weight must be given to the lack of a history of enforcement of the challenged statute to like facts . . . ."). Finally, the Commentary reflects an awareness of and sensitivity to the need to avoid instituting disciplinary proceedings against an attorney whose conduct is protected under the First Amendment. The Commentary specifically provides that such conduct "does not violate" Rule 8.4(7). Compl. at ¶ 41. This weakens his argument that he has a real and imminent fear.

As to Moynahan, the Complaint alleges that Moynahan "has spoken at public forums in support of First Amendment free-speech and association rights." Compl. at ¶ 18. The Complaint alleges that he "recently has outspokenly opposed efforts by some educators to adopt curricula based on critical race theory—in particular, teaching students that systemic racism is endemic, that American culture is based on white privilege and

supremacy, and that 'diversity' and 'equity' are cultural imperatives" because he "believes that these teachings are toxic and will lead to greater division, distrust, racism, and segregation among those who should be the leaders of tomorrow and the lifeblood of a better future for all Americans." Id. The Complaint also alleges that "Moynahan often speaks in forceful terms when criticizing opposing points of view," and "[t]hose expressing opposing points of view may well on occasion construe Moynahan's criticisms as personally derogatory or demeaning." Id. at ¶ 19. He gives as an example the fact that he has "repeatedly criticized the race-based educational practices of the Waterbury Board of Education, practices he views as harmful to society." Id.

Moynahan fails to show that Rule 8.4(7) creates a real and imminent fear that his rights are chilled. As with Cerame, the Complaint speaks only in terms of generalities. Similar to the analysis with respect to Cerame, the conduct described by Moynahan in general terms does not fall within the explanation of what constitutes discrimination or harassment for purposes of Rule 8.4. Nor does the Rule prohibit in general terms opposing "curricula based on critical race theory," id. at ¶ 18, or speaking in forceful terms when criticizing opposing points of view. Moynahan does not identify specific harmful verbal or physical conduct manifesting bias or prejudice in which he

20

expects to engage, and in any event, with respect to each of his examples, he provides a legitimate nondiscriminatory basis for the conduct. Like Cerame, Moynahan does not identify speech or conduct in which he intends to engage that has in the past resulted in a complaint that he was engaging in discrimination or harassment, nor does Moynahan point to anything in the history of the enforcement of Rule 8.4 that gives rise to a well-founded fear that he will be the subject of a disciplinary proceeding and/or bar sanctions. Finally, Moynahan's argument that he has a real and imminent fear is also weakened by the language in the Commentary specifically providing that conduct protected under the First Amendment does not violate Rule 8.4(7).

A fear that a comment made in the course of the activities enumerated by each of Cerame and Moynahan will be taken out of context and be the basis for a disciplinary proceeding against Cerame or Moynahan is one that is conjectural and hypothetical, rather than concrete and particularized, and thus not a "real and imminent fear." "A plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." Walsh, 714 F.3d at 689.

Paragraphs 50 to 58 of the Complaint also contain relevant allegations. Both Cerame and Moynahan allege that "[a]s part of

21

their law practices, [they] regularly speak out on controversial legal issues" through "legal blogs, articles in legal publications, continuing legal education (CLE) events, legal seminars, press releases, and public speeches" that "regularly address issues affecting several of the 15 groups protected by Rule 8.4(7)." Compl. at ¶ 51. The Complaint alleges that "[i]n their speeches, Cerame and Moynahan often speak in forceful terms when criticizing opposing points of view. Those expressing opposing points of view may well on occasion construe Cerame's and Moynahan's criticisms as personally derogatory or demeaning." Id. at ¶ 52. But the Rule does not prohibit speaking on issues "affecting," id. at ¶ 51, members of groups identified in the Rule, nor does such conduct fall within the explanation of what constitutes discrimination or harassment for the purposes of Rule 8.4.

The Complaint alleges that "Cerame's and Moynahan's fears that they will face professional misconduct complaints—and any repercussions thereof—are heightened by statements made by supporters of Rule 8.4(7)." Compl. at ¶ 53. They point to a statement by an attorney who spoke at the May 2021 hearing in favor of adopting the Connecticut Bar Association's proposal. The Complaint alleges:

> In support of her argument that the CBA proposal should be adopted, she recounted a heated conversation she had with another lawyer at a recent

> bar-related event. According to the attorney-sponsor (who is African-American), she spoke at the bar-related event in support of "racial justice" measures in the wake of the murder of George Floyd by a police officer. The other attorney responded by calling her a "race pandering nitwit" who was "suffering from black entitlement." She testified that the other attorney's speech constituted improper racial discrimination and that "this conduct should never be okay."

Id. at ¶ 54. Also, in paragraph 58, the plaintiffs provide examples of speech that "members of the Connecticut bar will be reluctant to express" because they fear that the result will be an attorney misconduct complaint. The examples include:

> • Using the pronoun associated with a transgender individual's biological sex when addressing that individual, rather than the individual's preferred pronoun;
>
> • Using terms that some members of a protected group deem offensive but that the speaker does not; e.g., "gender preference" rather than "gender orientation";
>
> • Telling jokes to other attorneys that the speaker does not intend to be taken seriously but that some members of a protected group deem offensive;
>
> • Espousing in good faith theories that some members of a protected group deem offensive; e.g., theories espoused by sociologist Charles Murray that socioeconomic disparities among racial groups are to a large degree attributable to heritable group differences in cognition and adverse social behaviors, not systemic racial discrimination;
>
> • Publishing cartoons that depict a religious deity in a satirical or mocking manner.

Id. at ¶ 58. However, neither plaintiff identifies any "derogatory or demeaning" speech or conduct in which they have

engaged and/or intend to engage in the future that could be expected to elicit a reaction like that of the attorney-sponsor referred to in paragraph 54. Nor does the Complaint allege that they have engaged or will engage in the future in any of the speech or conduct described in the five examples given in paragraph 58 of the Complaint.[1]

"Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation.'" John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 736 (2d Cir. 2017) (quoting Lujan, 504 U.S. at 561). Each plaintiff has the burden of showing that he has standing. Here, the plaintiffs have failed to show an injury-in-fact because they have alleged nothing more than an abstract, subjective fear that their rights are chilled.

---

[1] In their opposition to the motion to dismiss, the plaintiffs state, for the first time, that they "have set out in Paragraph 58 examples of the sorts of speech that they normally engage in and that they believe are fully protected by the First Amendment, but that they will now refrain from expressing because they reasonably fear a misconduct charge under Rule 8.4(7)." Pls.' Opp. Mot. Dismiss at 21 (emphasis added). But parties may not amend a complaint to cure standing deficiencies by means of an opposition to a motion to dismiss. See K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.") (citing Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals, 812 F.Supp.2d 357, 363 n. 9 (S.D.N.Y.2011); Scott v. City of New York Dep't of Corr., 641 F.Supp.2d 211, 229 (S.D.N.Y.2009), aff'd, 445 Fed.Appx. 389 (2d Cir.2011)). In any event, examples of "sorts of" speech by others is not a sufficient basis to determine whether the plaintiffs have a real and imminent fear that their own conduct will result in a disciplinary proceeding and/or sanction.

**IV.   CONCLUSION**

For the reasons set forth above, the Motion to Dismiss (ECF No. 14) is hereby GRANTED. This case is dismissed for lack of jurisdiction.

The Clerk shall close this case.

It is so ordered.

Dated this 29th day of August 2022, at Hartford, Connecticut.

/s/AWT
_____
Alvin W. Thompson
United States District Judge
