IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **MARIO CERAME** and <br> **TIMOTHY C. MOYNAHAN** <br>       Plaintiffs, <br><br>   v. <br><br><br> **MICHAEL P. BOWLER,** in his official capacity <br> as Connecticut Statewide Bar Counsel; and <br> **MATTHEW G. BERGER**, in his official capacity <br> as Chair of the Statewide Grievance Committee, <br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)   **Case No. 3:21cv-01502-AWT** <br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## FIRST AMENDED COMPLAINT

Plaintiffs Mario Cerame and Timothy C. Moynahan, through undersigned counsel, allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs Mario Cerame and Timothy C. Moynahan bring this suit to stop the ongoing violation of their First and Fourteenth Amendment rights, as well as their rights under the Connecticut Constitution, by State of Connecticut officials acting in their official capacities.

2. Cerame is a Connecticut-licensed attorney employed at Brignole, Bush & Lewis. Cerame is a frequent advocate for speech and association rights, both in his professional life and outside of the workplace. He has presented on speech rights on panels, to local bar associations, and at know-your-rights training open to the public. He frequently advises other attorneys on speech issues and has been quoted in the Connecticut Law Tribune and other Connecticut media regarding his views on newsworthy speech issues. He has been particularly outspoken in

opposing Rule 8.4(7) of the Connecticut Rules of Professional Conduct and is openly critical of both Rule 8.4(7)'s adoption and the Connecticut Bar Association's support of the Rule.

3.   Moynahan is a Connecticut-licensed attorney employed at The Moynahan Law Firm in Waterbury, Connecticut.   In that capacity, he has participated in many bar-related activities, including as a board member of the Connecticut Trial Lawyers Association and a founding member of the Connecticut Criminal Lawyers Association, and has been and is active in his community.   He regularly submits letters to newspapers and other news media, as well as to government officials.   Moynahan's views are often highly critical of positions adopted by the American and Connecticut Bar Associations and the Waterbury Board of Education.

4.   Connecticut regulates the conduct of Connecticut-licensed lawyers by means of its Rules of Professional Conduct (the "Rules").   In June 2021, Connecticut amended the Rules by adopting a new provision, Rule 8.4(7), that is in effect a speech code for lawyers.   It expands the definition of "professional misconduct" to include verbal or physical conduct that the lawyer "reasonably should know" constitutes "harassment or discrimination" on the basis of any one of 15 categories, including race, sex, religion, disability, sexual orientation, and gender identity. Rule 8.4(7) applies broadly to attorney speech in a wide variety of settings, not merely speech during court proceedings or while representing clients.

5.   Neither Cerame nor Moynahan intends to make statements that, in his mind, would constitute discrimination or harassment on the basis of any of the 15 enumerated categories. But because Rule 8.4(7) applies so broadly, permits sanctions even against those who have not knowingly engaged in discrimination or harassment, and supplies only vague definitions of

2

actionable speech, Cerame and Moynahan reasonably fear that they may be sanctioned for the sorts of statements they have made in the past.

6.   Accordingly, Cerame and Moynahan must chill their speech to avoid being subject to bar disciplinary proceedings and bar sanctions.

7.   This civil rights action seeks a declaration that Rule 8.4(7) on its face violates the First Amendment (as incorporated through the Fourteenth Amendment) and analogous provisions of the Connecticut Constitution, and an injunction preventing enforcement of the Rule.

### JURISDICTION AND VENUE

8.   The Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

9.   Plaintiffs bring this action under 42 U.S.C. § 1983.   The Court may award injunctive relief and nominal damages, as well as declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

10.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

### THE PARTIES

11.   Plaintiff Mario Cerame is an attorney, licensed to practice law in the State of Connecticut since 2013.   He has a special interest in First Amendment law and the freedom of speech, and his advocacy on those and related issues is a substantial part of his identity.

12.   Cerame has been a member of the First Amendment Lawyers Association (FALA) for eight years.   FALA is a not-for-profit, nationwide association of hundreds of attorneys devoted to the protection of the First Amendment.   Cerame is currently the only member of

3

FALA in Connecticut.   FALA regularly hosts continuing legal education events for its members on free-speech issues, and Cerame regularly dialogues with colleagues on free-speech issues.

13.   In his legal practice, Cerame takes a special interest in representing individuals censured or punished for speech or expressive conduct considered offensive by some others. Specifically, this has included representing individuals who have uttered racial slurs or off-color jokes about firearms, individuals who photograph police in public without their consent and over their objections, and individuals who have anonymously criticized public officials.

