## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIO CERAME ET AL., | : | No. 3:21-cv-01502-OAW |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER SLACK ET AL., | : | |
| *Defendants*. | : | JUNE 20, 2025 |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Plaintiffs ask the federal courts to enjoin members of the State judicial machinery from hearing grievances under Rule 8.4(7) of the Rules of Professional Conduct. But they do not allege any concrete or threatened grievance against them under the Rule. They instead bring a facial pre-enforcement challenge asking the federal courts to assume that Defendants—and ultimately the State judges in whose place Defendants stand—will interpret and apply the Rule in a manner that violates both the Rule's commentary and the First Amendment. The Eleventh Amendment bars the federal courts from forestalling the State judicial process in this way.

First, *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) and its progeny unequivocally establish that judges and other officials in the State judicial machinery are not "enforcers" of State law who can be sued under *Ex Parte Young*. They instead impartially interpret the law and apply it to facts to resolve disputes between parties. If they act unlawfully in performing those judicial functions, the proper remedy is an appeal and not a pre-enforcement federal action under *Ex Parte Young* seeking to enjoin them from hearing cases.

1

Defendants fall squarely within the *Whole Woman's Health* rubric.  Attorney regulation and discipline is a quintessentially judicial process over which Connecticut judges have exclusive jurisdiction.  The judges have delegated that judicial function in part to Defendants and other officials serving on the Statewide Grievance Committee ("SGC"), which hears and resolves attorney grievances. State law makes clear that proceedings before the SGC are *judicial* proceedings, and that Defendants stand in the place of the judges and perform a *judicial function* by receiving complaints, applying law to facts, and resolving disputes as impartial adjudicators. And like any judicial decision, theirs are subject to extensive review through the State appellate process and ultimately by the U.S. Supreme Court. *Whole Woman's Health* and its progeny bar federal courts from enjoining Defendants' performance of these judicial functions.

Second, the nature of Plaintiffs' challenge exemplifies why the *Whole Woman's Health* rule is appropriate here and applying *Ex Parte Young* is not.  The Eleventh Amendment is grounded in principles of federalism and comity, and the *Young* exception must be narrowly construed to "reflect a proper understanding of its role in our federal system." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997). That understanding includes the "foundational principle" that "[s]tate courts are adequate forums for the vindication of federal rights" and that federal courts should not exercise jurisdiction in ways "that would reflec[t] negatively upon [a] state court's ability to" perform its judicial function consistent with federal law. *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (quotation marks omitted; alterations in original).

Plaintiffs flout these principles here. They brought a facial pre-enforcement challenge before the Rule even went into effect and before the SGC or any State judge ever had a chance to interpret it. They ask the federal courts to assume Defendants –who are arms of the State judiciary—and other state trial and appellate judges will interpret and apply the Rule in hypothetical future cases in a manner that violates the First Amendment, and to use those assumed violations as a basis to facially invalidate the Rule in all its applications. And they ask all this despite Defendants' repeated representations in this litigation that they do not and will not interpret the Rule in the manner Plaintiffs fear, and despite explicit language in the Rule's commentary expressly providing that the Rule *does not apply* "when the conduct in question is protected under the first amendment to the United States constitution or article first, § 4 of the Connecticut constitution."

It is difficult to imagine a less appropriate case for federal court intervention. If Plaintiffs believe the Rule applies to constitutionally protected speech despite the commentary's explicit statement that it does not, they can bring a declaratory judgment action in State court and let the State judiciary interpret the Rule in the first instance. Alternatively, they can wait to see if the grievance they fear ever materializes and, if it does, raise their constitutional claims as a defense to a concrete case that the State courts are perfectly capable of resolving. But what they cannot do is sue members of the State judicial machinery in federal court, before they have received or acted on any grievance complaint, to categorically enjoin them from applying the Rule.

## I.    Factual Background

### A. Connecticut's Adoption of Rule 8.4(7)

The Rule has its genesis in the American Bar Association's Model Rule 8.4(g), which the ABA adopted in 2016. In the ensuing five years, numerous states have adopted Model Rule 8.4(g) or some variation of it. That includes both New York and Vermont, Connecticut's sister states in the Second Circuit.

Perceiving a problem of harassment and discrimination within Connecticut's own legal profession, two lawyers proposed the Model Rule to the Rules Committee of the Superior Court, which tabled the proposal and instructed the proponents to coordinate with the Connecticut Bar Association ("CBA") to develop a new proposal. The CBA engaged in an extensive investigative and deliberative process to determine the nature and severity of the problem and the best ways to address it, including a comprehensive survey of attorneys' experiences with discrimination and harassment in their legal practice. The result was the current version of the Rule, which the CBA proposed and the Judges of the Superior Court collectively—and unanimously— adopted at their meeting held in June 2021. *See generally* Compl., ¶¶ 30-39.

