******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

State of Connecticut, Judicial Branch *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

# STATE OF CONNECTICUT, JUDICIAL BRANCH *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES, OFFICE OF PUBLIC HEARINGS, ET AL.
## (SC 21148)

McDonald, D'Auria, Ecker, Dannehy and Suarez, Js.

*Syllabus*

The complainant, M, an attorney who sought reinstatement to the Connecticut bar, filed a complaint with the defendant administrative agency, the Commission on Human Rights and Opportunities, alleging that the plaintiff, the Connecticut Judicial Branch, which administers the attorney discipline and licensing process, had discriminated or retaliated against her in the proceedings involving her reinstatement. The commission's human rights referee denied the plaintiff's motion to dismiss M's complaint, and, pursuant to statute (§§ 4-183 and 46a-94a (a)), the plaintiff filed in the trial court an interlocutory administrative appeal from that ruling, asserting, inter alia, that the separation of powers doctrine afforded the plaintiff immunity from suit. The trial court rendered judgment sustaining the plaintiff's administrative appeal and remanded the case to the commission with direction to dismiss M's complaint, reasoning that the commission's assertion of jurisdiction over the plaintiff's decisions regarding M's reinstatement violated the separation of powers doctrine because it was within the exclusive authority of the Judicial Branch to regulate attorneys and to admit attorneys to the practice of law. Thereafter, the commission appealed from the trial court's judgment sustaining the plaintiff's administrative appeal, claiming that the trial court lacked subject matter jurisdiction over the plaintiff's interlocutory administrative appeal and that the court incorrectly concluded that the separation of powers doctrine barred the commission from exercising jurisdiction over M's complaint. *Held*:

The trial court had subject matter jurisdiction over the plaintiff's interlocutory administrative appeal under §§ 4-183 (b) and 46a-94a (a).

Section 4-183 (b) permits an interlocutory appeal from an agency ruling only if, among other things, postponement of the appeal would result in an inadequate remedy, and this court has previously held that, under § 4-183 (b), a colorable claim to a right of immunity from suit is protected from the immediate and irrevocable loss that would be occasioned by having to defend an action through the availability of an interlocutory appeal from an agency's denial of a motion to dismiss.

In the present case, the trial court's dismissal of the plaintiff's interlocutory administrative appeal would have resulted in an inadequate remedy for the plaintiff because it had asserted a colorable claim of immunity from suit, derived from the separation of powers doctrine, and because such a dismissal would have resulted in an irrevocable loss of the immunity that the plaintiff was claiming, which is a situation that § 4-183 (b) was intended to prevent.

State of Connecticut, Judicial Branch *v.* Commission on Human Rights &
Opportunities, Office of Public Hearings

The trial court correctly determined that, under the present circumstances,
the commission, an agency of the executive branch, was required to dismiss
M's complaint against the plaintiff, as the commission's exercise of juris-
diction would violate the separation of powers doctrine, and the plaintiff
accordingly was entitled to immunity from adjudication of M's complaint
by the commission.

Decisions regarding reinstatement to the bar ultimately lie within the
exclusive authority of the Judicial Branch, the commission's exercise of
jurisdiction in the present case interfered with the orderly conduct of the
essential functions of the Judicial Branch by subjecting it to agency review
of its internal proceedings in connection with its regulation of the practice
of law, and it was not only the interference with the orderly conduct of the
Judicial Branch's essential functions in this case but also in potential future
cases that gave rise to the separation of powers violation.

This court made clear that its conclusion that the commission lacked jurisdic-
tion over claims of discrimination and retaliation in the attorney discipline
and reinstatement process did not afford the Judicial Branch carte blanche
to engage in unlawfully discriminatory conduct under the guise of regulating
the legal profession, as a decision regarding reinstatement remains subject
to independent review by the courts.

Argued October 27, 2025—officially released April 14, 2026

*Procedural History*

Appeal from the decision of the human rights referee of
the named defendant et al. denying the plaintiff's motion
to dismiss the complaint of the defendant Josephine
Smalls Miller alleging discriminatory and retaliatory
conduct by the plaintiff with respect to her application
for reinstatement to the bar, brought to the Superior
Court in the judicial district of New Britain, where the
court, *Budzik, J.*, denied the defendants' motions to
dismiss the administrative appeal; thereafter, the court,
*Budzik, J.*, rendered judgment sustaining the plaintiff's
appeal, from which the defendant Commission on Human
Rights and Opportunities appealed. *Affirmed.*

*Gregory A. Jones*, human rights attorney, with whom,
on the brief, were *Libby Reinish*, human rights attorney,
and *Michael E. Roberts*, former human rights attorney,
for the appellant (defendant Commission on Human
Rights and Opportunities).