14.   Cerame currently is challenging Connecticut General Statute § 53-37, a statute colloquially known as the "racial ridicule statute."   In addition, Cerame sometimes uses harsh language when representing individuals charged with crimes.   Cerame does so when he believes it is necessary to help his clients understand his perception of racial bias inherent in the criminal justice system and to convey the gravity of an important or difficult decision.   For example, he said the following to a young African American criminal defendant he was representing, in an effort to convince the defendant to seriously consider entering into a plea deal on the drug charges he faced: "You need to understand the racial bias inherent in the criminal justice system.   This prosecutor comes down hard on all drug defendants.   And if even lilly-white boys are likely to get harsh sentences, just imagine the kind of sentence a black kid like you might receive."   Cerame believes that some individuals may construe such forceful advocacy, language, and expressions as derogatory or demeaning.

15.   In his personal life, Cerame openly criticizes viewpoints he finds objectionable. For example, he speaks critically of Scientology and other religious practices he views as harmful to society.   When criticizing racially charged misconduct, Cerame sometimes repeats

4

language used by those whose viewpoints differ from his own.   Taken out of context or misunderstood, Cerame's language when criticizing others could be taken as an endorsement of racist viewpoints he does not hold.   On these subjects, Cerame's manner and language may well be construed by some as derogatory or demeaning.   Although Cerame avoids such language during court proceedings and while otherwise representing clients, he regularly uses such language in other contexts to which Rule 8.4(7) purports to apply.

16.   Accordingly, Cerame believes that his past, present, and future advocacy falls within the ambit of Rule 8.4(7), and that his advocacy and speech genuinely expose him to claims of ethics violations under that Rule.

17.   Plaintiff Timothy C. Moynahan is a graduate of Catholic University's Columbus School of Law and has been a member of the Connecticut bar since 1964.   He specializes in personal injury law and was selected to Super Lawyers from 2012 to 2020.   For his contributions to the Waterbury community, Post University inducted Moynahan into its Hall of Fame and awarded him a Doctor of Letters degree.

18.   Moynahan has spoken at public forums in support of First Amendment free-speech and association rights; the many groups to which he has spoken on free-speech issues include the American Arab Anti-Discrimination Committee, the United Nations Delegations Women's Club in New York, and at law schools and legal events in other countries.   Moynahan is particularly concerned with restrictions on speech and expression of opinion on school campuses.   He recently has outspokenly opposed efforts by some educators to adopt curricula based on critical race theory—in particular, teaching students that systemic racism is endemic, that American culture is based on white privilege and supremacy, and that "diversity" and "equity" are cultural

5

imperatives.   He believes that these teachings are toxic and will lead to greater division, distrust, racism, and segregation among those who should be the leaders of tomorrow and the lifeblood of a better future for all Americans.

19.   In his speeches and publications, Moynahan often speaks in forceful terms when criticizing opposing points of view.   Those expressing opposing points of view may well on occasion construe Moynahan's criticisms as personally derogatory or demeaning.   For example, he has repeatedly criticized the race-based educational practices of the Waterbury Board of Education, practices he views as harmful to society.

20.   Defendant Michael P. Bowler is Connecticut's Statewide Bar Counsel.   He is being sued in his official capacity only.

21.   As Statewide Bar Counsel, Bowler is charged with reviewing all complaints alleging misconduct by a Connecticut-licensed attorney.   Superior Court Rules, § 2-32(a).

22.   Within seven days of receiving a complaint, Bowler must recommend one of three dispositions: (1) forward the complaint for further investigation by the appropriate local grievance panel; (2) refer the complaint to the Chair of the Statewide Grievance Committee for possible dismissal on one of 10 enumerated grounds; or (3) if the complaint alleges only a fee dispute, issue a stay of further proceedings (in conjunction with the Chair of the State Grievance Committee) "on such terms and conditions as deemed appropriate, including referring the parties to fee arbitration."   *Id.*

23.   Defendant Matthew G. Berger is Chair of Connecticut's Statewide Grievance Committee.   He is being sued in his official capacity only.

6

24.   In that capacity, Berger (in conjunction with the 20 other members of the Statewide Grievance Committee) oversees the work of the Statewide Bar Counsel in the initial screening of complaints alleging misconduct by Connecticut bar members.   *Id.*

25.   In addition, if a grievance panel to which a complaint has been referred finds probable cause that an attorney is guilty of misconduct, Berger (in conjunction with the Statewide Grievance Committee or a three-member reviewing committee established by the Statewide Grievance Committee) oversees the conduct of a hearing and issues a final decision on the complaint.   Superior Court Rules, §§ 2-33, 2-35, 2-36.   The Statewide Grievance Committee (or a reviewing committee) may impose sanctions on attorneys found to have engaged in professional misconduct, *id.*, § 2-37, and may direct the Disciplinary Counsel to prosecute presentment proceedings against an attorney in Superior Court.   *Id.*, § 2-34A(b)(7).