The adopted changes amended Rule 8.4 of Rules of Professional Conduct to add subsection (7), which now provides that:

> It is professional misconduct for a lawyer to: . . . (7) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, color, ancestry, sex, pregnancy, religion, national origin, ethnicity, disability, status as a veteran, age, sexual orientation, gender identity, gender expression or marital status in conduct related to the practice of law. This paragraph does not limit the ability of the lawyer to accept, decline or withdraw from

a representation, or to provide advice, assistance or advocacy consistent with these Rules.

In addition to those changes to the text, the Judges unanimously adopted new commentary to explain the Rule's intended meaning and scope.

The commentary explains that the term "discrimination" is intended to cover verbal or physical "conduct" that is "directed at an individual" and "harmful" to that individual. Compl., ¶ 41. Similarly, the term "harassment" commonly is understood to mean conduct directed to a particular person,[1] and the commentary explains that such verbal or physical conduct must be "severe or pervasive" and "derogatory or demeaning" to constitute a violation. *Id.*, ¶ 41.

The commentary also provides that "[n]ot all conduct that involves consideration of" the protected categories will constitute discrimination or harassment, and that conduct implicating those categories will fall outside of the Rule if "there [is] a legitimate nondiscriminatory basis for the conduct." *Id.* Thus, simply alleging that a person wishes to engage in conduct that "affects" one or more of the protected categories will not, without more, violate Rule 8.4(7). *See id.*, ¶ 51.

Finally, and critically here, the commentary expressly provides that "[a] lawyer's conduct does not violate paragraph (7) when the conduct in question is protected under the first amendment to the United States constitution or article first, § 4 of the Connecticut constitution." *Id.*, ¶ 41. This unambiguous guidance, which

---

[1] *E.g.*, Merriam Webster, https://www.merriam-webster.com/dictionary/harass (last visited December 6, 2021) (describing the essential meaning of harass as "to annoy or bother (someone) in a constant or repeated way").

5

the Judges deliberately put into the commentary, reflects their clear intent that Rule 8.4(7) does not apply to speech that is constitutionally protected, that discipline cannot be imposed under Rule 8.4(7) based on such speech, and that the judicial authorities exercising jurisdiction over disciplinary matters should not and cannot permit grievances to proceed under Rule 8.4(7) to the extent they are based on such speech.

### B. Connecticut's Grievance Process

Under Connecticut law, the regulation and discipline of attorneys is exclusively a judicial function performed by the Judges of the Superior Court, who have "inherent authority to regulate attorney conduct and to discipline members of the bar." *Statewide Grievance Comm. v. Presnick*, 215 Conn. 162, 166 (1990). The Judges themselves delegated portions of this judicial function to the SGC and other disciplinary authorities, who "act as an arm of the court" when exercising their duties. *Presnick*, 215 Conn. at 167; *Sobocinski v. Statewide Grievance Com.*, 215 Conn. 517, 526 (1990); *see also* Conn. Gen. Stat. §§ 51-89 through 51-94a. The Connecticut Supreme Court explicitly has held that the SGC "is not a body in which the legislature has reposed general powers of administration of a particular state program with which it has been given statutory authority to act for the state in the implementation of that program," and that it is "excluded under the definition of 'agency' set forth in [General Statutes] § 4-166(1)." *Sobocinski*, 215 Conn. At 526. Rather, it is "a judicial entity" and any proceedings before it are tantamount to "judicial proceedings" of the

State courts themselves. *Chester v. Willey*, Superior Court, No. 374862, 1991 Conn. Super. LEXIS 1409, at *5-6 (June 7, 1991).

Exercising this exclusive and inherent authority, the Judges have adopted a comprehensive process for resolving complaints of attorney misconduct, including grievances based on Rule 8.4(7). *See* Conn. Prac. Bk. §§ 2-29 *et seq.* That process is full of procedural safeguards, including but not limited to, mandatory hearings, subpoena power, hearings on the record, evidence, witnesses, and representation by counsel. *Id.*; *see also* Conn. Gen. Stat. § 51-90g.

Specifically, when Statewide Bar Counsel, Defendant Slack, receives a complaint, he conducts an initial review and dismisses the complaint if it fails to state a claim. *Id.*, § 2-32(a)(2)(B). If a complaint warrants dismissal, based on a number of enumerated grounds, Defendant Slack may dismiss the complaint under Rule 8.4(7) at that threshold review without requiring the attorney to even file a response. *Id.*, § 2-32(a)(2). Defendant Slack performs that initial review process in combination with Chair of the SGC, Defendant Berger. *Id.* For certain allegations, Defendant Slack also has the power to stay proceedings and refer the matter to arbitration. *Id.*, § 2-32(a)(3).