State of Connecticut, Judicial Branch *v.* Commission on Human Rights &
Opportunities, Office of Public Hearings

*Benjamin Abrams*, assistant attorney general, with whom were *Timothy J. Holzman*, assistant attorney general, and, on the brief, *William Tong*, attorney general, for the appellee (plaintiff).

*Opinion*

McDONALD, J. Among other historical factors, in the wake of a public outcry following the legislature's setting aside of a court's judgment of conviction in the prosecution of a defendant for murder in 1815, the people of the state of Connecticut adopted its first constitution in 1818 and, relevant to this appeal, created an independent judiciary as a coequal branch of government whose judgments could no longer be reviewed or set aside by the legislature. See, e.g., *State* v. *Clemente*, 166 Conn. 501, 512–13, 353 A.2d 723 (1974). The establishment of an independent judiciary has served as a cornerstone of this state's separation of powers framework ever since it was first declared in article second of Connecticut's 1818 constitution.[1] More than two centuries later, this appeal requires us to determine whether it violates the separation of powers doctrine for the named defendant, the Commission on Human Rights and Opportunities (commission), Office of Public Hearings,[2] an administra-

[1] See, e.g., W. Horton, The Connecticut State Constitution (2d Ed. 2012) p. 11 ("Before 1818, separation of powers did not exist in Connecticut. The General Assembly was the final source of most power in the colony and state. . . . The judiciary was strictly subordinate to the General Assembly. A litigant who was disappointed with a decision of a judge could go to the General Assembly, which if it so chose could simply overrule the judge."); see also, e.g., *State* v. *Clemente*, supra, 166 Conn. 507 n.2 ("[a]rticle second of the 1965 constitution is identical to the corresponding sections of the constitutions of 1818 and 1955").

[2] Both the commission, which acknowledges in its briefing before this court that it is an agency of the executive branch, and its Office of Public Hearings, which is the administrative unit of the commission that includes its human rights referees, are named as defendants in this administrative appeal. Accordingly, the commission is named as a defendant in both its prosecutorial and adjudicative capacities pursuant to General Statutes § 4-183 (c). The commission has filed the present appeal and its briefs in support of the referee's ruling in its prosecutorial capacity. For the sake of simplicity, we refer to both the commission individually and the commission and its Office of Public

State of Connecticut, Judicial Branch *v.* Commission on Human Rights &
Opportunities, Office of Public Hearings

tive agency of the executive branch, to exercise jurisdiction over a discrimination complaint filed by an attorney seeking reinstatement to the Connecticut bar. The complainant, Josephine Smalls Miller,[3] filed a complaint with the commission, alleging that the plaintiff in this administrative appeal, the State of Connecticut, Judicial Branch (Judicial Branch), discriminated or retaliated against her in connection with the attorney discipline and licensing process that is administered by the Judicial Branch. The Judicial Branch filed an interlocutory administrative appeal in the trial court from the commission's denial of its motion to dismiss that complaint, asserting, among other claims, absolute immunity from suit. The trial court rendered judgment sustaining the administrative appeal on the ground that the separation of powers doctrine required the commission to dismiss the complaint against the Judicial Branch. The commission now appeals from that judgment and claims, among other things, that the trial court (1) lacked jurisdiction over the Judicial Branch's interlocutory administrative appeal under General Statutes §§ 4-183 (a) or (b) and 46a-94a (a), and (2) incorrectly concluded that the separation of powers doctrine barred the commission from exercising jurisdiction in this case.

Guided by our recent decision in *Stamford* v. *Commission on Human Rights & Opportunities, Office of Public Hearings*, 351 Conn. 298, 330 A.3d 102 (2025), we first conclude that the trial court had jurisdiction over this administrative appeal under § 4-183 (b) because, when an administrative agency's exercise of jurisdiction over a coordinate branch of government violates the separation of powers doctrine, the exercise of jurisdiction is void ab initio—conferring on the coordinate branch an immunity from suit that would be lost in the absence of

Hearings collectively as the commission. We refer to the Office of Public Hearings individually when necessary.

[3] The complainant is also named as a defendant in this administrative appeal. She filed an answer in the trial court and an appearance in the Appellate Court prior to the transfer of the appeal to this court, but she has not submitted any briefs.

State of Connecticut, Judicial Branch *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

interlocutory judicial review. We further conclude that it would violate the separation of powers doctrine for the commission to exercise jurisdiction over a complaint alleging discrimination and retaliation in the Judicial Branch's regulation of the legal profession. To hold otherwise would interfere impermissibly with the orderly conduct of the essential functions of the Judicial Branch. Accordingly, we affirm the judgment of the trial court.