## FACTUAL BACKGROUND

### Attorney Misconduct

26.   Under Connecticut law, only licensed attorneys are authorized to practice law within the State.   The Superior Court has adopted Rules of Professional Conduct that, among other things, define activities constituting "professional misconduct."   Rule 8.4.   Connecticut-licensed attorneys who engage in professional misconduct (without regard to where the misconduct occurred) are subject to sanction, up to and including loss of their license to practice law.   Rule 8.5.

27.   For many years, Rule 8.4 has included a provision that addresses a lawyer's invidiously discriminatory conduct "in the course of representing a client."   Rule 8.4(4) states,

7

"It is professional misconduct for a lawyer to ... (4) Engage in conduct that is prejudicial to the administration of justice."   Until January 1, 2022, the Commentary to Rule 8.4(4) stated:

> A lawyer who, in the course of representing a client, knowingly manifests by word or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic statute, violates subdivision (4) when such actions are prejudicial to the administration of justice.   Legitimate advocacy respecting the foregoing factors does not violate subdivision (4).

That commentary was deleted in connection with adoption of Rule 8.4(7).

28.   The American Bar Association (ABA) has for several decades maintained "Model Rules of Professional Conduct."   Many States, including Connecticut, have adopted the ABA Model Rules, in whole or substantial part.

29.   In 2016, the ABA voted to amend its Model Rules to include a new Rule 8.4(g), which reads as follows:

> It is professional misconduct for a lawyer to: ... (g) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

**Adoption of Rule 8.4(7)**

30.   In the spring of 2020, two Connecticut lawyers submitted a proposal to the Rules Committee of the Superior Court, urging adoption of Model Rule 8.4(g) as part of the Connecticut Rules.

31.   At its June 5, 2020 meeting, the Rules Committee tabled the proposal for three months and asked the Connecticut Bar Association (CBA) to submit recommendations regarding the proposal.

Deleted: T
Deleted: s
Deleted: (and will continue to state through the end of the year):…

32.   On September 10, 2020, the CBA's House of Delegates voted 39-11 to support adoption of a slightly revised version of Model Rule 8.4(g).   The CBA submitted that revised version in a September 11, 2020 letter to the Rules Committee.   The letter, attached hereto as Exhibit A, stated, "The pursuit of justice, equity, and equality are among the most ancient and highest principles of our profession.   The inclusion of a prohibition on discrimination, harassment and sexual harassment, within our Rules of Professional Conduct and not solely in the commentary, is long overdue."

33.   The CBA's letter stated that it had requested bar members to report their "experience with discrimination, harassment and sexual harassment."   It stated that many attorneys responded "that they have experienced or witnessed discrimination, harassment, or sexual harassment in conduct related to the practice of law."

34.   The Rules Committee requested and received many comments, both pro and con, on the CBA's proposed version of a new Rule 8.4(7).   Among the groups from which the Rules Committee requested comments was the Statewide Grievance Committee (SGC).

35.   By email dated December 29, 2020, Defendant Bowler submitted comments on behalf of the SGC.   A copy of the December 29, 2020 email is attached hereto as Exhibit B.

36.   The email stated:

• "The SGC acknowledged that the CBA had the best of intentions with the proposal, hence the SGC is not taking a formal position opposing it."

• "[T]he SGC had concerns over the clarity and scope of the rule and was concerned that its language may present more problems than solutions in its application."

• "In the SGC's opinion, the terms ["discrimination," "harassment," and "conduct related to the practice of law"] are not clearly defined in either the proposal or its commentary."

9

• "The SGC noted that the current Rules of Professional Conduct are applied robustly by the SGC and Superior Court to limit and deter the conduct described [in] the proposal and its commentary."

• "Other than to observe that the proposal is constitutionally charged, the SGC will not comment on whether the proposal is constitutional under either the United States or Connecticut constitutions."

37.   At its February 8, 2021 meeting, the Rules Committee voted 7-1 to submit

CBA's proposal to a public hearing in May 2021.

38.   The Rules Committee conducted a public hearing on May 10, 2021, then passed

along to the Superior Court its recommendation that the proposed Rule 8.4(7) be adopted.

39.   At their annual meeting in June 2021, the judges of the Superior Court adopted the

proposed amendment by voice vote and without discussion.