If it is not clear from the face of the complaint that it should be dismissed, Defendant Slack must refer the matter to a local grievance panel to investigate the complaint and determine whether there is probable cause that the attorney engaged in misconduct. *Id.*, § 2-32(b), (f). This preliminary investigation before the grievance panel is confidential. *Id.*, § 2-32(g). The attorney then has an opportunity to file an

initial response. *Id.*, § 2-32(h). If the complaint implicates Rule 8.4(7), that response could include evidence and argument about the nature of the alleged conduct and why the attorney believes it is constitutionally protected speech. If the conduct is constitutionally protected and therefore not within the scope of Rule 8.4(7), the grievance panel must dismiss the complaint for lack of probable cause. *Id.*, § 2-32(i)(2). Such a dismissal is with prejudice and not subject to appeal. *Id.*

If the grievance panel finds there is probable cause that the attorney engaged in discrimination or harassment within the scope of Rule 8.4(7), the panel must forward the complaint to the SGC, which typically assigns the complaint to a reviewing committee. *Id.*, §§ 2-32(i)(1) and 2-35(a). The reviewing committee must then "hold a hearing on the complaint." *Id.*, § 2-35(c). The attorney has the right to counsel, to be heard in his or her own defense, to present evidence, to examine and cross-examine witnesses, and to present legal argument. *Id.*, § 2-35(h).

If the reviewing committee finds that the attorney engaged in misconduct within the scope of Rule 8.4(7), the attorney then has a right to seek further review by the full SGC. *Id.*, §§ 2-35(k) and 2-36. Any sanctions imposed by the reviewing committee are automatically stayed during the pendency of such review. *Id.*, § 2-35(i). Further, the practice book expressly provides that the SGC must review not only whether the attorney substantively violated Rule 8.4(7), but also whether "the reviewing committee's findings, inferences, conclusions or decision is or are: (1) in violation of constitutional . . . provisions . . . ." *Id.*, § 2-35(k)(1).

Grievances which result in an attorney being sanctioned can ultimately be resolved by the State courts. *Id.*, §§ 2-38(a) and 2-47. As with a request for review before the full SGC, any sanctions imposed on an attorney are automatically stayed during the pendency of a court appeal. *Id.*, § 2-38(b). If the attorney is not satisfied with the Superior Court's ruling, the attorney may seek further review by the Connecticut Appellate and Supreme Courts and, if necessary, the United States Supreme Court. *Id.*, § 2-38(f).

### C. Plaintiffs' Complaint and Procedural History

Plaintiffs brought this pre-enforcement facial challenge in which they ask this federal Court to usurp the State courts' judicial function discussed above. They seek to enjoin Defendants from "enforcing" Rule 8.4(7) under 42 U.S.C. § 1983. Specifically, Plaintiffs assert that "[a]n injunction against Defendants . . . in their official capacities would ensure that Rule 8.4(7) will not be enforced against Cerame and Moynahan. . . ." Compl., ¶ 81. Plaintiffs claim that the Rule: (1) violates the First Amendment (Count 1); and (2) is unconstitutionally vague in violation of the Fourteenth Amendment (Count 2).[2] *See, id.,* ¶¶ 72-81.

The District Court dismissed Plaintiffs' action for lack of standing, but the Second Circuit reversed and remanded for consideration of Defendants' Eleventh Amendment arguments. *Cerame*, 123 F.4th at 76.

### II.    Legal Standard

---

[2] Plaintiffs initially brought two additional claims under the Connecticut Constitution (Counts Three and Four) but forfeited them by failing to challenge their dismissal on appeal. *See Cerame v. Slack*, 123 F.4th 72, 75 n.2 (2d Cir. 2024).

Plaintiffs bear the burden of establishing the Court's subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The Second Circuit has repeatedly observed that, in contrast to a motion to dismiss for failure to state a claim, 'when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Rodriguez v. Winski*, 444 F. Supp. 3d 488, 494 (S.D.N.Y. 2020) (quoting *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)). "In response to a motion to dismiss pursuant to Rule 12(b)(1), '[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Beaupre v. Chubb & Son, Inc.*, No. 3:19-CV-834-JBA, 2020 U.S. Dist. LEXIS 141498, at *6-7 (D. Conn. Aug. 7, 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d. Cir. 2000)).

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." *Juvenile Matters Trial Lawyers Ass'n v. Judicial Dep't*, 363 F. Supp. 2d 239, 243 (D. Conn. 2005) (quoting *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004)). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.

1994) ("In determining whether a plaintiff has met this burden, we will not draw argumentative inferences in the plaintiff's favor").