The relevant facts and procedural history are undisputed. In 2018, the Superior Court suspended the Connecticut law license of the complainant for one year, imposing a variety of conditions on her reinstatement as an attorney. In December, 2019, the complainant filed an application for reinstatement to the Connecticut bar, which then Chief Court Administrator Patrick L. Carroll III referred to the Hartford County Standing Committee on Recommendations for Admission to the Bar (standing committee), which then was chaired by Attorney Gary A. Friedle. In March, 2020, the Rules Committee of the Superior Court suspended a variety of deadlines set forth in the rules of practice because of the COVID-19 pandemic, which included those for processing attorney reinstatement applications. In December, 2020, the complainant filed a complaint with the commission, alleging that the standing committee's delay in scheduling a hearing on her application for reinstatement was the product of racial discrimination against her. She also subsequently filed a federal civil action against Judge Carroll, raising similar allegations of discrimination.

In February, 2021, Attorney Friedle filed a motion for advice with the Superior Court, asking (1) whether "the filings of the [commission] complaint and/or the federal lawsuit constitute a stay," and (2) "[i]f the filings do not constitute a stay and should the [commission] complaint and/or the federal lawsuit still be pending at the time a hearing has been scheduled on the [complainant's] application [for reinstatement to the bar], how should the [standing] committee consider the pending matters in its deliberations for reinstatement of the

State of Connecticut, Judicial Branch *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

[complainant]?"[4] The complainant then filed a second complaint with the commission (retaliation complaint), alleging that the standing committee's motion for advice filed in the Superior Court constituted "evidence of continuing retaliatory motive and conduct." The commission allowed the retaliation complaint to proceed, treating it as a new complaint rather than as an amendment to the first complaint, which it had dismissed following the case assessment process.

The commission investigated the retaliation complaint and found that there was reasonable cause to believe that the Judicial Branch had committed a discriminatory practice.[5] The investigator's finding of reasonable cause indicated that the motion for advice constituted an

---

[4] In March, 2021, the standing committee requested that Judge Carroll transfer the matter to a different committee on the ground that the retaliation complaint had created a conflict of interest. Judge Elizabeth A. Bozzuto, who was then the deputy chief court administrator, responded that a possible transfer of the matter was more appropriately directed to the Superior Court under the rules of practice. Ultimately, the Superior Court, *Pavia*, *J.*, concluded that it lacked authority to provide the advice requested by the standing committee in its motion. It did, however, grant the standing committee's separate motion to transfer the matter to a different standing committee on the ground that there was a conflict of interest.

[5] The record does not reflect the statutory basis for the commission's exercise of jurisdiction over the retaliation complaint against the Judicial Branch. Briefing and oral argument in this appeal are similarly unclear about whether the commission maintains, for example, that a standing committee's proceedings concerning an attorney's reinstatement or readmission to the practice of law constitute accommodations in a place of public accommodation. See General Statutes § 46a-64 (a) ("[i]t shall be a discriminatory practice in violation of this section: (1) To deny any person within the jurisdiction of this state full and equal accommodations in any place of public accommodation, resort or amusement because of race"); see also General Statutes § 46a-63 (1) ("'[p]lace of public accommodation, resort or amusement' means any establishment which caters or offers its services or facilities or goods to the general public, including, but not limited to, any commercial property or building lot, on which it is intended that a commercial building will be constructed or offered for sale or rent"). Given the immunity issues presented by the Judicial Branch's motion to dismiss, we need not address whether the commission had statutory jurisdiction over the retaliation complaint separate and apart from the separation of powers considerations.

State of Connecticut, Judicial Branch *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

attempt to stay or delay the reinstatement proceedings that would have "dissuaded a reasonable person from filing a [commission] complaint . . . ." The commission then certified the retaliation complaint to its Office of Public Hearings for adjudication.

The Judicial Branch moved to dismiss the retaliation complaint on the ground that the commission lacked subject matter jurisdiction because this matter arose from the Judicial Branch's "core judicial function of supervising attorney conduct," which implicated "the doctrines of separation of powers, judicial immunity, quasi-judicial immunity, and the litigation privilege . . . ." The human rights referee, without analysis or citation to any authority, denied the motion to dismiss, characterizing the Judicial Branch's position as suggesting that "it is free to discriminate against attorneys based [on] their race, religion, sex, or other protected classification under the guise of supervising attorney conduct. And, presumably, the [Judicial Branch] would be free to similarly discriminate against its own employees, as they are, arguably, performing various core functions. There cannot be any doctrine reasonably interpreted that could countenance such a position. Victims of alleged discrimination cannot be limited to having the alleged perpetrator determine whether . . . discrimination occurred." The referee then scheduled the matter for a public hearing.