40.   The new Rule 8.4(7) became effective on January 1, 2022.   It reads as follows:

It is professional misconduct for a lawyer to: ... (7) Engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, color, ancestry, sex, pregnancy, religion, national origin, ethnicity, disability, status as a veteran, age, sexual orientation, gender identity, gender expression or marital status in conduct related to the practice of law.   This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation, or to provide advice, assistance or advocacy consistent with these rules.

41.   The amendment eliminated the previous Rule 8.4 Commentary regarding

discriminatory conduct "in the course of representing a client," quoted above in Paragraph 27.

It also deleted the following language from the Commentary: "A lawyer may refuse to comply

with an obligation imposed by law upon a good faith belief that no valid obligation exists."   The

amendment added the following material to the Rule 8.4 Commentary, all directly related to the

new Rule 8.4(7):

10

---

**Deleted:** is scheduled to

**Deleted:** o

**Deleted:** 30

Discrimination and harassment in the practice of law undermine confidence in the legal profession and the legal system. *Discrimination includes harmful verbal or physical conduct directed at an individual or individuals that manifests bias or prejudice on the basis of one or more of the protected categories.* Not all conduct that involves consideration of these characteristics manifests bias or prejudice; there may be a legitimate nondiscriminatory basis for the conduct.

*Harassment includes severe or pervasive derogatory or demeaning verbal or physical conduct.* Harassment on the basis of sex includes unwelcome sexual advances, requests for sexual favors and other unwelcome verbal or physical conduct of a sexual nature.

The substantive law of antidiscrimination and antiharassment statutes and case law should guide application of paragraph (7), where applicable. Where the conduct in question is subject to federal or state antidiscrimination or antiharassment law, a lawyer's conduct does not violate paragraph (7) when the conduct does not violate such law. Moreover, an administrative or judicial finding of a violation of state or federal antidiscrimination or antiharassment laws does not alone establish a violation of paragraph (7).

A lawyer's conduct does not violate paragraph (7) when the conduct in question is protected under the first amendment to the United States constitution or article first, § 4 of the Connecticut constitution.

Conduct *related to the practice of law* includes representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and *participating in bar association, business or professional activities or events in connection with the practice of law.* Lawyers may engage in conduct undertaken to promote diversity, equity and inclusion without violating this Rule by, for example, implementing initiatives aimed at recruiting, hiring, retaining and advancing diverse employees or sponsoring diverse law student organizations.

A trial judge's finding that peremptory challenges were exercised on a discriminatory basis does not alone establish a violation of paragraph (7). Moreover, no disciplinary violation may be found where a lawyer exercises a peremptory challenge on a basis that is permitted under substantive law. A lawyer does not violate paragraph (7) by limiting the scope or subject matter of the lawyer's practice to members of a particular segment of the population in accordance with these rules and other law. A lawyer may charge and collect reasonable fees and expenses for a representation. Rule 1.5 (a). Lawyers should also be mindful of their professional obligations under Rule 6.1 to provide legal services to those who are unable to pay, and their obligation under Rule 6.2 not to avoid appointments from a tribunal except for good cause. See Rule 6.2 (1), (2)

11

and (3).   A lawyer's representation of a client does not constitute an endorsement
by the lawyer of the client's views or activities.   See Rule 1.2 (b).

(Emphasis added).

### First Amendment Rights

42.   The First Amendment to the U.S. Constitution states that "Congress shall make no

law . . . abridging the freedom of speech."   The provisions of the First Amendment were made

applicable to the State of Connecticut by virtue of adoption of the Fourteenth Amendment.

43.   Article I, § 4 of the Connecticut Constitution provides similar protection to speech:

"Every citizen may freely speak, write and publish his sentiments on all subjects, being

responsible for the abuse of that liberty."

44.   The First Amendment fully protects offensive, derogatory, or demeaning speech.

Any state effort to single out such speech for sanction is a content-based and viewpoint-based

speech restriction and is subject to the strictest of First Amendment scrutiny.   *Iancu v. Brunetti*,

139 S. Ct. 2294 (2019); *Matal v. Tam*, 137 S. Ct. 1744 (2017).   Such speech restrictions will

survive First Amendment scrutiny only if the government can demonstrate that the restriction

serves a compelling state interest in a narrowly tailored manner.   *Id.*

45.   The First Amendment analysis does not change simply because the speech

restriction is imposed on a lawyer.   "Derogatory" or "demeaning" speech is not subject to

decreased constitutional protection simply because it is spoken by a lawyer in a setting "related

to the practice of law."   The Supreme Court held in *Nat'l Inst. of Family and Life Advocates v.*

*Becerra*, 138 S. Ct. 2361 (2018), that the First Amendment protects "professional speech" just as

fully as speech by nonprofessionals.