## III.    Argument

The Eleventh Amendment bars this action.  The United States Supreme Court's decision in *Whole Woman's Health v. Jackson*, and the body of law following that decision, establish that judges, clerks, and the judicial machinery are improper defendants under the *Ex Parte Young* exception to immunity.  Attorney discipline is an inherent judicial function.  And the SGC operates as an arm of the court to administer the attorney grievance process, and its proceedings are judicial proceedings with all the procedural safeguards attendant thereto.  Within that process, Defendants do not "enforce" Rule 8.4(7) in the way administrative agencies enforce state laws.  They instead receive, hear, and impartially adjudicate concrete disputes between complainants and attorneys in the same way a judge would.  *Ex Parte Young* is not a tool to enjoin Defendants from performing that judicial function. That is especially true given the nature of Plaintiffs' claims, which arise in a pre-enforcement facial challenge based on hypothetical allegations that Plaintiffs asserted before the Rule even went into effect.  The principles of federalism and comity underlying both the Eleventh Amendment and *Ex Parte Young* require that this Court give Connecticut's judiciary the dignity and respect it deserves by allowing it to interpret the Rule and assess its compliance with the federal constitution in the first instance based on actual facts in a concrete case.

### A. Defendants are improper parties under *Whole Woman's Health v. Jackson* and its progeny

### 1. *Ex Parte Young* analysis of proper defendants under *Whole Woman's Health* and its progeny

In *Whole Woman's Health*, the Supreme Court analyzed which State officials can be proper defendants under *Ex Parte Young*. There, abortion providers brought pre-enforcement challenges to Texas' recently enacted S.B. 8, the statute that permits members of the public to bring civil enforcement actions against those who perform or assist with prohibited abortions. 595 U.S. at 35-36. The suit named as defendants a state court judge, a state court clerk, the Attorney General, and members of various medical boards, among others. *Id.* at 36-37. As to the judge and clerk, the plaintiffs sought "an order enjoining all state-court clerks from docketing S.B. 8 cases and all state-court judges from hearing them." *Id.* at 39. But, as the Court explained, *Ex Parte Young* "does not normally permit federal courts to issue injunctions against state-court judges or clerks because "an injunction against a state court or its machinery would be a violation of the whole scheme of our Government." *Id.* (citation omitted).

Courts in the Second Circuit consistently apply *Whole Woman's Health* to bar or dismiss claims against judges. *See, e.g., Idlibi v. Burgdorff*, Nos. 23-838, 23-7384, 2024 U.S. App. LEXIS 15629, at *6 (2d Cir. June 27, 2024) (summary order) (dismissing claims against Judge Burgdorff and the constitutional claims against the Judicial Districts as barred by Eleventh Amendment immunity); *Oliveira v. Schwartz*, No. 23-CV-07427 (PMH), 2025 U.S. Dist. LEXIS 17248, at *8 (S.D.N.Y.

Jan. 30, 2025) (dismissing claims against judge in accordance with *Whole Woman's Health* and Second Circuit cases) (citations omitted).

Post *Whole Woman's Health*, Courts also decline to apply the *Ex Parte Young* exception to clerks as part of the judicial machinery. For example, a District Court declined to apply the *Ex Parte Young* exception to a court clerk for which the plaintiff sought an order requiring the clerk to file the plaintiff's civil case. *See Williams v. Parikh*, 708 F. Supp. 3d 1345, 1355 (S. D. Ohio 2023) *aff'd* No. 24-3059, 2024 U.S. App. LEXIS 22602, *4 (6th Cir. Sept. 4, 2024). Such an order "would interfere with the state court's ability to adjudicate [a] state case." *Id.* at 1355 n.8; *see also Albert v. Minnesota Court of Appeals/Justices*, No. 22-CV-2568 (NEB/DTS), 2022 U.S. Dist. LEXIS 234842, at *10 (D. Minn. Nov. 20, 2022) (explaining that the requested relief as to the Tenth Judicial District Court Administrator "would interfere with the state court's ability—and, by extension, its clerk's—to proceed in its own way to exercise jurisdiction" and declining to apply the *Ex Parte Young* exception) (citation and internal quotation marks omitted) *aff'd* No. 22-3665, 2023 U.S. App. LEXIS 16510, *1 (8th Cir. Mar. 31, 2023).

Nor does the *Ex Parte Young* exception apply to a substitute for the judicial branch. In *D'Souza v. Guerrero*, No. 24-2537, 2025 U.S. App. LEXIS 4590, at *2 (9th Cir. Feb. 27, 2025), the Ninth Circuit, relying on *Whole Woman's Health,* declined to issue an injunction requiring the state's Judicial Council to train its judges in a certain way. The plaintiffs argued that the injunction would not run "directly against state courts but against the entity responsible for the continuing education of judges."

*Id.* at \*4. *Young* and *Whole Woman's Health* instruct otherwise, explained the court. *Id.* That kind of injunction would only achieve the plaintiffs' goals "by effectively requiring state courts to adjudicate cases in specific ways, contrary to *Young* and *Whole Woman's Health.*" *Id.* "Instead, plaintiffs' remedy for allegedly erroneous judicial decisions is an appeal, not a federal-court injunction requiring training for state-court judges." *Id.* at \*5.