The Judicial Branch subsequently filed this administrative appeal with the trial court. The Judicial Branch alleged that the referee's denial of the motion to dismiss violated the doctrine of separation of powers under the Connecticut constitution, along with the common-law doctrines of judicial immunity, quasi-judicial immunity, and the litigation privilege, by "permitting an administrative agency to significantly interfere with the Judicial Branch's core judicial functions of overseeing the attorney discipline system, managing the court docket, and determining when and if a conflict of interest exists meriting the disqualification of a decision maker." The Judicial Branch further alleged that these doctrines

State of Connecticut, Judicial Branch *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

provided it with immunity from suit, rendering the case immediately appealable under § 4-183 (a) and (b).

The commission and the complainant moved to dismiss the administrative appeal, claiming that the trial court lacked subject matter jurisdiction under both §§ 4-183 and 46a-94a (a), the latter of which governs administrative appeals from orders of the commission, because the appeal is interlocutory and not from a "final" agency order. The court denied the commission's motion to dismiss the administrative appeal, concluding that the commission's order denying the Judicial Branch's motion to dismiss was an appealable "final order," as contemplated by §§ 4-183 (a) and 46a-94a (a), because it was premised on a colorable claim of immunity from suit.

With respect to the merits, the trial court followed, among other cases, *Persels & Associates, LLC* v. *Banking Commissioner*, 318 Conn. 652, 671–73, 122 A.3d 592 (2015), and concluded that "the authority to regulate [attorneys in the practice of law] and [to] admit attorneys to the practice of law in Connecticut is within the exclusive authority of the Judicial Branch, and, therefore, [the commission's] attempt to assert jurisdiction over the Judicial Branch's decisions with respect to [the complainant's] application [for reinstatement to the bar] is a violation of the separation of powers doctrine."[6] The court observed that, "if standing committees were concerned that a dissatisfied attorney could challenge a standing committee's discretionary scheduling decisions by seeking a public hearing before [the commission], such a circumstance would significantly interfere with and delay the orderly function of the attorney admission and readmission process." Accordingly, the court rendered judgment sustaining the Judicial Branch's administrative appeal and remanded the case to the commission with direction to dismiss the matter. See General Statutes § 4-183 (k).

---

[6] The trial court did not consider the Judicial Branch's other immunity claims in its jurisdictional analysis.

State of Connecticut, Judicial Branch *v.* Commission on Human Rights &
Opportunities, Office of Public Hearings

The commission appealed from the judgment of the trial court to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

The commission, relying on *Stamford* v. *Commission on Human Rights & Opportunities, Office of Public Hearings*, supra, 351 Conn. 298, first claims that the trial court lacked subject matter jurisdiction over the Judicial Branch's interlocutory administrative appeal under §§ 4-183 and 46a-94a (a). The commission argues that, because the Judicial Branch eventually could have prevailed on the merits in the administrative proceedings, postponement of the appeal may not have resulted in an inadequate remedy for the Judicial Branch. In response, the Judicial Branch argues that postponement of the appeal would be an inadequate remedy because it has asserted colorable claims of immunity from suit, and it would necessarily lose the benefit of that immunity if it were improperly subject to the burdens of further administrative proceedings. We agree with the Judicial Branch and conclude that, because it raised a colorable claim of immunity from suit derived from the separation of powers doctrine, the commission's denial of its motion to dismiss was immediately appealable under § 4-183 (b).

Our recent decision in *Stamford* v. *Commission on Human Rights & Opportunities, Office of Public Hearings*, supra, 351 Conn. 298, is instructive. In that case, we considered the availability of interlocutory appeals to the Superior Court from the rulings of the commission's referees. See id., 300–301, 314–21. We explained that "§ 46a-94a (a) of the [Connecticut Fair Employment Practices Act] requires the existence of a 'final order' to bring an 'appeal to the Superior Court in accordance with section 4-183.'" Id., 315. "Section 4-183 (a) authorizes appeals from an agency's 'final decision' by any person who has exhausted all administrative remedies and is aggrieved by the final decision, and § 4-183 (b) permits an appeal, under very limited circumstances, from 'a

State of Connecticut, Judicial Branch *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

preliminary, procedural or intermediate agency action or ruling . . . .'" Id., 309. We concluded that "the legislature intended that both [§§ 4-183 (b) and 46a-94a (a)] apply to appeals from [commission] proceedings and viewed the term 'final order' [in § 46a-94a (a)] as encompassing both a 'final decision' under § 4-183 (a) and a 'preliminary, procedural or intermediate agency action or ruling' under § 4-183 (b)." Id., 319.