12

**Deleted:** ¶
————————Page Break————————
¶

**Rule 8.4(7) Improperly Seeks to Restrict Derogatory/Demeaning Speech**

46.    The Commentary accompanying Rule 8.4(7) states that the "conduct" prohibited by the Rule includes "harmful" speech and "derogatory or demeaning" speech.    Rule 8.4(7)'s prohibition of such speech is in severe tension with First Amendment case law because it imposes sanctions based on the content and viewpoint of the speech.

47.    That tension is heightened by a significant change from the pre-amendment version of Rule 8.4, which limits sanctions to lawyers who "knowingly" manifest discrimination.    In contrast, under new Rule 8.4(7), lawyers can be sanctioned even when they lack any intent to discriminate against or harass others.    It suffices to show that the attorney "reasonably should know" that his or her conduct constitutes discrimination or harassment.

48.    Rule 8.4(7) also greatly expands the scope of attorney speech subject to state control.    The pre-amendment version of Rule 8.4 applies only to objectionable speech "in the course of representing a client."    In contrast, the new Rule 8.4(7) covers speech in settings "related to the practice of law," and broadly defines that term to include, among other things, "participating in bar association, business or professional activities or events in connection with the practice of law."    That expansion compounds the First Amendment difficulties: while Connecticut may have some compelling interests in controlling the content of attorney speech in attorney-client and courtroom situations, that interest diminishes considerably the more removed the setting is from the courthouse.

13

49.   Rule 8.4(7)'s new focus on events unrelated to client representation is a major purpose of the amendment.   The President of the CBA testified at the February 2021 meeting of the Rules Committee of the Superior Court that the CBA's survey indicated that bar members who complained that they had been subjected to harassment focused largely on misconduct at "professional events, *e.g.*, bar association events, CLE, professional networking."

**Chilling of Plaintiffs' Speech**

50.   Plaintiffs Cerame and Moynahan reasonably fear that they will be the subject of professional misconduct complaints once Rule 8.4(7) becomes effective on January 1, 2022.

51.   As part of their law practices, Cerame and Moynahan regularly speak out on controversial legal issues.   They do so through legal blogs, articles in legal publications, continuing legal education (CLE) events, legal seminars, press releases, and public speeches. Their speeches regularly address issues affecting several of the 15 groups protected by Rule 8.4(7), including the free exercise of religion and critical race theory.

52.   In their speeches, Cerame and Moynahan often speak in forceful terms when criticizing opposing points of view.   Those expressing opposing points of view may well on occasion construe Cerame's and Moynahan's criticisms as personally derogatory or demeaning.

53.   A significant portion of Moynahan's legal practice throughout his legal career has involved criminal defense work.   Moynahan believes that effective representation of a criminal defendant requires that he and his client be able to speak frankly and openly with each other—including on issues regarding race, sex, and religion that may be (and often are) relevant to the criminal charges.   Examples include the relevance of the race and sex of the judge, jurors, prosecutors, and defendants to the likely outcome of the case.   Due to the adoption of Rule

14

8.4(7), Moynahan is less willing to discuss such subjects openly for fear such discussions might generate a misconduct complaint.

54.    Cerame's and Moynahan's fears that they will face professional misconduct complaints—and any repercussions thereof—are heightened by statements made by supporters of Rule 8.4(7).   Those statements indicate that supporters are seeking to target comments similar to those they routinely make.

55.    For example, one of the two sponsors of the proposal to adopt ABA Model Rule 8.4(g) testified at the May 2021 hearing conducted by the Rules Committee of the Superior Court.   In support of her argument that the CBA proposal should be adopted, she recounted a heated conversation she had with another lawyer at a recent bar-related event.   According to the attorney-sponsor (who is African-American), she spoke at the bar-related event in support of "racial justice" measures in the wake of the murder of George Floyd by a police officer.   The other attorney responded by calling her a "race pandering nitwit" who was "suffering from black entitlement."   She testified that the other attorney's speech constituted improper racial discrimination and that "this conduct should never be okay."

56.    In fact, the other attorney's speech—while likely "derogatory or demeaning" and apparently "harmful" to her sensibilities, and thus arguably actionable under Rule 8.4(7)—is speech that is fully protected by the First Amendment.   Yet the statements of those supporting adoption of Rule 8.4(7) make clear that Rule 8.4(7) was adopted precisely because its supporters wanted to silence statements of the sort that she found objectionable.