Consistent with that rationale, Connecticut's attorney discipline process operates as part of the State's judicial machinery—designed and delegated authority by the judicial branch, which has exclusive authority to regulate attorney conduct. The Connecticut judicial branch of government has inherent authority "to determine the qualifications necessary for the practice of law and to discipline and regulate the conduct of attorneys who are officers of its courts." *Lublin v. Brown*, 168 Conn. 212, 228 (1975) (citation omitted). The judicial branch is also the *only branch* of government authorized to regulate the practice of law in Connecticut. *See Persels & Assocs., LLC v. Banking Comm'r*, 318 Conn. 652, 673 (2015) ("the judiciary wields the sole authority to license and regulate the general practice of law in Connecticut.").

Pursuant to its inherent authority to regulate attorney conduct, the judiciary enacted the Practice Book scheme that regulates attorney conduct. Practice Book §§ 2-30 through 2-38. Within that scheme, the judicial branch "delegated [] power to local grievance committees." *Grievance Committee, Hartford-New Britain Judicial District v. Goldfarb*, 9 Conn. App. 464, 474 (1987). The "Practice Book rules authorize[] the grievance committee to act as an arm of the court in fulfilling [its]

responsibility" to regulate attorney conduct. *Statewide Grievance Committee v. Rozbicki*, 211 Conn. 232, 239 (1989). As an "arm of the court," the individuals for which functions have been delegated "act as the agents of the court." *Disciplinary Counsel v. Hickey*, 328 Conn. 688, 702 (2018). *Ex Parte Young* does not permit injunctions against the State judicial machinery by simply substituting an "arm of the court" for the court itself. Doing so would "effectively requir[e] state courts to adjudicate [grievance disputes] in specific ways, contrary to *Young* and *Whole Woman's Health*." *D'Souza*, 2025 U.S. App. LEXIS 4590, at *4.

Not only do SGC proceedings stand in the place of judicial branch proceedings, they afford the protections that judicial proceedings provide. *See Khan v. Yale Univ.*, 347 Conn. 1, 10, 21-33 (2023). The SGC process involves a hearing during which the SGC applies law to facts. Practice Book § 2-35(c). The proceedings also afford a right to counsel, right to present evidence, to subpoena for examination and cross-examination of witnesses, and to present legal argument, on the record. Conn. Prac. Book §§ 2-35(b), (h); Conn. Gen. Stat. § 51-91. Presentments and determinations of misconduct are subject to review by the Superior Courts. *Id.,* §§ 2-35(k), 2-36, 2-38(a), and 2-47. Superior Court determinations are then reviewable by the Connecticut Appellate and Supreme Courts and the United States Supreme Court. *Id.*, § 2-38(f).

The entire grievance process falls squarely within the category of judicial machinery as described in *Whole Woman's Health*.

### i. Defendant Slack is not a proper defendant under *Ex Parte Young*

Defendant Slack, Connecticut's Statewide Bar Counsel, is not a proper defendant under *Ex Parte Young* and *Whole Woman's Health* because he operates within the SGC state judicial grievance machinery and performs judicial and clerk functions not subject to the *Ex Parte Young* exception. Interfering with those functions would interfere with the State's grievance dispute adjudication process.

The Connecticut Superior Court judges designed the detailed scheme for adjudicating grievances, as described above, and delegated authority for resolving grievances within that scheme. Defendant Slack "acts as an arm of the court to effectuate its inherent authority to regulate attorney conduct and to discipline members of the bar." *Carter v. Bowler*, 211 Conn. App. 119, 124 (2022) (internal quotation marks and citations omitted). In doing so, he performs the following relevant functions: (1) receives complaints alleging attorney misconduct, Conn. Prac. Book § 2-32(a); (2) forwards complaints to the appropriate grievance panel, *id.*, § 2-32(a)(1); (3) notifies respondents of the complaint, *id.*; (4) refers complaints to the chair of the Statewide Grievance Committee and, in combination with the chair, reviews complaints under the ten categories for dismissal outlined in the Practice Book, *id.*, § 2-32(a)(2)(A)-(F); (5) notifies parties in the event of a dismissal, *id.,* § 2-32(c); (6) keeps records of all complaints filed, *id.*, § 2-32(d); and (7) reports to and receives and maintains information from the national disciplinary data bank and the clerk of court, *id.*, § 2-34(b).[3]

---

[3] The only function for which Defendant Slack can investigate and prosecute attorneys – and thus arguably fall within the *Young* exception – relates to the unauthorized practice of law. *See* Conn. Gen. Stat. § 51-90c ("State-Wide Bar Counsel