"[Section] 4-183 (b) permits a person to bring an interlocutory appeal from a [commission] proceeding only if '(1) it appears likely that the person will otherwise qualify under [the Uniform Administrative Procedure Act] to appeal from the final agency action or ruling and (2) postponement of the appeal would result in an inadequate remedy.'" Id., 321. The second prong of § 4-183 (b) is at issue here, as the parties dispute whether the Judicial Branch would have had an adequate remedy in the administrative forum without an interlocutory appeal to vindicate its claim of immunity from suit.

In applying § 4-183 (b), we have described it as "settled law that a colorable claim to a right to be free from an action is protected from the immediate and irrevocable loss that would be occasioned by having to defend an action through the availability of an immediate interlocutory appeal from the denial of a motion to dismiss." (Internal quotation marks omitted.) *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, 329 Conn. 684, 693, 189 A.3d 79 (2018). As we observed in *Stamford*, "[t]o the extent that a party seeks judicial review of a colorable claim of immunity from suit, the proper channel would be an interlocutory appeal pursuant to § 4-183 (b)." *Stamford* v. *Commission on Human Rights & Opportunities, Office of Public Hearings*, supra, 351 Conn. 314 n.12. A colorable claim is one that "'may reasonably be asserted'" or "arguably has merit" in light of "the facts presented and the current law (or a reasonable extension thereof) . . . ." *Lederle* v. *Spivey*, 332 Conn. 837, 845, 213 A.3d 481 (2019). Colorability is a low bar and requires only a "superficially

State of Connecticut, Judicial Branch *v.* Commission on Human Rights &
Opportunities, Office of Public Hearings

well-founded claim . . . ." *Pryor* v. *Brignole*, 346 Conn.
534, 545, 292 A.3d 701 (2023).

The Judicial Branch's interlocutory appeal from the
ruling of the commission's referee to the trial court
regarding its claim of immunity from suit satisfies the
second prong of § 4-183 (b). A colorable claim of a sepa-
ration of powers violation resulting from a coordinate
branch's exercise of jurisdiction raises not only a consti-
tutional defense, but also an immunity from suit in the
forum of the coordinate branch. "[T]he essence of the
protection of immunity from suit is an entitlement not
to stand trial or [to] face the other burdens of litigation
. . . ." (Citation omitted; internal quotation marks omit-
ted.) *Trinity Christian School* v. *Commission on Human
Rights & Opportunities*, supra, 329 Conn. 693–94. To
challenge an administrative agency's exercise of juris-
diction on separation of powers grounds is to claim an
entitlement to be free of the agency's authority alto-
gether. But cf. *Office of the Governor* v. *Select Committee
of Inquiry*, 271 Conn. 540, 578, 585–86, 858 A.2d 709
(2004) (holding that governor did not have "categorical
immunity" from legislative subpoena under separation of
powers doctrine because legislature was "exercis[ing] the
impeachment power with which it has been entrusted").

In this case, if the commission's exercise of jurisdiction
is itself a separation of powers violation, the interference
in the essential functions of the Judicial Branch caused
by the commission proceedings could not be meaningfully
remedied by later judicial review. Because parties must
have structural recourse to vindicate their right to be
entirely free of a forum when its exercise of jurisdiction
violates the separation of powers doctrine, the appropri-
ate remedy is absolute immunity from suit in that forum,
a claim that is immediately enforceable in the courts of
this state. See, e.g., *Stamford* v. *Commission on Human
Rights & Opportunities, Office of Public Hearings*, supra,
351 Conn. 314 n.12; *Trinity Christian School* v. *Com-
mission on Human Rights & Opportunities*, supra, 329
Conn. 693. Although functionally similar to other types

State of Connecticut, Judicial Branch *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

of absolute immunity that "[buttress] the principle of the separation of powers"; *Office of the Governor* v. *Select Committee of Inquiry*, supra, 271 Conn. 561; see also, e.g., id., 560–65 (immunity from judicial review under speech or debate clauses of federal and state constitutions); or that "safeguard the essential character and function" of a branch of government, consistent with separation of powers principles; *Jamie G.* v. *Dept. of Children & Families*, 352 Conn. 736, 754–55, 339 A.3d 598 (2025); see also, e.g., id., 748–49, 754–55 (discussing common-law judicial and quasi-judicial immunities); the immunity discussed here reflects a recognition that a forum's exercise of jurisdiction is void ab initio when it violates the separation of powers doctrine. Cf. *Office of the Governor* v. *Select Committee of Inquiry*, supra, 580 ("the legislature . . . engage[s] in the impeachment process in order to vindicate the separation of powers provision").