57.    Neither Cerame nor Moynahan intends to harass or discriminate against any members of the groups protected by Rule 8.4(7), but that lack of intent provides no protection for

15

Deleted: 3

Deleted: ¶ ... [1]

Deleted: 4

Deleted: 5

Deleted: 6

their speech.   Given their well-founded fear that they could face a misconduct complaint under

Rule 8.4(7), and the repercussions thereof, they will feel forced to speak less openly to reduce

the likelihood that such a complaint will be filed.

58.   The Commentary to Rule 8.4(7) states that "A lawyer's conduct does not violate

paragraph (7) when the conduct in question is protected under the first amendment to the United

States constitution or article first, § 4 of the Connecticut constitution."   That boilerplate

language is largely meaningless; it provides Cerame and Moynahan with no constitutional

protection that they would not otherwise possess.   They would be entitled to raise a Free Speech

Clause defense to any Rule 8.4(7) charges filed against them, irrespective of whether the

Commentary includes the language quoted above.   It goes without saying that when the judges

of the Superior Court adopted a new Rule of Professional Conduct that they knew would regulate

speech, they did not do so with an intent to violate the U.S. and Connecticut constitutions.   But

their adoption of Rule 8.4(7) nonetheless indicates their intent to proscribe speech of the sort

identified in the rule, as well as their (mistaken) belief that the proscribed speech is not entitled

to constitutional protection.

59.   There are numerous examples of speech that is fully protected by the First

Amendment and that Plaintiffs have uttered in the past but that they and other members of the

Connecticut bar will be reluctant to express because they reasonably fear that doing so could

result in an attorney misconduct complaint by those who deem the speech discriminatory.

Examples include:

   • Using the pronoun associated with a transgender individual's biological sex when
   addressing that individual, rather than the individual's preferred pronoun;

16

• Using terms that some members of a protected group deem offensive but that the speaker does not; *e.g.*, "gender preference" rather than "gender orientation";

• Telling jokes to other attorneys that the speaker does not intend to be taken seriously but that some members of a protected group deem offensive;

• Espousing in good faith theories that some members of a protected group deem offensive; *e.g.,* theories espoused by sociologist Charles Murray that socioeconomic disparities among racial groups are to a large degree attributable to heritable group differences in cognition and adverse social behaviors, not systemic racial discrimination;

• Publishing cartoons that depict a religious deity in a satirical or mocking manner.

60.  There is additional evidence that Rule 8.4(7)'s principal purpose is to serve as a speech code for attorneys.   As Defendant Bowler stated in his email to the Rules Committee, "the current Rules of Professional Conduct," particularly Rule 8.4(4), "are applied robustly by the SGC and Superior Court to limit and deter" discriminatory *conduct* directed at the groups protected by Rule 8.4(7).   All agree, for example, that the law firm partner who pressures junior associates for sexual favors, or persistently harasses them on the basis of sex, is guilty of professional misconduct under pre-2022 rules, and the SGC has not tolerated such misconduct. Thus, the only apparent purpose for adopting Rule 8.4(7) is to expand the scope of anti-discrimination rules to cover *speech* deemed objectionable.

61.  Even if some small portion of the speech proscribed by Rule 8.4(7) is not constitutionally protected, most of it is protected.   The Rule's focus on speech creates legitimate concerns in Cerame and Moynahan that they will be subjected to disciplinary proceedings and penalties for engaging in constitutionally protected speech.

**Vagueness**

17

62.   Rule 8.4(7) prohibits a lawyer, in speech or conduct "related to the practice of law," from acting in a manner that constitutes "harassment or discrimination" on the basis of any one of 15 categories—including race, sex, religion, disability, sexual orientation, and gender identity.

Deleted: 1

63.   As the Statewide Grievance Committee conceded in the December 29, 2020 email submitted by Defendant Bowler, the terms "discrimination," "harassment," and "conduct related to the practice of law" are not clearly defined in either Rule 8.4(7) or the accompanying Commentary.  Plaintiffs share the Statewide Grievance Committee's belief that those three terms are not clearly defined.  Rule 8.4(7)'s lack of clarity strengthens their reasonable beliefs that they should censor their speech on controversial issues, even if they do not believe the speech is covered by the Rule.   The Rule's lack of clarity deprives them of the ability to discern in advance what speech is proscribed and what speech may prompt others to initiate misconduct proceedings.

Deleted: 2

64.   That lack of clarity creates serious due process problems.   First, it deprives attorneys of the ability to discern what speech and conduct is proscribed, and they thus cannot know for sure in advance how to conform their conduct to the terms of the rule.   Because Rule 8.4(7) regulates speech, attorneys will be forced to chill their speech to provide extra assurance that they will not be the targets of enforcement proceedings.   Second, it grants enforcement personnel too much discretion to decide what speech is sanctionable and what speech is not.