The majority of those functions, namely receiving complaints, providing notice, forwarding complaints, recordkeeping, and reporting, enable the grievance panels to adjudicate grievance complaints, just like the clerks in *Whole Woman's Health*. The Practice Book similarly defines the clerk role as one that keeps records, "receive[s] files," and "give[s] notice." *See* Practice Book §§ 7-1, 7-2, 7-5, 7-10. These tasks are administrative and stripping Defendant Slack of his ability to perform them strips the State court of important tasks that are necessary to the performance of its judicial functions. Defendant Slack is not adverse, as would be a litigant. *Whole Woman's Health*, 595 U.S. at 39. He accepts ("docket[s]") complaints filed by the adverse parties—complainants (the public) and respondents (lawyers). *Id.* at 40.

When performing the initial review of a complaint, Defendant Slack determines whether dismissal is appropriate. In that way, he performs an adjudicatory role, as a judge would, by applying the Practice Book categories to the facts of the complaint and determining whether the complaint should be dismissed on any of those enumerated grounds. Judges operate as "neutral arbiters to resolve matters in an impartial and unbiased manner. . . . Judges . . . resolve factual and legal disputes with open minds. . . ." *State v. King*, 350 Conn. 303, 344, 346 (2024).

---

shall investigate and prosecute complaints involving the violation by any person of any provision of section 51-88." Section 51-88 prohibits the "[p]ractice of law by persons not admitted as attorneys."). This action, however, has nothing to do with *unauthorized* practice of law. Defendant Slack has not been delegated investigative or prosecutorial authority over regulating the practice of law. *See Carter*, 211 Conn. App. at 124 (describing Statewide Bar Counsel's duties concerning unauthorized practice of law under § 51-88).

The Judges of the Superior Court delegated that adjudicatory role to Defendant Slack as part of their exclusive authority to regulate attorney conduct. Defendant Slack does not "wage battle as contestants in the parties' litigation." *Id.* "[N]o case or controversy exists" between Defendant Slack and Plaintiffs "who attack[] the constitutionality of" Rule 8.4(7). *Id.* Defendant Slack "do[es] not enforce state laws as executive officials might" because he operates as an agent of the judicial branch within an arm of the judicial branch to "resolve [grievance] disputes between parties."

Defendant Slack, named in his official capacity as Statewide Bar Counsel is an improper defendant and should be dismissed from this action.

### ii. Defendant Berger is not a proper defendant under *Ex Parte Young*

Defendant Berger, Connecticut's Chair of the Statewide Grievance Committee, is also not a proper defendant to this action under *Ex Parte Young* and *Whole Woman's Health*. His functions arise within the grievance adjudicatory process as part of the State's judicial machinery designed to adjudicate grievance complaints. He operates in an adjudicatory role as a judge and cannot be sued.

As with Defendant Slack, Defendant Berger's delegated authority arises within the judicial branch as an arm of the State court acting as an agent of the court. *See supra* Part III.A.1. Defendant Berger reviews complaints in combination with the Statewide Bar Counsel in order to determine whether the Practice Book mandates dismissal. *See* Practice Book § 2-32(a)(2). That role operates like a judge, applying law to fact, as delegated by the judicial branch, to dispose of complaints that fail any one of the ten grounds delineated. That is not the role of a litigant who is

adverse to the complainant or the respondent, just as the judge was not adverse to the plaintiffs in *Whole Woman's Health*. 595 U.S. at 40. Rather, his role "resolves controversies" between others. *Id; see also supra* Part III.A.1.i.

If dismissal is not warranted, the SGC process proceeds. As Chair of the SGC, Defendant Berger is just one voting member of that Committee and does not have unilateral authority.

Plaintiffs hardly allege any more involvement by Defendant Berger. Paragraph 25 states that Defendant Berger "oversees the conduct of a hearing and issues a final decision on the complaint." Compl., ¶ 25 (citing Practice Book §§ 2-33, 2-35, and 2-36). That allegation does not trigger the *Ex Parte Young* exception for several reasons. First, as alleged in that role, Defendant Berger acts in a judicial capacity by issuing final decisions on a grievance complaint submitted by a complainant and subject to a hearing involving adverse parties (complainant and respondent).

Next, Plaintiffs stretch the language of the Practice Book in their allegation. The Practice Book does not direct Defendant Berger to "oversee the conduct of a hearing" or "issue a final decision." *See* Practice Book § 2-33 (directing the Superior Court Judges to designate one member of the SGC as chair and another as vice-chair). In practice, nothing prevents the chair from participating on a SGC panel adjudicating a grievance complaint. That involvement, however, does not place Defendant Berger within the *Ex Parte Young* exception.