Given the relationship between the separation of powers doctrine and the various immunities from suit, the Judicial Branch has satisfied the requirement of § 4-183 (b) that its claim of immunity from suit be at least "colorable"; *Stamford* v. *Commission on Human Rights & Opportunities, Office of Public Hearings*, supra, 351 Conn. 314 n.12; for that claim to receive interlocutory appellate review in the Superior Court. Dismissal of the Judicial Branch's interlocutory appeal asserting this colorable claim of immunity from suit would have resulted in an irrevocable loss of that immunity for the Judicial Branch in the administrative forum, which is a situation that § 4-183 (b) is intended to prevent. See, e.g., *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, supra, 329 Conn. 693.

For these reasons, the Judicial Branch's invocation of immunity from the administrative proceedings, derived from the separation of powers doctrine, is a colorable claim that satisfies the second prong of § 4-183 (b) and conferred interlocutory appellate jurisdiction on the trial court.

State of Connecticut, Judicial Branch *v.* Commission on Human Rights &
Opportunities, Office of Public Hearings

## II

The commission next claims that the trial court incorrectly concluded that the commission's exercise of jurisdiction over the Judicial Branch would violate the separation of powers doctrine because attorney regulation is not a matter exclusively within the authority of the Judicial Branch, and because the commission's exercise of jurisdiction would not interfere with the orderly conduct of the essential functions of the Judicial Branch. We hold that, under the present circumstances, it would violate the separation of powers doctrine for the commission to exercise jurisdiction over a complaint alleging discrimination and retaliation in the Judicial Branch's regulation of the legal profession. To hold otherwise would impermissibly interfere, and has already interfered, with the orderly conduct of the essential functions of the Judicial Branch by subjecting it to agency review of its internal proceedings in connection with its regulation of the practice of law. Because it is the commission's exercise of jurisdiction that violates the separation of powers doctrine in this case, the Judicial Branch possesses an immunity from suit in that administrative forum. The trial court therefore correctly determined that the commission was required to dismiss the retaliation complaint against the Judicial Branch.[7]

The separation of powers doctrine arises from the fundamental mandate structuring this state's system of

[7] We acknowledge that the Judicial Branch presents several non-constitutional arguments, including the claim that judicial or quasi-judicial immunity applies, as alternative grounds on which to affirm the judgment of the trial court. Although we ordinarily do not reach constitutional questions unless it is necessary to do so, "the principle underlying the avoidance of constitutional questions in such cases is judicial economy and convenience. . . . Because this principle is for the benefit of the reviewing court, the court is free to disregard it when appropriate." (Citations omitted.) *State* v. *Dickson*, 322 Conn. 410, 418 n.6, 141 A.3d 810 (2016), cert. denied, 582 U.S. 922, 137 S. Ct. 2263, 198 L. Ed. 2d 713 (2017). In the present case, we begin with the separation of powers issue because the trial court, in disposing of the administrative appeal, addressed that question to the exclusion of the Judicial Branch's alternative arguments. Under these circumstances,

State of Connecticut, Judicial Branch *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

government in article second of the constitution of Connecticut, as amended by article eighteen of the amendments: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." Conn. Const., amend. XVIII. "[T]he primary purpose of this constitutional doctrine is to prevent commingling of different powers of government in the same hands. . . . The [state] constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers." (Citation omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 551–52, 663 A.2d 317 (1995). "It is axiomatic that no branch of government organized under a constitution may exercise any power that is not explicitly bestowed by that constitution or that is not essential to the exercise thereof." (Internal quotation marks omitted.) Id., 552, quoting *Kinsella* v. *Jaekle*, 192 Conn. 704, 723, 475 A.2d 243 (1984).

"The separation of powers doctrine serves a dual function: it limits the exercise of power within each branch, yet ensures the independent exercise of that power. Nevertheless, it cannot be rigidly applied always to render mutually exclusive the roles of each branch of government. As we have recognized, 'the great functions of government are not divided in any such way that all acts of the nature of the function of one department can never be exercised by another department; such a division is impracticable, and if carried out would result in the paralysis of government. Executive, legislative and judicial powers . . . of necessity overlap each other, and cover many acts [that] are in their nature common to more than one department.'" *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 552, quoting *In re Application of Clark*, 65 Conn. 17, 38, 31 A. 522

it would be imprudent to affirm the trial court's judgment on alternative, nonconstitutional grounds without first determining whether its constitutional holding was correct as a matter of law.