Deleted: 3

**Connecticut Ignores Experience of Other States**

65.   The ABA adopted Model Rule 8.4(g) in 2016.   In the ensuing five years, the great majority of States that considered Model Rule 8.4(g) declined to adopt it.   First Amendment concerns were frequently cited as a principal reason for not adopting the rule.

Deleted: 4

18

66.   When Connecticut began its consideration of Model Rule 8.4(g) in 2020, Pennsylvania was one of a small handful of States that had previously adopted the Model Rule.

67.   In December 2020, while the Rules Committee was considering adoption of the CBA's proposed Rule 8.4(7), a federal district court issued a preliminary injunction against enforcement of the Pennsylvania rule.   *Greenberg v. Haggerty*, 491 F. Supp. 3d 12 (E.D. Pa. 2020).   The court held, among other things, that the plaintiff was likely to succeed on his claim that Pennsylvania Rule 8.4(g) amounted to viewpoint-based speech discrimination in violation of the First Amendment and also was unconstitutionally vague.

68.   Pennsylvania has not appealed from the district court's ruling.

69.   Following the court decision, numerous groups and individuals (including the CBA) wrote to the Rules Committee to comment on the decision.

70.   The CBA's January 4, 2021 letter asserted that the Pennsylvania decision was distinguishable because, unlike Pennsylvania's rule, the CBA proposal focused on "discriminatory or harassing conduct, and not protected speech."

71. The CBA's letter is inaccurate; as noted above, Rule 8.4(7)'s definitions of "discrimination" and "harassment" reveal the rule's focus on speech.   Indeed, Rule 8.4(7) is far more objectionable under the First Amendment than the Pennsylvania rule.   While the Pennsylvania rule provides that lawyers may be sanctioned only for "knowingly" engaging in harassment or discrimination, Rule 8.4(7) eliminates the "knowing" requirement from the Connecticut rule—employing instead a much less protective "reasonably should know" standard.

19

72.   The Rules Committee and the Superior Court adopted the CBA proposal as Rule 8.4(7) without any discussion of the 2020 *Greenberg* decision or its ramifications for the constitutionality of Rule 8.4(7).

73.   In March 2022, the federal district court hearing the challenge to Pennsylvania Rule 8.4(g) granted the plaintiffs' motion for summary judgment, held that the Rule violated the plaintiff's First Amendment rights, and granted a permanent injunction against its enforcement. *Greenberg v. Goodrich*, ___ F.3d ___, 2022 WL 874952 (E.D.Pa., March 24, 2022).

## CLAIM I

### Violation of the First Amendment

74.   Plaintiffs Cerame and Moynahan repeat and incorporate by reference the allegations of Paragraphs 1 through 73 of the Complaint.

75.   Rule 8.4(7) imposes content-based and viewpoint-based discrimination against disfavored speech: "derogatory" or "demeaning" speech directed at members of protected groups.

76.   State officials have articulated no compelling interest for this discriminatory speech restriction, and the restriction is not narrowly tailored.   Accordingly, Rule 8.4(7) violates the First Amendment.

77.   Plaintiffs Cerame and Moynahan have been injured by the adoption of Rule 8.4(7) because their well-founded fears that they will be the target of a disciplinary complaint is imposing a chill on their speech activity.

78.   Defendants Bowler and Berger are the two Connecticut officials most responsible for ensuring enforcement of Rule 8.4(7).   In the absence of an injunction, they can be expected

20

Deleted: 1

Deleted: 2

Deleted: 1

Deleted: 3

Deleted: 4

Deleted: 5

Deleted: 6

to enforce Rule 8.4(7).   An injunction against those two officials will ensure that the

unconstitutional rule will not continue to be enforced.

**CLAIM II**

**Violation of the Fourteenth Amendment**

79.   Plaintiffs Cerame and Moynahan repeat and incorporate by reference the allegations

of Paragraphs 1 through 78 of the Complaint.

80.   Rule 8.4(7)'s key terms—including the terms "discrimination," "harassment,"

"reasonably should know," and "conduct related to the practice of law"—are not well defined in

either Rule 8.4(7) or the accompanying Commentary.

81.   As a result of that lack of clarity, Cerame and Moynahan are unable to discern in

advance precisely what speech is prohibited by Rule 8.4(7), and enforcement officials are

granted too much discretion to decide for themselves when to initiate misconduct proceedings

against attorney speakers.

82.   The overly vague nature of Rule 8.4(7)'s speech restrictions violates Cerame's and

Moynahan's rights under the Due Process Clause of the Fourteenth Amendment and imposes a

chill on their speech activity.