SGC panels adjudicate in the manner delegated to them by the Superior Court Judges—like that of the judge in *Whole Woman's Health*. Just as a judge, grievance panels apply law to fact, with adverse parties before them, in a proceeding that affords all the procedural safeguards of a judicial proceeding, with a right to an appeal. *See supra* Part III.A.1. If any error arises from the grievance process, the proper remedy is "some form of appeal, . . . not the entry of an *ex ante* injunction preventing the state court from hearing cases" under *Ex Parte Young*. *Whole Woman's Health*, 595 U.S. at 39. Any imposition of discipline is subject to presentment and review in Superior Court, Connecticut appellate courts, and the United States Supreme Court.

Defendant Berger's role cannot invoke the *Ex Parte Young* exception because he adjudicates within the grievance process as an agent of the court, like that of a judge within the State's judicial machinery.

### 2. Enjoining Defendants would not prevent grievance complaints and would only complicate Defendants' performance of their judicial function

Plaintiffs allege that enjoining Defendants "would ensure that Rule 8.4(7) will not be enforced against Cerame and Moynahan." Compl. ¶ 81. Plaintiffs are mistaken. Any member of the public can file a complaint with the Statewide Bar Counsel. So, the possibility of someone filing a complaint against Plaintiffs remains, even if this Court grants the relief Plaintiffs request. Of course, "no court may lawfully enjoin the world at large." *Whole Woman's Health*, 595 U.S. at 44 (citation and quotation marks omitted). If anything, enjoining Defendants deprives the State

of part of its judicial machinery—the initial review process and the administration of complaints.  It strips the State of its administrative and adjudicatory functions.

Plaintiffs' remedy request also raises "questions."  *See Whole Woman's Health*, 595 U.S. at 40.  "Under [Plaintiffs'] theory, would [Defendants] have to assemble a blacklist of banned claims subject to immediate dismissal?  What kind of inquiry would [Defendants] have to apply to satisfy due process before dismissing those suits?"  *Id.* at 40-41.  What if a complaint *appeared* to allege a violation of Rule 8.4(7) but did not expressly cite the Rule?  How explicit would the complaint need to be to be subject to immediate dismissal?  Conversely, what if a complaint asserts a violation of Rule 8.4(7) in name only, but substantively does not invoke that Rule?  What would happen when a complainant "hales [Defendants] into federal court for [accepting] a complaint containing a purported[] [violation of Rule 8.4(7)], how would [Defendants] defend [themselves]. . . .?"  *Id.* at 41.  The questions surrounding a remedy reinforces both that Defendants are improper parties and that the action interferes with the State's judicial machinery.  *Cf. Disability Rights New York v. New York*, 916 F.3d 129, 134 (2d Cir. 2019) (federal courts should not intervene when it would "'result in an ongoing federal audit of state . . . proceedings'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974).).

The State court judges implemented the judicial grievance process to resolve the above questions in an adjudicatory manner—interference with which is barred by the Eleventh Amendment and not subject to the *Ex Parte Young* exception.  Plaintiffs' requested injunction would require the State to reimagine the grievance

process and adjudicate grievance complaints in a specific way, different from the scheme it has designed. *D'Souza*, 2025 U.S. App. LEXIS 4590, at *4. *Young* and *Whole Woman's Health* prohibit that interference. "Instead, [P]laintiffs' remedy for allegedly erroneous judicial decisions is an appeal, not a federal-court injunction" barring Defendants from performing their functions, duly delegated to them by "state-court judges." *Id.* at *5.

**B. The adjudicatory nature of the grievance process and the safeguards established to protect constitutional rights makes federal pre-enforcement especially offensive to Connecticut's sovereignty and dignity**

Suing these Defendants is especially inappropriate here given the nature of Plaintiffs' claims and the procedural posture in which they arise. Plaintiffs brought this pre-enforcement facial challenge before the Rule went into effect and before any State court or judicial actor had an opportunity to interpret the Rule or apply it in a concrete case. They did so despite explicit language in the Rule's commentary making clear that the Rule *does not apply* "when the conduct in question is protected under the first amendment to the United States constitution or article first, § 4 of the Connecticut constitution," Compl., ¶ 41, and despite numerous procedural safeguards specifically designed to ensure the First Amendment protections in the Rule are followed and properly implemented. *See supra* Parts I.A and I.B. Plaintiffs ask this Court to assume the State judiciary will disregard all these substantive and procedural safeguards and interpret and apply the Rule in hypothetical future cases in a manner that violates the First Amendment. And based on those hypothetical

future violations by the State judiciary, Plaintiffs ask this Court to preemptively invalidate the Rule in all its applications.