State of Connecticut, Judicial Branch *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

(1894). "Because the powers of the three branches of government inevitably overlap, this court has consistently held that the doctrine of the separation of powers cannot be applied rigidly . . . and has refused to find constitutional impropriety in a statute simply because it affects the judicial function . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Campbell*, 224 Conn. 168, 177, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993).

"[I]n deciding whether one branch's actions violate the constitutional mandate of the separation of powers doctrine, the court will consider if the actions constitute: (1) an assumption of power that lies exclusively under the control of another branch; or (2) a significant interference with the orderly conduct of the essential functions of another branch." *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 552–53; see also, e.g., *University of Connecticut Chapter, AAUP* v. *Governor*, 200 Conn. 386, 394–95, 512 A.2d 152 (1986). "The control of the judiciary over standards for admission to the bar is a matter of long tradition; it reflects and is justified by the unique status of attorneys as commissioners of the Superior Court and the special role they play in the administration of justice." *Persels & Associates, LLC* v. *Banking Commissioner*, supra, 318 Conn. 671. "Fixing the qualifications for, as well as admitting persons to, the practice of law in this state has ever been an exercise of judicial power." *Heiberger* v. *Clark*, 148 Conn. 177, 185, 169 A.2d 652 (1961). "The power to admit persons to practice in this state has been exercised with the help and assistance of committees of the bar, pursuant to rules having the sanction of the judges of the Superior Court. . . . The reasons for this principle and practice have been fully discussed in our cases. It suffices to say that attorneys are officers of the court appointed to assist the court in the administration of justice and that the property, liberty and often the lives of their clients are in their hands, so that a very high degree of intelligence, knowledge, academic and legal training, judgment and,

State of Connecticut, Judicial Branch *v.* Commission on Human Rights &
Opportunities, Office of Public Hearings

above all else, integrity is demanded." (Citations omitted.) Id., 186.

As this court explained in *Statewide Grievance Committee* v. *Ganim*, 311 Conn. 430, 87 A.3d 1078 (2014), it is for the Superior Court to "decid[e] whether to accept or reject a standing committee recommendation on reinstatement to the bar," subject to its appellate review function. Id., 450. The Superior Court "reviews [a] standing committee's decision on [the] record to determine whether [the standing committee] has conducted a fair and impartial investigation, and whether it acted fairly and reasonably or from prejudice and ill will in its consideration of the application [for reinstatement to the bar]. . . . Ultimately, the court must decide whether the standing committee, by approving or withholding its approval of an application [for reinstatement], acted arbitrarily or unreasonably or in abuse of its discretion or without a fair investigation of the facts." (Citation omitted; internal quotation marks omitted.) Id., 451; see also, e.g., *Office of Chief Disciplinary Counsel* v. *Miller*, Docket No. DBD-CV-17-6022075-S, 2022 WL 1060741, *1–3 (Conn. Super. March 30, 2022) (discussing procedural history of complainant's reinstatement proceedings). Although "committees of the bar" provide "help and assistance" in the Judicial Branch's regulation of the practice of law; *Heiberger* v. *Clark*, supra, 148 Conn. 186; "[a] committee can act . . . only under the supervision of the court. It is the court, and not the committee, [that] takes the final and decisive action." Id., 183. This authority of the Superior Court, and, ultimately, of the Judicial Branch, includes the authority to review not only a standing committee's conclusions, but also its actions through the judicial review process. See, e.g., *Statewide Grievance Committee* v. *Ganim*, supra, 450–51. This authority is exclusive to the Judicial Branch as a corollary of both its "sole authority to license and regulate the general practice of law in Connecticut"; *Persels & Associates, LLC* v. *Banking Commissioner*, supra, 318 Conn. 673; and its authority to obtain assistance from "committees of the bar, pursuant to rules having the

State of Connecticut, Judicial Branch *v.* Commission on Human Rights &
Opportunities, Office of Public Hearings

sanction of the judges of the Superior Court." *Heiberger*
v. *Clark*, supra, 186.

The Judicial Branch has established that the commission's administrative action in the present case interferes with the orderly conduct of the essential functions of the Judicial Branch. Subjecting the Judicial Branch to administrative proceedings to review the exercise of its authority over the practice of law would likely have a chilling effect on the actions of the standing committees in the course of their work. This direct review by an executive branch agency—outside of the established appellate procedures already available to parties within the Judicial Branch—carries with it the potential to chill or deter the exercise of judicial power through the burden of administrative litigation. As we have said in upholding the application of judicial immunity, if the threat of litigation were to hang over judicial decisions, "[t]he resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication." (Internal quotation marks omitted.) *Jamie G.* v. *Dept. of Children & Families*, supra, 352 Conn. 749.