83.   An injunction against Defendants Bowler and Berger in their official capacities

would ensure that Rule 8.4(7) will not be enforced against Cerame and Moynahan in violation of

the Due Process Clause.

**CLAIM III**

**Violation of Article I, Section 4 of the Connecticut Constitution**

Deleted: begin
Deleted: ing
Deleted:  on January 1, 2022.
Deleted: 7
Deleted: 6
Deleted: 78
Deleted: 79
Deleted: 0
Deleted: 1

84.   Plaintiffs Cerame and Moynahan repeat and incorporate by reference the allegations of Paragraphs 1 through 83 of the Complaint.

85.   Rule 8.4(7) imposes content-based and viewpoint-based discrimination against disfavored speech: "derogatory" or "demeaning" speech directed at members of protected groups.

86.   State officials have articulated no compelling interest for this discriminatory speech restriction, and the restriction is not narrowly tailored.   Accordingly, Rule 8.4(7) violates Article I, Section 4 of the Connecticut Constitution.

87.   An injunction against Defendants Bowler and Berger in their official capacities would ensure that Rule 8.4(7) will not be enforced against Cerame and Moynahan in violation of the Connecticut Constitution.

**CLAIM FOUR**

**Violation of Article III, Section 1 of the Connecticut Constitution**

88.   Plaintiffs Cerame and Moynahan repeat and incorporate by reference the allegations of Paragraphs 1 through 87 of the Complaint.

89.   Article II of the Connecticut Constitution creates three distinct branches of government: the legislative, executive, and judicial branches.

90.   Article V of the Connecticut Constitution establishes courts to exercise the judicial power.   Included therein is the power to establish rules governing judicial proceedings; that power encompasses regulating the conduct of individuals (including attorneys) engaged in such proceedings. That power does *not* authorize the courts to establish rules governing the speech of attorneys when they are not directly engaged in the practice of law.

22

**Deleted:** 2

**Deleted:** 1

**Deleted:** 3

**Deleted:** 4

**Deleted:** 5

**Deleted:** 6

**Deleted:** 5

**Deleted:** 7

**Deleted:** 88

91.   Instead, the power to establish rules governing such speech is vested in the general

assembly by Article III, Section 1 of the Connecticut Constitution, which states that "the

legislative power of the state shall be vested in two distinct houses or branches, the one to be

styled the senate, the other the house of representatives, and both together the general assembly."

92.   Rule 8.4(7) purports to establish rules governing attorney speech unrelated to

matters implicated by the courts' Article V judicial powers.   In particular, the Commentary to

Rule 8.4(7) states that the Rule applies to statements made while an attorney participates in "bar

association, business or professional activities or events in connection with the practice of law."

Any attempt by the courts to establish rules regulating such speech is an exercise of legislative

power.   The Superior Court's adoption of Rule 8.4(7) thus violates Article III, Section 1 of the

Connecticut Constitution, which vests the legislative power in the general assembly alone.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Mario Cerame and Timothy Moynahan respectfully pray that the

Court award the following relief against Defendants:

A.   A declaration that Defendants, by enforcing Rule 8.4(7) of the Professional Rules of

Conduct, are violating Plaintiffs' rights under the First and Fourteenth Amendments to the U.S.

Constitution, and Article I, Section 4 and Article III, Section 1 of the Connecticut Constitution;

B.   An injunction against the processing of any misconduct complaint submitted under

Section 2-32 of the Superior Court Rules, to the extent that the misconduct complaint alleges a

violation of Rule 8.4(7) of the Rules of Professional Conduct;

C.   An injunction against taking any action under Sections 2-35, 2-36, or 2-37 of the

Superior Court Rules, with respect to a determination filed by a Grievance Panel with the

23

Deleted: 8

Deleted: 0

Statewide Grievance Committee, to the extent that the Grievance Panel has based its

determination on a violation of Rule 8.4(7);

    D.   Nominal damages in the amount of $1 to each Plaintiff;

    E.   Such other relief as the Court deems just and proper, including an award of attorneys'

fees and costs.

    Plaintiffs demand a jury trial.


Dated: September 7, 2022            Respectfully submitted,         **Deleted:** 8

                       /s/ Richard A. Samp
                       Richard A. Samp
                         (Admitted *pro hac vice*)
                       Margaret Little
                         CT Bar No. 303494
                       New Civil Liberties Alliance
                       1225 19th Street, NW, Suite 450
                       Washington, DC 20036
                       rich.samp@ncla.legal
                       202-869-5210

                       Counsel for Plaintiffs

**Page 15: [1] Deleted          Rich Samp          9/7/2022 5:14:00 PM**