Plaintiffs' claims fly in the face of the principles of federalism and comity underlying the Eleventh Amendment and deprive Connecticut of the "dignity" and "respect" it deserves in our federal system. *Fed. Mar. Comm'n v. S. Carolina Ports Auth.*, 535 U.S. 743, 751, 760, 765 (2002); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). The state judiciary and its machinery are perfectly capable of protecting the same First Amendment rights Plaintiffs seek to vindicate here through the substantive and procedural safeguards the judges put in place for that very purpose. To suggest they cannot or will not perform their judicial task consistent with State law and the United States constitution is an affront to State sovereignty that the Supreme Court repeatedly has stated it will not tolerate in any federal decision. Indeed, it is a "foundational principle of our federal system" that "[s]tate courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). Under our system of dual sovereignty, State courts have "inherent authority, and are thus *presumptively competent*, to adjudicate claims arising under the laws of the United States," including "claimed violations of constitutional . . . rights." *Id.* (emphasis added). This is a "solemn responsibility" that the State courts share "equally with the federal courts," and the Supreme Court consistently "has refused to sanction any decision that would 'reflec[t] negatively upon [a] state court's ability to'" perform that judicial function. *Id.*, quoting *Trainor* v. *Hernandez*, 431 U.S. 434, 443 (1977); *see also Expressions Hair Design v.*

23

*Schneiderman*, 803 F.3d 94, 112 (2d Cir. 2015) (citation and internal quotation marks omitted) ("When anticipatory relief is sought in federal court against a state statute, respect for the place of the States in our federal system calls for close consideration of whether a ruling on the constitutionality of the state law is, in fact, necessary").[4]

That conclusion is not altered by Plaintiffs' suggestion that they could always raise a First Amendment defense in a disciplinary proceeding, whether the commentary says so or not. Compl., ¶ 57. Indeed, that is precisely the point. In *Whole Woman's Health*, the Supreme Court made clear that there is no "unqualified right to pre-enforcement review of constitutional claims in federal court," and that those seeking to challenge the constitutionality of state laws are "not always able to pick and choose the timing and preferred forum for their arguments." *Whole Woman's Health*, 595 U.S. at 49. It is therefore entirely appropriate to require litigants to raise

---

[4]    Because Plaintiffs have named improper Defendants who cannot be sued under *Ex Parte Young* at all, the Court can and should dismiss this case without further inquiry into how the Rule and its commentary should be interpreted or applied. But if the Court concludes that Defendants are proper parties and that the federalism concerns discussed above do not preclude application of the *Young* exception here, Plaintiffs' claims still depend on several predicate and unclear questions of State law, the answers to which could focus the constitutional questions before the Court or obviate the need to resolve them altogether. Those questions include, but are not limited to: (1) the meaning of the commentary's exclusion of all First Amendment protected speech from the scope of the Rule; and (2) whether Plaintiffs' abstract and hypothetical allegations of speech they wish to engage in fall within the scope of the Rule. If the Court determines the Eleventh Amendment does not apply, it should either abstain from deciding this case until the state courts resolve these unclear questions of state law under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 500-01 (1941), or certify these questions to the Connecticut Supreme Court under General Statutes § 51-199b. *See Cerame v. Lamont*, No. 3:21cv1508 (JCH), 2022 U.S. Dist. LEXIS 128493, at *4 (D. Conn. July 20, 2022).

their constitutional rights through any number of other avenues, including most "typically as defenses to state-law claims" in State court. *Id.* at 49-50. Indeed, if Plaintiffs did so in the normal course, there would be little question that federal review was improper. *E.g.*, *Middlesex County Ethics Committee v. Garden State Bar Assn.*, 457 U.S. 423, 425 (1982) (holding that "a federal court should abstain from considering a challenge to the constitutionality of disciplinary rules that are the subject of pending state disciplinary proceedings within the jurisdiction of the New Jersey Supreme Court"); *Schorr v. DoPico*, 686 F. App'x 34, 36 (2d Cir. 2017) ("The focus of Schorr's claims is an ongoing state attorney disciplinary proceeding, which falls squarely within *Younger* abstention.") (summary order); *see also O'Shea v. Littleton*, 414 U.S. 488 (1974) (abstention warranted to prevent interference with "State administration of its own law"). And when permitting pre-enforcement injunctive relief in federal court would violate the Eleventh Amendment, as it would here, requiring litigants to use those other forums is not only appropriate, it is constitutionally required.

## IV.    Conclusion

This Court should dismiss for lack of jurisdiction.

> Respectfully submitted,
>
> DEFENDANTS CHRISTOPHER
> SLACK AND MATTHEW BERGER
>
> WILLIAM TONG
> ATTORNEY GENERAL

BY: */s/ Michael K. Skold*
　　Michael K. Skold (ct28407)

Solicitor General
Emily A. Gait (ct31186)
Assistant Attorney General
Office of the Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5020 (phone)
Michael.Skold@ct.gov
Emily.Gait@ct.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2025, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


<u>*/s/ Michael K. Skold*</u>
Michael K. Skold
Solicitor General

27