It is the interference with the orderly conduct of the Judicial Branch's essential functions not only in this case, but also in potential future cases, that gives rise to the separation of powers violation. See, e.g., *State* v. *McCahill*, 261 Conn. 492, 509–10, 811 A.2d 667 (2002) ("[W]e consider the separation of powers challenge to have merit . . . . It is these many [potential] cases together . . . that [create] the significant interference [with the orderly functioning of the Superior Court's judicial role]."). In *McCahill*, we considered whether No. 00-200, § 5, of the 2000 Public Acts (P.A. 00-200) violated the separation of powers doctrine insofar as it "restrict[ed] a trial court from releasing any individual who has been convicted of a crime involving physical force that is actual, attempted or threatened." Id., 506. The statutory amendment "mandate[d] immediate incarceration upon the [return] of a guilty verdict" and applied to "even those defendants who have not yet been sentenced

State of Connecticut, Judicial Branch *v.* Commission on Human Rights &
Opportunities, Office of Public Hearings

. . . ." Id. We held that the amendment "violate[d] the separation of powers provision because it significantly interfere[d] with the orderly functioning of the Superior Court's judicial role. The nature of this conclusion relies on the premise that P.A. 00-200, § 5, [would] create an interference with the trial court's disposition of cases *other than just this case. . . .* It is these many [potential] cases together, along with the elimination of the Superior Court's discretion to grant bail in appropriate circumstances in that large class of cases, that [create] the significant interference." (Emphasis in original.) Id., 509–10.

In the present case, during the commission's administrative proceedings, the referee asserted an expansive view of the commission's ongoing jurisdiction over the Judicial Branch, concluding—without citation to any legal authority—that the Judicial Branch would be "free to discriminate against attorneys" and "its own employees" unless the commission exercises jurisdiction over it. The referee assumed that the commission had a continuing duty to police the Judicial Branch's regulation of the practice of law, similarly declaring, without citing to any authority, that "[v]ictims of alleged discrimination cannot be limited to having the alleged perpetrator determine whether . . . discrimination occurred," and thus purportedly disqualifying the entire Judicial Branch from adjudicating claims of discrimination within its attorney discipline proceedings. Regardless of whether the commission ultimately acts on this theory in any particular attorney disciplinary proceeding, the specter of the commission's administrative litigation would chill or deter the Judicial Branch's impartial regulation of attorneys, who are "officers of the court appointed to assist the court in the administration of justice . . . ." *Heiberger* v. *Clark*, supra, 148 Conn. 186. Standing committee members must not alter their disciplinary decisions—or, as specifically challenged here, their routine decisions to schedule hearings and to file motions—based on whether the commission would approve. The commission's attempt to exercise jurisdiction in cases like this one violates the separation of powers doctrine because

it significantly interferes with the orderly conduct of the Judicial Branch's essential function of regulating the practice of law.

In addressing the substantive concerns of the referee, we note that our conclusion that the commission lacks jurisdiction over claims of discrimination in the attorney discipline process does not afford the Judicial Branch carte blanche to engage in unlawful, discriminatory conduct under the guise of regulating the legal profession. A decision of a standing committee remains subject to independent review by the Superior Court, and, ultimately, by the Appellate Court and this court, "on [the] record to determine whether [the standing committee] has conducted a fair and impartial investigation, and whether it acted fairly and reasonably or [with] prejudice and ill will in its consideration of the application [for reinstatement to the bar]." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Ganim*, supra, 311 Conn. 451. This independent review accords with the ability to seek redress from the Judicial Branch for discrimination in other types of judicial proceedings. See, e.g., *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 576 ("[W]e look at whether a prosecutor's plea bargaining or charging practice had a discriminatory impact and, if so, whether the prosecutor was motivated by a discriminatory purpose in charging the defendant. . . . We also look at allegations that a prosecutor has exercised his or her discretion to select jurors on the basis of impermissible racial considerations." (Citations omitted.)). In short, the fact that the Office of Public Hearings is not a forum of competent jurisdiction for challenging the Judicial Branch's regulation of the practice of law does not dampen the potency of an individual's rights with respect to that branch of the government.

In sum, we conclude that the trial court properly sustained the Judicial Branch's administrative appeal from the ruling of the commission's referee.

The judgment is affirmed.

In this opinion the other justices concurred.